IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GLC LIMITED, | ) | Case No. 11-_____ |
| | ) | |
| Debtor. | ) | Honorable _____ |

**MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 105(a) AND 366 (I) PROHIBITING UTILITIES FROM DISCONTINUING, ALTERING, OR REFUSING SERVICE, (II) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCES OF PAYMENT, AND (III) ESTABLISHING PROCEDURES FOR UTILITIES TO OPT OUT OF THE DEBTOR'S PROPOSED PROCEDURES FOR ADEQUATE ASSURANCE**

**("MOTION TO ESTABLISH ADEQUATE ASSURANCE FOR UTILITIES")**

GLC Limited (the "**Debtor**"), by its undersigned proposed counsel, FROST BROWN TODD LLC, hereby moves this Court (the **"Motion"**) for entry of interim and final orders (respectively, the "**Interim Order**" and the "**Final Order**"), in substantially the forms attached hereto as Exhibit B and Exhibit C, respectively (i) prohibiting utilities from altering, refusing, or discontinuing service to, or discriminating against, the Debtor, (ii) establishing procedures for determining adequate assurance of payment, and (iii) establishing procedures for utilities to opt out of the Debtor's proposed procedures for adequate assurance. In support of this Motion, the Debtor respectfully states:

**JURISDICTION**

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 366 of title 11 of the United States Code and 11 U.S.C. §§ 101-1330, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "**Bankruptcy Code**").

## BACKGROUND

3. On the date hereof (the "**Petition Date**"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court.[1] The Debtor is authorized to continue to operate its businesses and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner, or statutory creditors' committee has been appointed in this chapter 11 case.

4. The Debtor is a West Virginia corporation formed in March 2004 by Gregory L. Crabtree and Linda L. Crabtree. At the time of formation, Gregory Crabtree was the president and chairman of the Debtor and Linda Crabtree was the vice president and secretary of the Debtor. Gregory and Linda Crabtree are the sole shareholders of the Debtor.

5. Pursuant to a letter from L. David Duffield, counsel for Gregory and Linda Crabtree, dated February 21, 2011, the Debtor was advised that Gregory and Linda Crabtree resigned as directors, officers and employees of the Debtor. Gregory and Linda Crabtree were not asked to resign by the Debtor or the CRO (as defined hereafter), nor were they terminated by the Debtor or the CRO, but instead resigned from such positions on their own volition.

---

[1] While the Debtor and its management have made reasonable efforts to ensure that the information in the Debtor's voluntary petition and in this Motion is accurate and complete based on the information that was available to them at the time of preparation, subsequent information or discovery may result in material changes to the information contained in the Debtor's voluntary petition and/or this Motion. Likewise, inadvertent errors or omissions may exist in the Debtor's voluntary petition and/or this Motion. Nothing contained in the Debtor's voluntary petition and/or this Motion shall constitute a waiver of any of the Debtor's rights or an admission with respect to this chapter 11 case. The Debtor expressly reserves any and all rights to supplement and/or amend this Motion and/or the Debtor's voluntary petition, based upon any relevant information that may be subsequently ascertained during this chapter 11 case.

6.  The Debtor has its principal place of business at 402 State Street, Proctorville, Ohio 45669.

7.  The Debtor currently uses, or has used at various times since its formation, the following trade names or "d/b/a" names: GLC Limited, Inc., Global Liquidation Center, Global Liquidations, Global Liquidation LLC, GLC Discount, GLC Wholesale, ShopGLC, GLC Unlimited, Dan's Sporting Goods, Dan's Sports Shop, Trustworthy Hardware Store, Lailah's Mini Mart and DJs Mini Market.

8.  The Debtor is principally a liquidation company in the wholesale/retail distribution industry. The Debtor offers large selections of name brand products in many categories. The Debtor distributes its goods through a network of wholesale distributors, retail chains and discount and surplus centers. The Debtor has four (4) warehouses for its goods which are located in Proctorville and Columbus, Ohio and Huntington, West Virginia (two warehouses are located in Huntington, West Virginia).

9.  Prior to the Petition Date, the Debtor operated liquidation retail stores located in Proctorville, Ohio, Milan, Indiana, Pigeon Forge and Newport, Tennessee, and Nitro, LeSage and Huntington, West Virginia (collectively, the **"Retail Stores"**). Prior to the Petition Date, the Debtor closed the Retail Stores located in Milan, Indiana, LeSage, West Virginia and Proctorville, Ohio.

