**EXHIBIT A**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| GLC LIMITED, | ) | CASE NO. 11-11090 |
| | ) | |
| DEBTOR. | ) | HONORABLE JEFFERY P. HOPKINS |

**AFFIDAVIT OF JAMES R. BURRITT IN SUPPORT OF EMERGENCY MOTION OF DEBTOR FOR ENTRY OF AN ORDER, PURSUANT TO 11 U.S.C. §§ 105 AND 363, APPROVING EXPEDITED PROCEDURES TO SELL CERTAIN *DE MINIMIS* ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES**

| | |
|---|---|
| COUNTY OF KNOX | ) |
| | ) ss. |
| STATE OF TENNESSEE | ) |

James R. Burritt, being duly sworn, deposes and says:

1. I submit this affidavit in support of the *Emergency Motion of Debtor for Entry of an Order, Pursuant to 11 U.S.C. §§ 105 and 363, Approving Expedited Procedures to Sell Certain De Minimis Assets of the Debtor Free and Clear of Liens, Claims, Interests and Encumbrances* (the "**Emergency Motion**") (Docket No. 107).

2. I am the Chief Restructuring Officer (the "**CRO**") of GLC Limited, a corporation organized under the laws of the state of West Virginia and the above-referenced debtor and debtor-in-possession (the "**Debtor**") in this chapter 11 case. I am generally familiar with the Debtor's day-to-day operations, business affairs, books, and records.

3. On February 28, 2011 (the "**Petition Date**"), the Debtor commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in this Court. The Debtor is continuing to operate its businesses and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. Prior to the Petition Date, the Debtor was principally a liquidation company in the wholesale/retail distribution industry. The Debtor offered large selections of name brand products in many categories. The Debtor distributed its inventory through a network of wholesale distributors, retail chains and discount and surplus centers.

5. Prior to the Petition Date, the Debtor operated liquidation retail stores located in Proctorville, Ohio, Milan, Indiana, Pigeon Forge and Newport, Tennessee, and Nitro, LeSage and Huntington, West Virginia (collectively, the "**Retail Stores**"). Prior to the Petition Date, the Debtor closed the Retail Stores located in Milan, Indiana, LeSage, West Virginia and Proctorville, Ohio. The Debtor also ceased its operations at the Retail Store located in Newport, Tennessee on February 28, 2011.

6. In addition, the Debtor has filed motions with this Court seeking authorization of this Court to reject the leases for the Retail Stores located in Pigeon Forge, Tennessee and Nitro, West Virginia. The Debtor closed the Retail Store located in Pigeon Forge, Tennessee on or before March 31, 2011 and will have closed the Retail Store located in Nitro, West Virginia on or before April 30, 2011.

7. The Debtor has two (2) warehouses for its goods which are located in Columbus, Ohio and Huntington, West Virginia (collectively, the "**Warehouses**").

8. Since the Petition Date, in my position as CRO, I have focused my efforts on, among other things, selling and liquidating the inventory located in the Warehouses. As CRO, I have met with a number of potential end users and liquidators who have expressed interest in purchasing certain of the inventory. Although I believe that these sales of inventory are in the ordinary course of business of the Debtor, certain of the prospective buyers have requested and/or require the Debtor to obtain an order of this Court authorizing the Debtor to sell the inventory.

9.  On April 8, 2011, the Debtor filed the Emergency Motion with this Court seeking, among other things, entry of an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, authorizing and approving expedited procedures enabling the Debtor to sell, without further order of this Court and upon limited notice to certain parties in interest, certain assets, including but not limited to, miscellaneous inventory, supplies and ancillary equipment located in the Warehouses and/or Retail Stores ("**_De Minimis_ Assets**") free and clear of liens, claims, interests and encumbrances, provided that the value of _De Minimis_ Assets being sold in each transaction does not exceed $250,000 in the aggregate.

10.  I believe that it would be more efficient, and the proceeds from the sale of _De Minimis_ Assets will be maximized, if the Debtor is authorized to implement procedures to allow it to sell _De Minimis_ Assets, or groups of such assets, with an aggregate purchase price of $250,000 or less on an expedited basis without incurring the delay and costs of preparing, filing and serving motions to approve each sale. I believe that the _De Minimis_ Assets Sale Procedures (as defined in the Emergency Motion) proposed in the Emergency Motion will reduce the costs and expenses associated with the administration of the Debtor's estate and maximize the value of the estate for the benefit of the Debtor's creditors.

11.  Further, I believe that the Debtor is in a position to sell certain _De Minimis_ Assets quickly and at prices that would maximize the value of such _De Minimis_ Assets for the benefit of the Debtor's estate and its creditors. It is my opinion that the immediate sale of _De Minimis_ Assets is necessary to preserve the value of such _De Minimis_ Assets. Upon information and belief, certain _De Minimis_ Assets have a limited shelf-life. It is also my opinion that there is a significant risk that the proceeds from the sale of _De Minimis_ Assets would be diminished in value were there any delay in the Debtor's ability to sell such _De Minimis_ Assets.

12. I believe that the requirements of section 363(f) of the Bankruptcy Code would be satisfied for any proposed sales of *De Minimis* Assets free and clear of liens, claims, interests and encumbrances. *De Minimis* Assets will be sold in a commercially reasonable manner, and I expect that the value of the proceeds from such sales will fairly reflect the value of the property sold. In addition, pursuant to the Emergency Motion, the Debtor proposes that any party with a lien on any *De Minimis* Assets sold, if any such parties exist, shall have a corresponding security interest in the proceeds of such sale.

13. If the sale of *De Minimis* Assets was not free and clear of all liens, claims, interests and encumbrances, I believe that the value received from the sale of such *De Minimis* Assets would be drastically reduced.

14. Further, the sale of any *De Minimis* Assets will be as a result of arm's length, negotiated transactions, and thus, I believe that the sale of any *De Minimis* Assets should be entitled to the protections of section 363(m) of the Bankruptcy Code.

15. I believe that allowing the Debtor to sell *De Minimis* Assets in the manner described in the Emergency Motion constitutes the most efficient and cost-effective means of disposing of these non-core assets and will maximize the value of *De Minimis* Assets.

[signature on following page]

_____
JAMES R. BURRITT

Sworn to before me and subscribed in my presence this 15 day of April, 2011.

JAMES BURITT TN DL 094729751

_____
Notary Public

[Notary Seal: MICHAEL DECANIO, STATE OF TENNESSEE NOTARY PUBLIC, KNOX COUNTY]

My Commission Expires 5-14-2011

CINLibrary 0121049.0583831 2288532v2