# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| GLC LIMITED, | ) | CASE NO. 11-11090 |
| | ) | |
| DEBTOR. | ) | HONORABLE JEFFERY P. HOPKINS |

**MOTION OF DEBTOR FOR ORDER: (A) AUTHORIZING THE SALE OF THE DEBTOR'S INVENTORY ASSETS PURSUANT TO 11 U.S.C. § 363(b), (f) AND (m); (B) APPROVING NOTICE THEREOF; AND (C) APPROVING THE RETENTION, EMPLOYMENT AND COMPENSATION OF GREAT AMERICAN GROUP, LLC AND BROADSTREET CAPITAL AS SALES CONSULTANT TO THE DEBTOR**

GLC Limited (the "**Debtor**"), by its undersigned counsel, FROST BROWN TODD LLC, hereby respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit C** (the "**Order**"): (a) granting the Debtor authority to sell its inventory assets, pursuant to sections 105(a), 362, 363(b), (f) and (m), 1107 and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 6004-1 of the Local Bankruptcy Rules for the Southern District of Ohio (the "**Local Rules**"); (b) approving notice thereof; and (c) approving the retention, employment and compensation of Great American Group, LLC and Broadstreet Capital (collectively, the "**Consultant**") as exclusive sales consultant to the Debtor pursuant to sections 327, 328, 330, 503(b), and 507(a) of the Bankruptcy Code and Bankruptcy Rule 2014. In support of this Motion, the Debtor respectfully states:

## JURISDICTION

1. This Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). This Court can exercise subject matter jurisdiction pursuant to 28 U.S.C. § 157(b)(1). Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are sections 105(a), 327, 328, 330, 362, 363(b), (f) and (m), 503(b), 507(a), 1107 and 1108 of the Bankruptcy Code and Bankruptcy Rules 2002, 2014, 6004, 9007 and 9014.

## BACKGROUND

3. On February 28, 2011 (the "**Petition Date**"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court. The Debtor is continuing to operate its businesses and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 7, 2011, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in this chapter 11 case (the "**Committee**").

4. The Debtor is a West Virginia corporation formed in March 2004 by Gregory L. Crabtree and Linda L. Crabtree. The Debtor has its principal place of business at 402 State Street, Proctorville, Ohio 45669.

5. Prior to the Petition Date, the Debtor was principally a liquidation company in the wholesale/retail distribution industry. The Debtor offered large selections of name brand products in many categories. The Debtor distributed its inventory through a network of wholesale distributors, retail chains and discount and surplus centers.

6. Prior to the Petition Date, the Debtor operated liquidation retail stores located in Proctorville, Ohio, Milan, Indiana, Pigeon Forge and Newport, Tennessee, and Nitro, LeSage and Huntington, West Virginia (collectively, the **"Retail Stores"**). Prior to the Petition Date, the Debtor closed the Retail Stores located in Milan, Indiana, LeSage, West Virginia and Proctorville, Ohio. In addition, the Debtor ceased its operations at the Retail Store located in Newport, Tennessee on February 28, 2011. This Court has also approved the rejection of the

leases for the Retail Stores located in Pigeon Forge, Tennessee (Docket No. 137) and Nitro, West Virginia (Docket No. 143).

7. The Debtor has two (2) warehouses for its goods which are located in Columbus, Ohio and Huntington, West Virginia (the "**Warehouses**").

8. In December 2010, the Debtor employed Mr. James R. Burritt of MainStream Management as the chief restructuring officer of the Debtor (**"Mr. Burritt"**) and to provide management and advisory services to the Debtor. Pursuant to a resolution dated January 28, 2011 and delivered on February 1, 2011, the board of directors of the Debtor authorized Mr. Burritt to act on behalf of the Debtor in this chapter 11 case and in the operation of the businesses of the Debtor.