10. In addition, the Debtor owns and operates TrustWorthy Hardware Store in Proctorville, Ohio and Dan's Sporting Goods in Huntington, West Virginia.

11. Beginning in 2008, the Debtor began raising funds for the purchase of goods for its liquidation distribution business through investments from private investors. Approximately

ninety-seven (97) individuals or entities made investments in the Debtor (collectively, the "**Investors**") totaling approximately $80,000,000.[2]

12. Since 2008, the Debtor has made payment(s) to many of the Investors, often using, upon information and belief, funds invested by other Investors. According to the books and records of the Debtor, as of the Petition Date, the Debtor has made payments to certain Investors in the approximate aggregate amount of $68,000,000. As of the Petition Date, the Debtor believes that approximately $26,000,000 to $29,000,000 remains owing to certain of the Investors to reimburse such Investors for the amounts that each invested in the Debtor.[3]

13. According to the books and records of the Debtor, certain Investors have received payments from the Debtor in excess of the amounts the Investors invested in the Debtor. As part of this chapter 11 case, the Debtor intends, among other things, to commence actions to recover those excess amounts from those Investors and ensure that there is an equality of distribution for similarly situated parties.

14. In December 2010, the Debtor employed Mr. James R. Burritt of MainStream Management as the chief restructuring officer of the Debtor ("**CRO**") and to provide management and advisory services to the Debtor. Pursuant to a resolution dated January 28, 2011 and delivered on February 1, 2011, the board of directors of the Debtor authorized the CRO

---

[2] Nothing contained herein, including but not limited to the use of certain terms such as "investment" or "investor," shall be construed as an admission on behalf of and/or a determination by the Debtor that any of the Investors would constitute equity holders of the Debtor, rather than creditors of the Debtor, nor shall anything contained herein be construed as an admission on behalf of and/or a determination by the Debtor as to the validity and/or extent of any claim or interest held by any individual or entity against the Debtor. The Debtor expressly reserves any and all rights with respect to any determination as to whether any Investor would constitute an equity holder and/or creditor of the Debtor. The Debtor further reserves any and all rights to contest the validity and/or extent of any asserted claim or interest against the Debtor.

[3] These amounts are based off of information available to the Debtor as of the Petition Date. The Debtor expressly reserves any and all rights to supplement and/or amend these amounts based upon any relevant information that may be subsequently ascertained during this chapter 11 case.

to act on behalf of the Debtor in this chapter 11 case and in the operation of the businesses of the Debtor.

15. During this chapter 11 case, the Debtor intends, among other things, to discontinue its ongoing business operations, shut down the remaining Retail Stores, sell the inventory in the warehouses and sell the businesses and business assets associated with Dan's Sporting Goods and TrustWorthy Hardware Store, as going concerns. Since December 2010, the Debtor, through the CRO, has been working with various industry leaders regarding the potential purchase and sale of the inventory located in the warehouses.

16. During calendar year 2010, the Debtor had gross sales of approximately $3,742,000 and operating losses of approximately $2,223,000. In addition, the Debtor received new investments in calendar year 2010 of approximately $34,700,000 and made payments to Investors of approximately $34,200,000 in calendar year 2010.

## **RELIEF REQUESTED**

17. Section 366(b) of the Bankruptcy Code prevents utility companies from discontinuing, altering or refusing service to a debtor during the first twenty days of a bankruptcy case. However, thirty days from the Petition Date, a utility company may discontinue its services, pursuant to section 366(c)(2) of the Bankruptcy Code, if a debtor has not furnished adequate assurance of payment.

18. By this Motion, the Debtor seeks entry of interim and final orders: (a) determining that its Utility Providers (as defined below) have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code; (b) approving the Debtor's proposed procedures for Utility Providers to request additional or different adequate assurance; (c) prohibiting the Utility Providers from altering, refusing or discontinuing services to, or

discriminating against, the Debtor on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtor's proposed adequate assurance or the commencement of this chapter 11 case; (d) establishing procedures for the Utility Providers to seek to opt out of the Debtor's proposed adequate assurance procedures; and (e) determining that the Debtor is not required to provide any additional adequate assurance, beyond what is proposed by this Motion.