9. Since the Petition Date, the CRO has extensively focused his efforts on, among other things, selling and liquidating the inventory located in the Warehouses. The CRO has spent countless hours marketing the Debtor's inventory assets and meeting with numerous potential end users, liquidators and sales consultants regarding the potential sale of the Debtor's inventory assets.

10. On April 8, 2011, the Debtor filed the *Emergency Motion of Debtor for Entry of an Order, Pursuant to 11 U.S.C. §§ 105 and 363, Approving Expedited Procedures to Sell Certain De Minimis Assets of the Debtor Free and Clear of All Liens, Claims, Interests and Encumbrances* (the **"*De Minimis* Assets Motion"**) (Docket No. 107). By the *De Minimis* Assets Motion, the Debtor sought approval from this Court of certain procedures that will enable the Debtor to sell certain *De Minimis* Assets (defined below), including but not limited to, inventory, supplies, and equipment, free and clear of liens, claims, interests, and encumbrances. On April

20, 2011, this Court entered an order granting the *De Minimis* Assets Motion (the **"Order Granting *De Minimis* Assets Motion"**) (Docket No. 122).

11. Since the entry of the Order Granting *De Minimis* Assets Motion, the CRO has continued to diligently work to market the Debtor's inventory assets, in an effort to maximize the value received by the Debtor's estate from the sale of the Debtor's inventory assets.

## RELIEF REQUESTED

12. By this Motion, the Debtor requests entry of an Order: (a) granting the Debtor authority to sell its inventory assets, pursuant to sections 105(a), 362, 363(b), (f) and (m), 1107 and 1108 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure and Local Rule 6004-1; (b) approving notice thereof; and (c) approving the retention, employment and compensation of the Consultant as exclusive sales consultant to the Debtor pursuant to sections 327, 328, 330, 503(b), and 507(a) of the Bankruptcy Code and Bankruptcy Rule 2014. The terms of the Consultant's retention are described herein and in the Consulting Agreement between the Consultant and the Debtor (the "**Consulting Agreement**", a copy of which is attached hereto and incorporated herein as **Exhibit A**). The Debtor requests that the Consultant be retained to perform the services described in this Motion on the terms set forth herein and in the Consulting Agreement.

## BASIS FOR RELIEF REQUESTED

13. Subject to approval by this Court, the Debtor intends to sell its inventory, supplies, and equipment (the "**Assets**") located at the Debtor's locations listed in section 1.3 of the Consulting Agreement (collectively, the "**Facilities**"). By this Motion, the Debtor requests, among other things, that the Consultant serve as the exclusive sales consultant of the Debtor in connection with any proposed sale of the Assets. The Debtor believes that utilizing the services

4

of the Consultant will help maximize the value recovered by the Debtor's estate in connection with any sale of the Assets.

14. Pursuant to the Order Granting *De Minimis* Assets Motion, this Court previously authorized and approved expedited procedures enabling the Debtor to sell, without further order of this Court and upon limited notice to certain parties in interest, certain assets, including but not limited to, miscellaneous inventory, supplies and ancillary equipment located in the Warehouses and/or Retail Stores ("***De Minimis* Assets**") free and clear of liens, claims, interests and encumbrances, provided that the value of *De Minimis* Assets being sold in each transaction does not exceed $250,000 in the aggregate.

15. The value of any of the Assets potentially being sold in a transaction, with the assistance of the Consultant, may exceed $250,000 in the aggregate. Accordingly, since any such sale of the Assets in excess of $250,000 in the aggregate would not be authorized by the Order Granting *De Minimis* Assets Motion, the Debtor files this Motion requesting the authority of this Court to sell the Assets regardless of the value of the Assets being sold in each transaction, subject to certain Sale Notice Procedures (defined below).