## THE UTILITY PROVIDERS

19. In the operation of its retail stores, the Debtor incurs utility expenses for, among other things, water, trash service, electricity, natural gas, telephone service and alarm service in the ordinary course of business. These utility services are provided by approximately nineteen (19) providers (collectively, the "**Utility Providers**"), including those listed on Exhibit A (the "**Utility Service List**").[4] On average, the Debtor spends approximately $14,547.08 each month on utility costs. As of the Petition Date, approximately $19,550.00 in utility costs were outstanding. The Debtor believes that the proposed Adequate Assurance Deposit (as defined below) is more than sufficient to provide the Utility Providers with adequate assurance of payment.

20. Uninterrupted utility services are essential to the Debtor's ability to sell its inventory and to sell certain of its businesses and various business assets as going concerns and, therefore, to the overall success of its efforts in this chapter 11 case. Should the Utility Providers refuse or discontinue service to the Retail Stores, the Debtor's warehouses, Dan's Sporting Goods and/or TrustWorthy Hardware Store, even for a brief period, the Debtor's business operations would be severely disrupted.

---

[4] Although the Debtor believes that Exhibit A encompasses all entities that could qualify as a Utility Provider, the Debtor reserves the right, without further order of this Court, to supplement the list if any Utility Provider has been omitted. Additionally, the listing of an entity on Exhibit A is not an admission that any particular entity is a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtor reserves the right to contest any such characterization in the future.

21. Simply put, without utility service, the Debtor's operations will immediately shut down, negatively impacting the value of the Debtor's estate. An interruption of utility services would negatively impact the Debtor's business operations, any customer relationships, revenue, and profits, seriously jeopardizing the Debtor's efforts in this chapter 11 case. It is, therefore, critical that utility services continue uninterrupted.

## PROPOSED ADEQUATE ASSURANCE

22. The Debtor intends to pay all postpetition obligations owed to the Utility Providers in a timely manner. The Debtor expects that revenue from the sale of inventory and any continued operations will be more than sufficient to pay the Debtor's postpetition obligations, including all postpetition utility obligations.

23. Nevertheless, the Debtor proposes to provide adequate assurance to the Utility Providers by making a deposit equal to two (2) weeks of utility service, calculated as a historical average over the past three (3) months, to all Utility Providers as adequate assurance (the "**Adequate Assurance Deposit**") within five (5) business days of this Court's entry of the Interim Order, provided that such Utility Provider is not currently paid in advance for its services and/or does not already hold a deposit equal to or greater than the Adequate Assurance Deposit (which existing deposit shall be deemed to be the Adequate Assurance Deposit). As a condition of accepting an Adequate Assurance Deposit, the requesting Utility Provider shall be deemed to have stipulated that the Adequate Assurance Deposit constitutes adequate assurance of future payment to such Utility Provider within the meaning of section 366 of the Bankruptcy Code, and shall further be deemed to have waived any right to seek additional adequate assurance during this chapter 11 case, unless the Utility Provider makes an additional adequate assurance request at least five (5) business days prior to the final hearing date on this Motion as set by this Court (the "**Final Hearing Date**"). Finally, the Utility Provider will be required to return the Adequate

Assurance Deposit to the Debtor within the earlier of fifteen (15) days of the effective date of any confirmed plan in this chapter 11 case or the closing of a sale of substantially all of the Debtor's assets, if not returned or applied sooner.

24. The Debtor submits that the Adequate Assurance Deposit, in conjunction with the Debtor's ability to pay for future utility services in the ordinary course of business (collectively, the "**Proposed Adequate Assurance**"), constitutes sufficient adequate assurance to the Utility Providers. If any Utility Provider believes additional assurance is required, they may request such assurance pursuant to the procedures described below.

### **PROPOSED ADEQUATE ASSURANCE PROCEDURES**

25. Section 366 of the Bankruptcy Code recognizes the necessity of continuous utility services and prohibits Utility Providers from altering, refusing or discontinuing utility services to, or discriminating against, a debtor due to either its bankruptcy filing or any outstanding prepetition obligations for a period of 30 days after the filing.[5] At the conclusion of that 30 days, however, a utility company may discontinue services if a debtor has not furnished adequate assurance of payment. 11 U.S.C. § 366(c)(2). In this case, and absent the procedures proposed in this Motion, Utility Providers may discontinue service, without warning, on the date that is 30 days following the Petition Date, if they claim they have not yet received a "satisfactory"

---

[5] There is an apparent discrepancy between subsections (b) and (c) of section 366 of the Bankruptcy Code. The two subsections set forth different time periods during which a utility is prohibited from altering, refusing or discontinuing utility service. Specifically, section 366(b) of the Bankruptcy Code allows a utility to alter, refuse or discontinue service "if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment," while section 366(c)(2) of the Bankruptcy Code allows a utility in "a case filed under chapter 11" to alter, refuse or discontinue service to a chapter 11 debtor "if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service…." (emphases added).