### A. Retention of the Consultant

16. In connection with the sale of the Assets, the Debtor requests that the Consultant serve as the exclusive sales consultant of the Debtor and perform the following services for the Debtor throughout the Sale Term (as defined in the Consulting Agreement):

   a) provide one or more full time Supervisor(s) (as defined in the Consulting Agreement) to supervise and conduct the Sale (as defined in the Consulting Agreement) as further described in the Consulting Agreement;

   b) oversee the liquidation and disposal of the Assets from the Facilities; provided, however, the Consultant shall have no obligation to remove the Assets from the Facilities at the conclusion of the Sale;

5

c) determine and implement appropriate promotional activities and external advertising prior to and during the Sale Term to effectively sell the Assets during the Sale Term;

d) in consultation with the Debtor, determine pricing of the Assets;

e) provide such other related services deemed necessary or prudent by the Debtor and the Consultant under the circumstances giving rise to the Sale; and

f) provide the Debtor with weekly reporting and reconciliation of all accounting information including a schedule of inventory cost, gross sales price, discount amount, shipping revenue and expense, sales tax, and net sales price in form reasonably acceptable to the Debtor and the Consultant.

17. In addition, except as otherwise provided in the Consulting Agreement, all Sale Proceeds (as defined in the Consulting Agreement) will be immediately deposited by the Consultant in a segregated account controlled by the Debtor (the **"Sale Proceeds Account"**). Notwithstanding the foregoing, the Consultant may hold deposits or interim payments from buyers pending reconciliation with such buyers on the delivery of any of the Assets. Upon confirmation of the delivery of such Assets, the Consultant will deposit in the Sale Proceeds Account the purchase amount corresponding to such Assets delivered. The Consultant will not return any portion of deposits held for buyers that have taken delivery of any of the Assets without prior written consent of the Debtor.

18. Within twenty (20) business days of the Sale Termination Date (as defined in the Consulting Agreement), the Consultant will also provide a final accounting of the Sale Proceeds in a form acceptable to the Debtor (the **"Final Accounting"**), and will provide to the Debtor all other information reasonably requested by the Debtor. The Final Accounting will include a summary of the Sale Proceeds realized, the Assets sold, and the total amounts paid or to be paid to the Consultant. The Debtor will file the Final Accounting with this Court within five (5) business days of receipt of the Final Accounting from the Consultant.

19. The Debtor has selected the Consultant as its sales consultant because the Consultant has extensive experience with consulting and assisting companies, such as the Debtor, with large scale inventory disposition. Specifically, the Consultant has ample experience with selling inventory and other assets in connection with large chapter 11 cases. The Debtor believes that the Consultant is both well-qualified and able to perform its duties as exclusive sales consultant in this chapter 11 case.

20. The Debtor also has selected the Consultant as its sales consultant because the Debtor believes that utilizing the assistance of the Consultant will result in maximum recovery for the Debtor's estate in connection with any sale of the Assets. The CRO has met with over twenty five (25) parties, including but not limited to, potential end users, liquidators and sales consultants, in connection with the potential disposition of the Assets. Upon evaluation of the various potential avenues for disposing of the Assets, the CRO has determined in his business judgment that any amounts potentially recovered from the direct purchase of the Assets from the Debtor would be insufficient and would not maximize recovery from such a sale of the Assets.

21. The CRO has also evaluated numerous proposals from various sales consultants and liquidators. In his business judgment, the CRO has determined that the proposal from the Consultant is the highest and best proposal to maximize recovery for the Debtor's estate from any sale of the Assets. Based upon the foregoing, the Debtor believes that utilizing the assistance of Consultant will result in maximum recovery for the Debtor's estate in connection with any sale of the Assets.

22. Based upon and except as set forth in the Affidavit of the Consultant (the **"Affidavit"**, a copy of which is attached hereto and incorporated by reference as **Exhibit B**), the Debtor believes that neither the Consultant nor its employees hold or represent any interest

7

adverse to the Debtor, and that the Consultant and each of its employees is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

23. Based upon and except as set forth in the Affidavit, the Debtor believes that the Consultant's employees have no connection with the Debtor, any of the Debtor's subsidiaries or affiliates, any creditors of the Debtor, or any other party in interest in this chapter 11 case, or their respective attorneys, accountants and advisors.