Under the statutory construction canon *lex specialis derogut legi generali* ("specific language controls over general"), the language of section 366(c)(2) of the Bankruptcy Code controls because the Debtor is a chapter 11 debtor. See 3 Collier on Bankruptcy ¶ 366.03121 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006) ("It is unclear how the 30-day period [in Section 366(c)(2) of the Bankruptcy Code] meshes with the normal 20-day period in Section 366(b). The better view is that, because Section 366(c) is more specifically applicable to chapter 11 cases, the 30-day period, rather than the 20-day period in Section 366(b), should apply.").

8

adequate assurance payment (at least from their subjective point of view). Although the Debtor could contest this action - or pay a Utility Provider's late demand - by the time that it did so, irreparable damage will have already been done to the Debtor's operations.

26. In light of the severe consequences to the Debtor of any interruption in utility services, but recognizing the right of Utility Providers to evaluate the Proposed Adequate Assurance on a case-by-case basis, the Debtor is proposing procedures that will enable it to cooperatively work with the Utility Providers in a coordinated manner to consensually resolve adequate assurance issues. If the Debtor and a Utility Provider cannot consensually resolve such issues, this Court should determine first whether an additional adequate assurance payment is necessary (in view of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005) and, if so, how much it should be before the Utility Provider may cease performance for failure of adequate assurance. The Debtor's proposed procedures to effectuate this result are as follows (the "**Adequate Assurance Procedures**"):

    a. The Debtor will fax, email, serve by overnight mail or otherwise expeditiously send a copy of the Interim Order to each Utility Provider within three (3) business days after the entry of the proposed Interim Order.

    b. The Debtor will pay each Utility Provider an Adequate Assurance Deposit within five (5) business days of entry of the Interim Order by this Court; provided that such Utility Provider is not currently paid in advance for its services and/or does not already hold a deposit equal to or greater than the Adequate Assurance Deposit (which existing deposit shall be deemed to be the Adequate Assurance Deposit).

    c. A Utility Provider desiring additional assurances of payment in the form of deposits, security or otherwise must serve a request (an "**Additional Assurance Request**") upon the Debtor at the following addresses: (i) GLC Limited, PO Box 670, Proctorville, Ohio 45669, Attn: James R. Burritt (ii) counsel to the Debtor, Frost Brown Todd LLC, 201 East Fifth Street, 2200 PNC Center, Cincinnati, Ohio 45202, Attn: Ronald E. Gold, and (iii) the Office of the United States Trustee for the Southern District of Ohio, 36 East Seventh Street, Suite 2030, Cincinnati, Ohio 45202

  (collectively, the "**Service Parties**"). Any Additional Assurance Request must be sent to <u>all of the above notice parties</u> to be deemed valid.

d.  Any Additional Assurance Request must be made and **actually received** by all the Service Parties listed above by no later than five (5) business days prior to the Final Hearing Date. If a Utility Provider fails to timely file and serve its request, it shall be: (i) forbidden to discontinue, alter or refuse service to, or discriminate against, the Debtor on account of any unpaid prepetition charges or the commencement of this chapter 11 case, or require additional adequate assurance of payment other than the two-week Proposed Adequate Assurance described above; and (ii) deemed to have received adequate assurance of payment in compliance with section 366 of the Bankruptcy Code.

e.  In addition, any Additional Assurance Request must: (i) be made in writing; (ii) set forth the location for which utility services are provided; (iii) include a summary of the Debtor's payment history relevant to the affected account(s), including any security deposits; and (iv) set forth why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

f.  Upon the Debtor's and other required parties' receipt of any Additional Assurance Request at the addresses set forth above, the Debtor shall have the greater of (a) fourteen (14) days from the receipt of any such Additional Assurance Request or (b) thirty (30) days from the Petition Date (collectively, the "**Resolution Period**") to negotiate with the Utility Provider to endeavor to resolve that Utility Provider's request for additional assurance of payment. During this period, Utility Providers may not discontinue, alter or refuse service to, or discriminate against, the Debtor on account of any unpaid prepetition charges, the commencement of this chapter 11 case or on account of any objection(s) to the Debtor's Proposed Adequate Assurance.