24. Based upon and except as set forth in the Affidavit, the Debtor believes that neither the Consultant nor any of its employees involved in this chapter 11 case is so connected with any bankruptcy judge of the Southern District of Ohio or the United States Trustee for the Southern District of Ohio or any assistant United States Trustee assigned to this case, as to render the appointment of the Consultant as exclusive sales consultant for the Debtor inappropriate under Bankruptcy Rule 5002(b).

25. The Debtor proposes to pay the Consultant, pursuant to the terms of the Consulting Agreement, for services rendered to the Debtor, and proposes to reimburse the Consultant for certain actual, reasonable, and documented out of pocket expenses incurred in connection with such services as further detailed in the Consulting Agreement, which the Debtor proposes should not be subject to challenge except under the reasonableness standard provided for in section 330 of the Bankruptcy Code.

26. The Debtor proposes to pay the Consultant a commission of ten percent (10%) of all Sale Proceeds (the **"Commission"**). The Debtor proposes that the Consultant also be entitled to reimbursement from the Sale Proceeds for budgeted or approved expenses advanced within three (3) business days of the presentation of invoices documenting such expenses. The Consultant will also provide invoices setting forth its Commission as earned and the Debtor

proposes the Consultant should be entitled to payment of such Commission from the Sale Proceeds as part of the weekly reconciliation set forth in the Consulting Agreement.

27. The Debtor also proposes that the Consultant not be required to file formal applications for approval of its compensation and reimbursement of expenses; provided, however, within five (5) business days of receipt from the Consultant, the Debtor will file with this Court a summary of Sale Proceeds and the amount to be paid to the Consultant (the "**Sale Summary**").

28. The Debtor submits that the fee structure proposed herein is reasonable in light of industry practice, and market rates, and is consistent with the fees typically charged by the Consultant.

29. The Consultant has not received a retainer from the Debtor. Furthermore, the Consultant has not received any payments from the Debtor in the period of one (1) year prior to the Petition Date through the date of this Motion. As of the date of this Motion, the Debtor does not owe the Consultant any amount for services performed or expenses incurred prior to the Petition Date and thus the Consultant is not a pre-petition creditor of the Debtor.

30. The Debtor believes that the retention of the Consultant is in the best interests of the Debtor and its estate and desires to employ the Consultant in connection with the sale of the Assets.

  **B.**   **Sale of the Assets and Sale Notice Procedures**

31. In order to maximize the value of the Assets for the benefit of the Debtor's estate, its creditors, and other parties in interest, the Debtor respectfully requests that this Court allow the Debtor to sell the Assets, with the assistance of the Consultant, as set forth in this Motion and the Consulting Agreement. The Debtor respectfully submits that the sale of the Assets, as

proposed herein, will maximize the value of the estate for the benefit of the Debtor's creditors.

32. Section 363(b) of the Bankruptcy Code provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 1107(a) of the Bankruptcy Code grants a debtor in possession the powers of a trustee in respect to various matters including sales under section 363(b) of the Bankruptcy Code.

33. This Court's power to authorize a sale under section 363(b) of the Bankruptcy Code is to be exercised at its discretion. *In re Baldwin United Corp,* 43 B.R. 888, 905 (Bankr. S.D. Ohio 1984). The key consideration is this Court finding that a good business reason exists for the sale. *Stephens Industries, Inc. v. McClung,* 789 F.2d 386 (6th Cir. 1986).

> [T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business… Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in *Lionel*, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike. He might, for example, look to such relevant factors as the proportionate value of the assets of the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

*In re Walter,* 83 B.R. 14, 19-20 (9th Cir. BAP 1988) (citing *In re Lionel Corporation,* 722 F.2d 1063, 1070-71 (2d Cir. 1983)).