g.  The Debtor may, in its discretion, resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of this Court, and may, in connection with any such agreement, in its discretion, provide a Utility Provider with additional adequate assurance of future payment including, but not limited to, cash deposits, prepayments and/or other forms of security, without further order of this Court, if the Debtor believes such additional assurance is reasonable.

h.  If the Debtor determines that an Additional Assurance Request is not reasonable and is not able to reach an alternative resolution with the Utility Provider during the Resolution Period, the Debtor, during or immediately after the Resolution Period, will request a hearing before this Court to determine the adequacy of assurances of payment with respect to

a particular Utility Provider (the "**Determination Hearing**") pursuant to section 366(c)(3) of the Bankruptcy Code.

      i. Pending resolution of any such Determination Hearing, such particular Utility Provider shall be restrained from discontinuing, altering, or refusing service to, or discriminating against, the Debtor on account of unpaid charges for prepetition services, the Debtor's bankruptcy filing or on account of any objection(s) to the Debtor's Proposed Adequate Assurance.

27. The Debtor does not anticipate any problems in honoring its utility obligations. Accordingly, the Debtor believes that additional adequate assurance payments will ultimately prove unnecessary and, if forced to bring this matter before this Court, would argue the same.

## **PROCESS FOR OPTING OUT OF ADEQUATE ASSURANCE PROCEDURES**

28. Historically, chapter 11 debtors were able to put the onus on Utility Providers, under section 366 of the Bankruptcy Code, to argue that whatever form of adequate assurance proposed by the debtor was insufficient. The recent modifications to section 366 of the Bankruptcy Code arguably shift the burden onto debtors to provide adequate assurance the utility provider finds satisfactory, and to seek court review if the utility provider does not accept the proposed adequate assurance. Under this reading of revised section 366 of the Bankruptcy Code, a Utility Provider could, on the 30th day following the Petition Date, announce that the proposed adequate assurance is not acceptable, demand an unprecedented deposit or prepayment in any amount it deems fit and threaten to terminate utility service the next day unless the Debtor complied with the demand. While the Debtor does not concede that the foregoing scenario reflects a correct interpretation of revised section 366 of the Bankruptcy Code, the Debtor nonetheless believes it is prudent to require Utility Providers to raise any objections to the Adequate Assurance Procedures so that such objections may be heard by this Court before the running of the 30-day period following the Petition Date.

29. To avoid this type of situation, the Debtor proposes the following procedures:

   a. Any Utility Provider who objects to the Adequate Assurance Procedures outlined above must file an objection to such procedures (a "**Procedure Objection**") so that it is actually received at least five (5) business days prior to the Final Hearing Date by the Debtor at the following addresses: (i) GLC Limited, PO Box 670, Proctorville, Ohio 45669, Attn: James R. Burritt; (ii) counsel to the Debtor, Frost Brown Todd LLC, 201 East Fifth Street, 2200 PNC Center, Cincinnati, Ohio 45202, Attn: Ronald E. Gold; and (iii) the Office of the United States Trustee for the Southern District of Ohio, 36 East Seventh Street, Suite 2030, Cincinnati, Ohio 45202.

   b. In addition, any Procedure Objection must (i) be made in writing; (ii) set forth the location for which utility services are provided, (iii) include a summary of the Debtor's payment history relevant to the affected account(s), including any security deposits; (iv) set forth why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment; and (v) set forth why the Utility Provider believes it should be exempted from the Adequate Assurance Procedures.

   c. The Debtor may, in its discretion, resolve any Procedure Objection by mutual agreement with the Utility Provider and without further order of this Court, and may, in connection with any such agreement, in its discretion, provide a Utility Provider with additional adequate assurance of future payment including, but not limited to, cash deposits, prepayments and/or other forms of security, without further order of this Court if the Debtor believes such additional assurance is reasonable.

   d. If the Debtor determines that the Procedure Objection is not reasonable and is not able to reach a prompt alternative resolution with the Utility Provider, the Procedure Objection will be heard at the Final Hearing Date. During this period, Utility Providers may not discontinue, alter or refuse service to, or discriminate against, the Debtor on account of any unpaid prepetition charges, the commencement of this chapter 11 case or on account of any objection(s) to the Debtor's Proposed Adequate Assurance and/or the proposed Adequate Assurance Procedures.

   e. All Utility Providers that do not timely file a Procedure Objection are deemed to consent to the Adequate Assurance Procedures and shall be bound by the Adequate Assurance Procedures.