34. Sound business reasons exist to justify the sale of the Assets as proposed herein. Since the Petition Date, the CRO has extensively focused his efforts on, among other things, selling and liquidating the inventory located in the Warehouses. The CRO has spent countless

hours marketing the Assets and meeting with numerous potential end users, liquidators and sales consultants regarding the potential sale of the Assets.

35. As previously discussed, the CRO has met with over twenty five (25) parties, including but not limited to, potential end users, liquidators and sales consultants, in connection with the potential sale of the Assets. Upon evaluation of the various potential avenues for disposing of the Assets, the CRO has determined in his business judgment that any amounts potentially recovered from the direct purchase of the Assets from the Debtor would be insufficient and would not maximize recovery from such a sale of the Assets.

36. The CRO has also evaluated numerous proposals from various sales consultants and liquidators. In his business judgment, the CRO has determined that the proposal from the Consultant is the highest and best proposal to maximize recovery for the Debtor's estate from any sale of the Assets. Based upon the foregoing, the Debtor submits that sound business reasons exist to justify the sale of the Assets as proposed herein, and the Debtor believes that utilizing the assistance of the Consultant will result in maximum recovery for the Debtor's estate in connection with any sale of the Assets.

37. Further, the Debtor believes that it would be more efficient, and the proceeds from any sale of the Assets will be maximized, if the Debtor is authorized to implement certain sale notice procedures to allow it to sell the Assets on an expedited basis without incurring the delay and costs of preparing, filing and serving motions to approve each sale. The Debtor proposes that the sale of any of the Assets be governed by the following sale notice procedures, in lieu of separate notice and hearing for each sale (the **"Sale Notice Procedures"**):

    a.    The Debtor will give written notice of each proposed sale (the **"Sale Notice"**) to (i) the Office of the U.S. Trustee for the Southern District of Ohio; (ii) counsel for the Committee; and (iii) any party known by the Debtor to be asserting a security interest in any of the Assets proposed to be sold (the **"Notice Parties"**).

b. The Sale Notice shall identify (i) the assets to be sold, (ii) the purchase price, (iii) the identity of the purchaser, and (iv) a statement by the Debtor as to whether the proposed purchaser has any connection with the Debtor or its current and/or former officers or directors. The Debtor shall include with the Sale Notice a copy of the written offer related to the sale of the assets subject to the Sale Notice, if such written offer exists.

c. Recipients of the Sale Notice will have three (3) business days to serve upon counsel for the Debtor objections to the proposed sale. Any Notice Party objecting to the proposed sale may serve such objection upon counsel for the Debtor via electronic mail or U.S. Mail and such objection does not need to be filed with this Court. If counsel for the Debtor receives no objections within such three-day period, then the Debtor and/or the Consultant shall be authorized to consummate the proposed sale and to take any and all action necessary to close the transaction and obtain the sale proceeds and deposit such sale proceeds in the Sale Proceeds Account, in accordance with the terms of the Consulting Agreement.

d. If counsel for the Debtor receives a timely objection to the proposed sale, then the Debtor and the objecting party shall use good faith efforts to resolve the objection. If the parties are unable to resolve the objection, the Debtor and/or the Consultant will take no further action to consummate the proposed sale without first obtaining further approval of this Court. The Debtor will seek an expedited hearing before this Court to determine any objection to any sale of the Assets.

e. After consummation of any sale of the Assets, the Debtor will file a report of such sale with this Court identifying (i) the assets sold, (ii) the purchase price, and (iii) the identity of the purchaser. The Sale Summary may be included with such report.

f. Any such sale of the Assets that is consummated, in accordance with the Sale Notice Procedures, shall be free and clear of all liens, claims, interests and encumbrances.