## SUBSEQUENT MODIFICATIONS OF UTILITY SERVICE LIST

30. The Debtor has made an extensive and good faith effort to identify its Utility Providers and include them on the Utility Service List. Nonetheless, it is possible that the Debtor

has not yet identified or included certain Utility Providers on the Utility Service List. To the extent that the Debtor identifies additional Utility Providers (the "**Additional Utility Providers**"), the Debtor will file with this Court amendments to the Utility Service List, and shall serve a copy of the Interim and Final Orders on such Additional Utility Providers. The Debtor requests that the Interim Order and Final Order be binding on all Utility Providers, regardless of when such Utility Provider was added to the Utility Service List; provided that, any such Additional Utility Provider shall be entitled to submit an Additional Assurance Request and/or Procedure Objection within fourteen (14) days after the date of service of the Interim and/or Final Orders on such Additional Utility Provider. Any such Additional Assurance Request and/or Procedure Objection must otherwise be in compliance with the provisions of the Interim and/or Final Orders or shall be deemed an invalid Additional Assurance Request and/or Procedure Objection. In the event that the Debtor is unable to resolve any Additional Assurance Request and/or Procedure Objection from an Additional Utility Provider within thirty (30) days from receipt of such Additional Assurance Request and/or Procedure Objection, the Debtor will request a Determination Hearing with this Court. During this period and pending resolution of any such Determination Hearing, any Additional Utility Provider shall be prohibited from discontinuing, altering or refusing service to, or discriminating against, the Debtor on account of any unpaid prepetition charges, the commencement of this chapter 11 case or on account of any objection(s) to the Debtor's Proposed Adequate Assurance and/or the proposed Adequate Assurance Procedures.

## **BASIS FOR RELIEF**

31. Congress enacted section 366 of the Bankruptcy Code to protect debtors from utility service cutoffs upon a bankruptcy filing while, at the same time, provide utility companies with adequate assurance that the debtors will pay for postpetition services. See H.R. REP. NO.

95-595, at 350 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6306. Accordingly, section 366 of the Bankruptcy Code protects debtors by enjoining utilities from altering, refusing or discontinuing services solely on account of unpaid prepetition amounts or commencement of a bankruptcy case for a period of 30 days after the bankruptcy filing. And it protects utilities by permitting them to alter, refuse or discontinue service after 30 days if the debtor has not furnished "adequate assurance" of payment in a form "satisfactory" to the utility.

32. Section 366(c) of the Bankruptcy Code, which was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("**BAPCPA**"), significantly modified the existing statutory framework. It has two primary purposes: first, it permits a utility to alter, refuse or discontinue utility service if a debtor has not provided "satisfactory" adequate assurance within 30 days of its bankruptcy filing, subject to this Court's ability to modify the amount of adequate assurance. It also restricts the factors that a court can consider when determining whether an adequate assurance payment is, in fact, adequate. Specifically, courts may no longer consider (i) the absence of a security deposit before a debtor's petition date, (ii) a debtor's history of timely payments or (iii) the availability of an administrative expense priority when determining the amount of a deposit. Notwithstanding these noteworthy changes, it does not appear that Congress intended to — or did — abrogate the bankruptcy court's right to determine the amount of adequate assurance necessary or change the fundamental requirement that assurance of payment must simply be "adequate."

33. First, while section 366(c) of the Bankruptcy Code does limit the factors a court can consider when determining whether a debtor has provided adequate assurance of payment, it does not limit this court's ability to determine the amount of payment necessary, if any, to provide such adequate assurance. Instead, section 366(c) of the Bankruptcy Code gives courts

14

the same discretion in determining the amount of payment necessary for adequate assurance as they previously had under section 366(b) of the Bankruptcy Code. Compare 11 U.S.C. § 366(b) (2005) ("On request of a party-in-interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance") with 11 U.S.C. § 366(c)(3)(A)(2005) ("On request of a party-in-interest and after notice and a hearing, the court may order modification of the amount of an assurance payment under paragraph (2)"); see also Richard Levin & Alesia Ranney-Marinelli, The Creeping Repeal of Chapter 11: The Significant Business Provisions of the Bankruptcy Abuse Protection and Consumer Protection Act of 2005, 79 Am. Bankr. L.J. 603, 608-09 (2005) (stating that Courts would likely continue to determine the amount and form of adequate protection after the implementation of the BAPCPA).