38. The Debtor requests, pursuant to section 363(f) of the Bankruptcy Code, that the sale of any of the Assets be free and clear of all liens, claims, interests or encumbrances held by any third party. The Debtor proposes to sell the Assets in a commercially reasonable manner, and expects that the value of the proceeds from such sales will fairly reflect the value of the property sold. The Debtor further proposes that any party with a lien on any of the Assets sold, if any such parties exist, shall have a corresponding security interest in the proceeds of such sale

with the same validity and priority as exist under state law pursuant to section 363(e) of the Bankruptcy Code (subject to any claims and defenses that the Debtor may possess with respect thereto).

39. In addition, the Debtor seeks the protections afforded under section 363(m) of the Bankruptcy Code with respect to any sale of the Assets. The Debtor submits that the sale of the Assets will be as a result of arm's length, negotiated transactions and thus entitled to the protections of section 363(m) of the Bankruptcy Code.

40. To implement the foregoing, the Debtor also seeks a waiver of the notice requirements under Bankruptcy Rule 6004 for the sale of the Assets and a waiver of the fourteen-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h).

41. Finally, the Debtor respectfully requests that any order entered by this Court granting the relief requested in this Motion provide that the foregoing Sale Notice Procedures and the filing of the Final Accounting by the Debtor satisfy the requirements under Bankruptcy Rule 6004(f)(1) and Local Rule 6004-1.

42. Allowing the Debtor to sell the Assets in the manner set forth in this Motion, with the assistance of the Consultant, constitutes the most efficient and cost-effective means of disposing of the Assets and will maximize the value of the Assets. Therefore, the Debtor respectfully submits that the relief requested in this Motion is in the best interest of the Debtor's estate and should be approved by this Court.

## NOTICE

43. No trustee or examiner has been appointed in this chapter 11 case. The Debtor has provided notice of this Motion to (i) the Office of the United States Trustee for the Southern

District of Ohio, (ii) counsel for the Committee; (iii) all parties asserting a security interest in the assets of the Debtor to the extent reasonably known to the Debtor; (iv) those parties requesting notice in this chapter 11 case; (v) all taxing authorities having jurisdiction over any of the Assets; (vi) those entities listed on the Debtor's Creditor Matrix; (vii) all Attorneys General in the States where the Assets are located; and (viii) the list of the Debtor's equity interest holders of record submitted to this Court. In light of the nature of the relief requested, the Debtor submits that no further notice is required or needed under the circumstances.

## NO PRIOR REQUEST

44. No prior application for the relief requested herein has been made by the Debtor to this or any other court.

## WAIVER OF MEMORANDUM OF LAW

45. This Motion includes citations to the applicable authorities and a discussion of their application to this Motion. Accordingly, the Debtor respectfully submits that such citations and discussion satisfy the requirement that the Debtor submit a separate memorandum of law in support of this Motion pursuant to Local Rule 9013-1(a).

WHEREFORE, the Debtor respectfully requests that this Court enter an Order, substantially in the form attached hereto as **Exhibit C**, (i) granting the Debtor authority to sell the Assets, pursuant to sections 105(a), 362, 363(b), (f) and (m), 1107 and 1108 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure and Local Rule 6004-1; (ii) approving notice thereof; (iii) authorizing and approving the retention and employment of the Consultant as the exclusive sales consultant for the Debtor, with compensation and reimbursement of expenses to be paid as an administrative expense in such amounts as may be allowed by this Court pursuant to sections 330, 503(b) and

507(a) of the Bankruptcy Code, and (iv) granting the Debtor such other and further relief as may be just and proper.

Dated: May 19, 2011

Respectfully submitted,

**FROST BROWN TODD LLC**

By: */s/ Ronald E. Gold*

Ronald E. Gold, Esq. (0061351)
Joseph B. Wells, Esq. (0082775)
Lindsey F. Baker, Esq. (0085017)
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
Telephone: 513.651.6800
Facsimile: 513.651.6981
E-mail: rgold@fbtlaw.com
E-mail: jbwells@fbtlaw.com
E-mail: lbaker@fbtlaw.com

**ATTORNEYS FOR DEBTOR AND DEBTOR-IN-POSSESSION**