34.  And, it is well established that section 366(b) of the Bankruptcy Code permits a court to find that no adequate assurance payment at all is necessary to provide a utility with adequate assurance of payment. See Virginia Elec. & Power Co. v. Caldor, Inc., 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly, we agree with the appellees that a bankruptcy court's authority to 'modify' the level of the 'deposit or other security,' provided for under § 366(b), includes the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'"). This may be particularly true in cases where the debtor has made prepetition deposits or prepayments for services that utilities will ultimately render postpetition. 11 U.S.C. § 366(c)(l)(A)(v) (recognizing a prepayment for postpetition services as adequate assurance). Accordingly, courts continue to have discretion to determine the amount of adequate assurance payments and, where appropriate, to determine that no such payment is necessary.

15

35. Additionally, section 366(c) of the Bankruptcy Code, like section 366(b) of the Bankruptcy Code, simply requires that a utility's assurance of payment be "adequate." Courts have long recognized that adequate assurance of performance does not require an absolute guarantee of a debtor's ability to pay. See Hennen v. Dayton Power & Light Co. (In re Hennen), 17 B.R. 720, 724 (Bankr. S.D. Ohio 1983) ("Adequate assurance does not require an absolute guarantee of payment, and is largely a factual determination."); In re Adelphia Bus. Solutions. Inc., 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002); In re Caldor, 199 B.R. 1, 3 (S.D.N.Y. 1996) (Section 366(b) of the Bankruptcy Code "does not require an 'absolute guarantee of payment'") aff'd by Virginia Elec. & Power Co. v. Caldor, Inc., 117 F.3d 646 (2nd Cir. 1997); In re Steinebach, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance . . . all § 366(b) requires is that a utility receive only such assurance of payment as is necessary to protect its interests given the facts of the debtor's financial circumstances"). Courts have also recognized that in determining the amount of adequate assurance, bankruptcy courts should focus "on the need of the utility for assurance, and to require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." In re Caldor, 117 F.3d at 665 (emphasis in original); see also In re Penn. Cent. Transp. Co., 467 F.2d 100, 103-04 (3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were necessary where such deposits would likely "jeopardize the continuing operating of the [debtor] merely to give further security to suppliers who are already reasonably protected"). Accordingly, demands by a utility for a guarantee of payment when they already have adequate assurance of payment in light of the Debtor's specific circumstances should be refused.

36. Based upon the foregoing, the Debtor believes that most, if not all, of its Utility Providers have adequate assurance of payment <u>without</u> any additional adequate assurance provisions. As previously discussed, the Debtor is confident that its sale of inventory and any continued operations will enable it to pay its operating costs, including utility costs, as they come due. The Debtor has a powerful incentive to stay current on its utility obligations because of its significant reliance on utility services for its retail operations. Without utility services, particularly electrical power, the Debtor will not be able to operate. These factors, which this Court should consider when considering the amount of any adequate assurance payments, justify a finding that no adequate assurance payment is required at all. In light of the foregoing, the Debtor submits that the Proposed Adequate Assurance Deposit is more than sufficient to assure the Utility Providers of future payment.

37. If the Utility Providers disagree with the Debtor's analysis, however, the procedures proposed in this Motion will enable the parties to negotiate and, if necessary, seek Court intervention without jeopardizing the Debtor's operations. This Court has authority to approve the proposed procedures under section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." The purpose of section 105(a) of the Bankruptcy Code is "to assure the bankruptcy courts [sic] power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 <u>Collier on Bankruptcy</u> ¶ 105.01, at 105-5 to 105-6 (15th ed. rev. 2003).

38. The proposed procedures are necessary for the Debtor to carry out its efforts in this chapter 11 case. If this Court does not approve the proposed procedures, the Debtor could be forced to address numerous requests by its Utility Providers in a disorganized manner at a

critical point during this chapter 11 case. Moreover, the Debtor could be blindsided by a Utility Provider unilaterally deciding — on the thirty-first day — that it is not adequately protected and discontinuing service or making an exorbitant demand for payment to continue service. As set forth above, discontinuation of service, particularly electricity, would essentially put an immediate halt to the Debtor's operations, putting the Debtor's efforts in this chapter 11 case in extreme jeopardy. The proposed procedures set forth a fair process that will enable all parties to negotiate their respective positions and, where necessary, seek Court intervention without jeopardizing the Debtor's chapter 11 efforts.

39. In fact, this Court and many other courts have approved similar procedures in other chapter 11 cases filed after the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective. See, e.g., In re SL Liquidating, Inc. (f/k/a SENCORP), Case No. 09-12869 (JVA) (Bankr. S.D. Ohio); In re MI 2009, Inc. (f/k/a Milacron Inc.), Case No. 09-111235 (JVA) (Bankr. S.D. Ohio); In re The Antioch Company, Case No. 08-35741 (GRH) (Bankr. S.D. Ohio); In re The Wornick Company, Case No. 08-16054 (JVA) (Bankr. S.D. Ohio); In re Dana Corporation, Case No. 06-10.354 (Bankr. S.D.N.Y.); In re J.L. French Automotive Castings. Inc., Case No. 06-10119 (Bankr. D. Del.); In re Romacorp, Inc., Case No. 86818-B (Bankr. N.D. Tex.); In re McLeod USA Inc., Case No. 05-63229 (Bankr. N.D. Ill.). Accordingly, the Debtor believes that the proposed procedures should be approved.

## WAIVER OF MEMORANDUM OF LAW

40. This Motion includes citations to the applicable authorities and a discussion of their application to this Motion. Accordingly, the Debtor respectfully submits that such citations and discussion satisfy the requirement that the Debtor submit a separate memorandum of law in support of this Motion pursuant to Local Bankruptcy Rule 9013-1(a).

18

**NOTICE**

41. No trustee or examiner has been appointed in this chapter 11 case. The Debtor has provided notice of this Motion to (i) the Office of the United States Trustee for the Southern District of Ohio, (ii) the Debtor's 20 largest unsecured creditors; (iii) all parties asserting a security interest in the assets of the Debtor to the extent reasonably known to the Debtor; (iv) counsel for the Ad Hoc Committee of Note Holders; (v) counsel for Gregory and Linda Crabtree; (vi) any governmental unit listed in the Clerk's Register of Federal and State Governmental Units as described in Local Bankruptcy Rule 5003-1; and (vii) all utilities as identified on the List of Utilities attached hereto as <u>Exhibit A</u>. In light of the nature of the relief requested, the Debtor submits that no further notice is required or needed under the circumstances. **Please take notice that the Debtor has filed a Motion for an Expedited Hearing to consider First Day Motions and Applications, including the foregoing. The Debtor shall serve notice of the objection deadline and expedited hearing date pursuant to further order(s) of this Court.**

**NO PRIOR REQUEST**

42. No prior motion for the relief requested herein has been made to this Court or any other court.

WHEREFORE, the Debtor respectfully requests that this Court enter interim and final orders, substantially in the forms attached hereto as <u>Exhibit B</u> and <u>Exhibit C</u>, respectively, (i) determining that Utility Providers have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code, (ii) approving the Debtor's Proposed Adequate Assurance and the Adequate Assurance Procedures, (iii) prohibiting Utility Providers from discontinuing, altering, or refusing service to, or discriminating against, the Debtor, (iv) establishing procedures for Utility Providers to opt out of the proposed Adequate Assurance Procedures, (v) determining that the Debtor is not required to provide any additional adequate

assurance, beyond what is proposed by this Motion, and (vi) granting such other and further relief as this Court deems appropriate.

Dated: February 28, 2011

Respectfully submitted,

**FROST BROWN TODD LLC**

By: */s/ Ronald E. Gold*

Ronald E. Gold, Esq. (0061351)
Joseph B. Wells, Esq. (0082775)
Lindsey F. Baker, Esq. (0085017)
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
Telephone: 513.651.6800
Facsimile: 513.651.6981
E-mail: rgold@fbtlaw.com
E-mail: jbwells@fbtlaw.com
E-mail: lbaker@fbtlaw.com

**PROPOSED ATTORNEYS FOR DEBTOR AND DEBTOR-IN-POSSESSION**