# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

IN RE:                                    *

GLC LIMITED,                        *    CHAPTER 11

                                              *    JUDGE HOPKINS

            DEBTOR.                   *    CASE NO. 11-11090

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MODIFIED FIRST AMENDED DISCLOSURE STATEMENT OF DEBTOR PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE WITH REGARD TO DEBTOR'S MODIFIED FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION (WITH TECHNICAL MODIFICATIONS STATED ON RECORD AT DISCLOSURE STATEMENT HEARING)

Dated:  September 8, 2011

### FROST BROWN TODD LLC
Ronald E. Gold, Esq.
Joseph B. Wells, Esq.
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
Telephone: (513) 651-6800

## ATTORNEYS FOR THE DEBTOR AND DEBTOR IN POSSESSION

# TABLE OF CONTENTS

GLOSSARY OF TERMS ...........................................................................................................1

I. INTRODUCTION ...........................................................................................................1

    A.      Exhibits and Schedules to the Disclosure Statement. .............................................2

    B.      Disclosure Statement Order. ...................................................................................2

    C.      Classification of Claims and Interests....................................................................3

    D.      Holders of Claims Entitled to Vote........................................................................3

    E.      Voting Procedures....................................................................................................4

    F.      Confirmation Hearing. .............................................................................................5

II. BACKGROUND OF THE DEBTOR ............................................................................7

    A.      General Overview of the Debtor's Businesses. ......................................................7

III. EVENTS IN THE CHAPTER 11 CASE .....................................................................11

    A.      Bankruptcy Filing And First Day Orders.............................................................11

    B.      Official Committee in this Chapter 11 Case. ........................................................12

    C.      Retention of Legal Counsel and Financial Professionals. ....................................12

    D.      Asset Dispositions.................................................................................................12

    E.      Meeting of Creditors. ............................................................................................13

    F.      Schedules and Statements. ....................................................................................13

    G.      Avoidance Actions.................................................................................................14

    H.      Settlement Procedures Order .................................................................................14

    I.      Crabtree Adversary Proceeding. ...........................................................................14

    J.      Donnan Adversary Proceeding .............................................................................15

IV. THE PLAN ...................................................................................................................17

    A.      Administrative Expense Claims.............................................................................17

CINLibrary 0121049.0583831   2305226v11

B.      Administrative Claims Bar Date. ....................................................................18

C.      Priority Tax Claims. ........................................................................................18

D.      Priority Claims. ..............................................................................................19

E.      Fee Claims. .....................................................................................................19

F.      Treatment of Claims Against and Interests in the Debtor. .....................19

G.      Distributions Under the Plan. .......................................................................22

H.      Treatment of Disputed Claims. ....................................................................24

I.      Executory Contracts and Unexpired Leases. ...............................................24

J.      Plan Administrator. .......................................................................................25

K.      The Oversight Committee ..............................................................................29

L.      Confirmation Process. ...................................................................................30

M.      Acceptance. ....................................................................................................31

N.      Unfair Discrimination and Fair and Equitable Tests. ...............................31

O.      Feasibility. ......................................................................................................32

P.      Miscellaneous Requirements. .......................................................................32

Q.      Best Interests Test. ........................................................................................33

R.      Effect of Confirmation of the Plan. ..............................................................34

S.      Consummation. ..............................................................................................38

T.      Conditions to Effective Date; Modification or Revocation of the Plan ................38

V.      RISK ASSOCIATED WITH THE PLAN ...................................................................39

A.      Parties in interest may object to the Debtor's classification of Claims. ................39

B.      The commencement of the Chapter 11 Case may have negative implications under certain contracts of the Debtor. ................................................39

C.      The Plan Proponent may not be able to secure confirmation of the Plan. .............40

3

D.  The Plan Proponent may object to the amount or classification of your Claim............................................................................................................40

E.  The information in this Disclosure Statement is based on estimates, which may turn out to be incorrect. ......................................................................40

VI.  CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN .................41

VII.  ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN .............................................................................................................41

A.  Liquidation Under Chapter 7. ..............................................................41

B.  Alternative Plan of Reorganization........................................................41

VIII.  MISCELLANEOUS ...................................................................................42

A.  Securities and Exchange Commission .....................................................42

IX.  CONCLUSION AND RECOMMENDATION..................................................43

# GLOSSARY OF TERMS

For purposes of this Disclosure Statement, all capitalized terms used but not defined in this Disclosure Statement shall have the meaning given them in the Plan.

# I.  INTRODUCTION

GLC Limited, as debtor and debtor in possession (the "Plan Proponent") submits this Disclosure Statement pursuant to section 1125 of the Bankruptcy Code to holders of Claims against and Interests in the Debtor in connection with (i) the solicitation of votes to accept or reject the Plan, a copy of which is attached hereto and incorporated herein as **Exhibit A**, filed with the Bankruptcy Court by the Plan Proponent and (ii) the hearing to consider confirmation of the Plan scheduled for October 27, 2011, commencing at 10:00 a.m. prevailing Eastern Time.

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under chapter 11 of the Bankruptcy Code, the Debtor is authorized to reorganize or liquidate its business for the benefit of itself, its creditors and its equity interest holders.  In addition to permitting the rehabilitation of the Debtor, another goal of chapter 11 is to promote equality of treatment for similarly situated creditors and similarly situated equity interest holders with respect to the distribution of a debtor's assets.

The commencement of the Chapter 11 Case creates an estate that is comprised of all of the legal and equitable interests of the Debtor as of the commencement date.  The Bankruptcy Code provides that the Debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

The consummation of the Plan is the principal objective of a chapter 11 reorganization case.  The Plan sets forth the means for satisfying claims against and interests in the Debtor. Confirmation of the Plan by the Bankruptcy Court binds the Debtor, any person acquiring property under the Plan, any creditor or equity interest holder of the Debtor and any other person or entity as may be ordered by the Bankruptcy Court in accordance with the applicable provisions of the Bankruptcy Code.

Certain holders of claims against and interests in the Debtor are permitted to vote to accept or reject the Plan.  Prior to soliciting acceptances of the Plan, section 1125 of the Bankruptcy Code requires the Debtor to prepare this Disclosure Statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding the Plan.  Chapter 11 does not require that each holder of a claim against or interest in the Debtor vote in favor of the Plan in order for the Plan to be confirmed.  At a minimum, however, the Plan must be accepted by at least one class of claims impaired under the Plan, such acceptance being made by the holders of a majority in number and two-thirds in amount of the claims actually voting in such class.  The Plan Proponent is submitting this Disclosure Statement to holders of Claims against and Interests in the Debtor to satisfy the requirements of section 1125 of the Bankruptcy Code.

1

The Plan is a plan of liquidation. The Plan shall be funded through the effective collection and liquidation of the Remaining Assets of the Debtor by the Plan Administrator into Cash for the benefit of Creditors of the Debtor. Descriptions of the Plan Administrator and the Remaining Assets are set forth in this Disclosure Statement.

The Plan is the result of careful and lengthy review and analysis of the Debtor's assets, Causes of Action and numerous alternatives by the Debtor and its advisors. The Plan also represents the result of significant and meaningful discussions and negotiations between the Debtor and the Committee.

## A.      **Exhibits and Schedules to the Disclosure Statement.**

Attached as Exhibits to this Disclosure Statement are the following documents:

- The Plan (**Exhibit A**)

- Order of the Bankruptcy Court entered on September 7, 2011 (the "Disclosure Statement Order"), among other things, approving this Disclosure Statement and establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan (**Exhibit B**)

- Potential Parties for Causes of Action (**Exhibit C**)

- Liquidation Analysis (**Exhibit D**)

In addition, a ballot for voting on the Plan is enclosed with this Disclosure Statement distributed to the holders of Claims that are entitled to vote to accept or reject the Plan.

## B.      **Disclosure Statement Order.**

On September 7, 2011, after notice and a hearing, the Bankruptcy Court entered the Disclosure Statement Order, a copy of which is attached hereto as **Exhibit B**, approving this Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable hypothetical, reasonable investors typical of the Debtor's creditors to make an informed judgment whether to accept or reject the Plan. **APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.**

The Disclosure Statement Order sets forth in detail the deadlines, procedures, and instructions for voting to accept or reject the Plan and for filing objections to confirmation of the Plan, the record date for voting purposes, and the applicable standards for tabulating ballots. In addition, detailed voting instructions accompany each ballot. Each holder of a Claim entitled to vote on the Plan should read this Disclosure Statement, the Plan, the Disclosure Statement Order, and the instructions accompanying the ballot in their entirety before voting on the Plan. These documents contain important information concerning the classification of Claims for voting purposes and the tabulation of votes. No solicitation of votes to accept the Plan may be made except pursuant to section 1125 of the Bankruptcy Code.

2

## C.    Classification of Claims and Interests.

Section 1122 of the Bankruptcy Code requires that the Plan classify the claims of the Debtor's creditors and the interests of its equity holders. The Bankruptcy Code also provides that, except for certain claims classified for administrative convenience, a plan may place a claim of a creditor or an interest of an equity holder in a particular class only if such claim or interest is substantially similar to the other claims or interest of such class. The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest agrees to a less favorable treatment of its claim or interest.

The Plan Proponent believes that the Plan has classified all Claims against and Interests in the Debtor in compliance with the requirements of the Bankruptcy Code. A detailed discussion of the classification treatment of Claims and Interest is set forth in this Disclosure Statement.

## D.    Holders of Claims Entitled to Vote.

Pursuant to the provisions of the Bankruptcy Code, only holders of allowed claims or equity interests in classes of claims or equity interests that are impaired and that are not deemed to have rejected the Plan are entitled to vote to accept or reject the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, classes of claims or equity interests in which the holders of claims or equity interests are unimpaired under the Plan are deemed to have accepted the plan and are not entitled to vote to accept or reject the Plan. Pursuant to section 1126(g) of the Bankruptcy Code, classes of claims or equity interests in which the holders of claims or equity interests will receive no recovery under the Plan are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

The Bankruptcy Code defines "acceptance" of the Plan by a class of claims as acceptance by creditors in that class that hold at least two-thirds in dollar amount and more than one-half in number of the claims that cast ballots for acceptance or rejection of the plan. Holders of Class 1 Claims are unimpaired and are thus deemed to accept the Plan. Class 2 is impaired. Thus, acceptance of the Plan by Class 2 will occur only if at least two-thirds in dollar amount and a majority in number of the holders of Allowed Class 2 Claims that cast their ballots in favor of acceptance of the Plan. A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code. For a more detailed description of the requirements for confirmation of the Plan, see this Disclosure Statement.

If a Class of Claims entitled to vote on the Plan rejects the Plan, the Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code permits the confirmation of the Plan notwithstanding the nonacceptance of the Plan by one or more impaired classes of claims or equity interests. Under section 1129(b) of the Bankruptcy Code, the Plan may be confirmed by the Bankruptcy Court if it does not "discriminate unfairly" and is "fair and equitable" with respect to each nonaccepting class. A more detailed description of the requirements for confirmation of a nonconsensual plan is set forth in this Disclosure Statement. As discussed below, Classes 3 and 4 are deemed to reject the Plan. In view of the deemed rejection of the Plan by Classes 3 and 4, the Debtor will request that

the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.  If any other impaired Class under the Plan fails to accept the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such rejecting Class(es).

E.      **Voting Procedures.**

If you are entitled to vote to accept or reject the Plan, a ballot is enclosed for the purpose of voting on the Plan.  If you hold Claims in more than one Class and you are entitled to vote Claims in more than one class, you will receive separate ballots, which must be used for each separate Class of Claims.  Each ballot contains detailed instructions for completing and submitting the ballot.  Please vote and return your ballot(s) to the respective location specified in the instructions accompanying each ballot.

**DO NOT RETURN ANY NOTES OR OTHER SECURITIES WITH YOUR BALLOT.**

**TO BE COUNTED, YOUR BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE FORWARDED IN ACCORDANCE WITH THE ACCOMPANYING INSTRUCTIONS IN SUFFICIENT TIME FOR IT TO BE RECEIVED BY COUNSEL FOR THE DEBTOR, FROST BROWN TODD LLC, 3300 GREAT AMERICAN TOWER, 301 EAST FOURTH STREET, CINCINNATI, OHIO 45202, ATTN: RONALD E. GOLD, NO LATER THAN 4:00 P.M., PREVAILING EASTERN TIME, ON OCTOBER 14, 2011.  PLEASE FOLLOW CAREFULLY THE INSTRUCTIONS CONTAINED IN YOUR BALLOT.  ANY EXECUTED BALLOT RECEIVED THAT DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN SHALL NOT BE COUNTED.**

Any Claim in an impaired Class as to which an objection or request for estimation is pending or which is scheduled by the Debtor as unliquidated, disputed, or contingent and for which no proof of claim has been filed is not entitled to vote unless the holder of such Claim has obtained an order of the Bankruptcy Court temporarily allowing such Claim for the purpose of voting on the Plan.

If you are a holder of a Claim entitled to vote on the Plan and you did not receive a ballot, received a damaged ballot, or lost your ballot, or if you have any questions concerning this Disclosure Statement or the Plan, please contact Ronald E. Gold at (513) 651-6800.

CINLibrary 0121049.0583831   2305226v11

F.  **Confirmation Hearing.**

Pursuant to section 1128 of the Bankruptcy Code, the Confirmation Hearing will be held on October 27, 2011, commencing at 10:00 a.m. prevailing Eastern Time, before the Honorable Jeffery P. Hopkins, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of Ohio, 411 U.S. Courthouse, U.S. Bankruptcy Court, Atrium Two Suite 800, 221 East Fourth Street, Cincinnati, Ohio 45202.

**PURSUANT TO THE DISCLOSURE STATEMENT ORDER, THE BANKRUPTCY COURT HAS DIRECTED THAT OBJECTIONS, IF ANY, TO CONFIRMATION OF THE PLAN MUST BE IN WRITING, AND: (A) STATE THE NAME AND ADDRESS OF THE OBJECTING PARTY AND THE NATURE OF THE CLAIM OR INTEREST OF SUCH PARTY; (B) STATE WITH PARTICULARITY THE LEGAL AND FACTUAL GROUNDS OF ANY OBJECTION OR PROPOSED MODIFICATION; (C) PROVIDE, WHERE APPLICABLE, THE SPECIFIC TEXT THAT THE OBJECTING PARTY BELIEVES TO BE APPROPRIATE TO INSERT INTO THE PLAN; AND (D) BE FILED, TOGETHER WITH PROOF OF SERVICE, WITH THE BANKRUPTCY COURT AND SERVED ON: (I) COUNSEL FOR THE DEBTOR, FROST BROWN TODD LLC, 3300 GREAT AMERICAN TOWER, 301 EAST FOURTH STREET, CINCINNATI, OHIO 45202, ATTN: RONALD E. GOLD; (II) THE OFFICE OF THE UNITED STATES TRUSTEE, ATTN: MONICA KINDT, 36 EAST SEVENTH STREET, SUITE 2030, CINCINNATI, OHIO 45202 AND (III) COUNSEL FOR THE COMMITTEE, FRANK DEBORDE, MORRIS, MANNING, AND MARTIN, LLP, 1600 ATLANTA FINANCIAL CENTER, 3343 PEACHTREE ROAD, NE, ATLANTA, GA 30326; SUCH AS TO BE ACTUALLY RECEIVED NO LATER THAN 4:00 P.M. PREVAILING EASTERN TIME ON OCTOBER 21, 2011, UNLESS AN OBJECTION IS TIMELY FILED AND SERVED AS PROVIDED HEREIN, IT MAY NOT BE CONSIDERED AT THE CONFIRMATION HEARING.**

The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

**THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF. HOLDERS OF CLAIMS AND INTERESTS SHOULD CAREFULLY READ THIS DISCLOSURE STATEMENT IN ITS ENTIRETY, INCLUDING THE PLAN, PRIOR TO VOTING ON THE PLAN.**

**THIS DISCLOSURE STATEMENT HAS NOT BEEN FILED WITH, OR APPROVED OR DISAPPROVED BY, THE SECURITIES AND EXCHANGE COMMISSION, AND THE COMMISSION HAS NOT PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.**

FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND INTERESTS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN.  IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING.  THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN, AND NOTHING STATED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DEBTOR OR HOLDERS OF CLAIMS OR INTERESTS. CERTAIN OF THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS.  THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES.  ALL HOLDERS OF CLAIMS SHOULD CAREFULLY READ AND CONSIDER FULLY THE RISK FACTORS SET FORTH IN ARTICLE V OF THIS DISCLOSURE STATEMENT BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

SUMMARIES OF CERTAIN PROVISIONS OF AGREEMENTS REFERRED TO IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE COMPLETE AND ARE SUBJECT TO, AND ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO, THE FULL TEXT OF THE APPLICABLE AGREEMENT, INCLUDING THE DEFINITIONS OF TERMS CONTAINED IN SUCH AGREEMENT.

THE DEBTOR BELIEVES THAT THE PLAN WILL ACCOMPLISH THE OBJECTIVES OF CHAPTER 11 AND THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR, ITS CHAPTER 11 ESTATE, AND ITS CREDITORS.

NO REPRESENTATIONS OR ASSURANCES, IF ANY, CONCERNING THE DEBTOR (INCLUDING, WITHOUT LIMITATION, ITS FUTURE BUSINESS OPERATIONS) OR THE PLAN ARE AUTHORIZED BY THE DEBTOR AND/OR THE COMMITTEE OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE BY ANY PERSON TO SECURE YOUR VOTE THAT ARE OTHER THAN HEREIN CONTAINED SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE PLAN PROPONENT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

THIS IS A SOLICITATION SOLELY BY THE DEBTOR AND IS NOT A SOLICITATION BY ANY SHAREHOLDER, ATTORNEY, OR ACCOUNTANT FOR THE DEBTOR OR THE COMMITTEE.  THE REPRESENTATIONS, IF ANY, MADE HEREIN ARE THOSE OF THE DEBTOR AND NOT OF SUCH SHAREHOLDERS, ATTORNEYS, OR ACCOUNTANTS, EXCEPT AS MAY BE OTHERWISE SPECIFICALLY AND EXPRESSLY INDICATED.

CINLibrary 0121049.0583831   2305226v11

**THE DEBTOR URGES CREDITORS TO VOTE TO ACCEPT THE PLAN.**

## II.    BACKGROUND OF THE DEBTOR

### A.    General Overview of the Debtor's Businesses.

#### 1.    Ownership and Purpose

The Debtor is a limited liability company that was organized under the laws of the State of West Virginia in March 2004.  The Debtor has its principal place of business at 402 State Street, Proctorville, Ohio 45669.  The Debtor is a retail liquidation company, with its principal business being the sale and/or redistribution of wholesale retail consumer products.  The Debtor maintains warehouses in Huntington, West Virginia and Columbus, Ohio.  In addition to the above-referenced warehouse, the Debtor maintained retail locations in (1) Proctorville, Ohio; (2) Huntington, West Virginia; (3) Nitro, West Virginia; (4) LeSage, West Virginia; and (5) Pigeon Forge, Tennessee.

The Debtor currently uses, or has used at various times since its formation, the following trade names or "d/b/a" names: GLC Limited, Inc., Global Liquidation Center, Global Liquidations, Global Liquidation LLC, GLC Discount, GLC Wholesale, ShopGLC, GLC Unlimited, Dan's Sporting Goods, Dan's Sports Shop, Trustworthy Hardware Store, Lailah's Mini Mart and DJs Mini Market.

Gregory and Linda Crabtree are the sole shareholders of the Debtor and, until February 21, 2011, Gregory and Linda Crabtree, as the directors, officers, and shareholders of GLC, had primary responsibility for the assets and operation of GLC.  Prior to February 2011, the Debtor had retained James R. Burritt of MainStream, LLC as the Chief Restructuring Officer of the Debtor.  Mr. Burritt's retention by the Debtor is discussed below.

Pursuant to a letter from L. David Duffield, counsel for Gregory and Linda Crabtree, dated February 21, 2011, the Debtor was advised that Gregory and Linda Crabtree resigned as directors, officers and employees of the Debtor.  Gregory and Linda Crabtree were not asked to resign by the Debtor nor were they terminated by the Debtor but instead resigned from such positions on their own volition.

#### 2.    Investment Scheme[1]

In order to fund and operate the Debtor, Gregory and Linda Crabtree were required to obtain capital from outside lenders or individuals.  Following the Debtor's formation, Gregory and Linda Crabtree solicited several individuals, who previously invested in the Debtor, to solicit third parties to invest in the Debtor.  Based upon the Debtor's independent investigation, under the direction of the Chief Restructuring Officer, those individuals who solicited new investors

---

[1] Prior to the Petition Date, MainStream, LLC prepared a report that was provided to parties who made investments in the Debtor entitled "GLC Limited, Inc. Final Analysis for Years Ending December 31, 2008, 2009 and 2010," (the "MainStream Report").  The MainStream Report was filed with the Bankruptcy Court as Exhibit B-3 in the Crabtree Adversary Proceeding.

and investments on behalf of the Debtor received commissions from the Debtor of approximately 15%-20% of all investments arranged or solicited from the third party investors in the Debtor. Based upon the Debtor's independent investigation, the Debtor believes that these parties solicited investments from roughly 100 individuals and entities to the Debtor.

Based upon the Debtor's independent investigation, the Debtor believes that investors were often told that the money that they were investing in the Debtor would be used to purchase inventory which the Debtor would then sell in its retail stores or on eBay resulting in significant return on investment to the investors. Based upon the Debtor's independent investigation, and based upon a preliminary financial analysis for the calendar years 2007 through 2010, a disparity exists between amounts invested in the Debtor by the investors and the actual inventory purchase by the Debtor:

| | Investor Money | Inventory Purchased |
|---|---|---|
| 2007 | 799,000 | 775,000 |
| 2008 | 12,349,000 | 2,100,000 |
| 2009 | 33,411,000 | 5,281,000 |
| 2010 | 35,357,000 | 3,637,000 |
| Total | **$81,916,000** | **$11,793,000** |

Based upon the Debtor's independent investigation, the majority of the investments solicited from individual investors to the Debtor were evidenced by notes given by the Debtor to the investors. The terms for each investment in the Debtor were substantially similar. Investors generally agreed to invest funds in the Debtor from 3 months to 1 year at interest rates ranging from 50-70% per annum, on average, to as high as 133% (in certain instances). Principal and interest were generally paid upon maturity of the note. As initial notes became due, the Debtor was required to secure investments from new investors. Increasing volumes of new money was necessary in order to ensure that the Debtor would have sufficient funds available to repay prior principal investments, satisfy the interest rates promised to such investors, and to pay the commissions claimed to be due to various third parties. The investment scheme thus relied upon the continuous influx of additional investors prepared to offer increasing investments.

Based upon the Debtor's independent investigation, the Debtors' investment scheme rendered the Debtor insolvent soon after it was commenced and that insolvency deepened as the Debtor was required to solicit ever-increasing investments from an ever-increasing numbers of investors. Eventually the Debtor was unable to secure the volume of new investments necessary to maintain the investment scheme and the Debtor defaulted on its financial obligations, including outstanding notes to investors.

8

Based upon the Debtor's independent investigation, since 2008, the Debtor has made payment(s) to many of the investors, using funds invested by other investors. According to the books and records of the Debtor, as of the Petition Date, the Debtor has made payments to certain investors in the approximate aggregate amount of not less than $68,000,000.

3. <u>Financial Summary</u>

(a) As of the Petition Date, the Debtor's Schedules and Statement of Financial Affairs reflected estimated assets totaling $18,231,434.06[2] and liabilities totaling $28,095,356.25. These amounts were based upon an independent review of the Debtor's books and records by the newly retained Chief Restructuring Officer of the Debtor, Mr. James Burritt. Based upon subsequent marketing efforts by the Debtor and its Chief Restructuring Officer, the Debtor determined that realizable value of those assets, once again excluding potential recoveries from Causes of Action, was significantly less than what was reflected on the Debtor's books and records when the Chief Restructuring Officer was retained by the Debtor. As detailed below, the most significant difference in the value of the Debtor's assets was in the actual value of the inventory held by the Debtor on the Petition Date. After being retained by the Debtor, and extensive marketing efforts with leading retailers and liquidators, the Chief Restructuring Officer determined that much of the inventory held by the Debtor was unsellable, consisting, in part, of obsolete or incomplete items which have no resale value.

(b) During calendar year 2010, the Debtor had gross sales of approximately $3,742,000 and operating losses of approximately $2,223,000. In addition, the Debtor received new investments in calendar year 2010 of approximately $34,700,000 and made payments to investors of approximately $34,200,000 in calendar year 2010.

(c) As of the Petition Date, the cash balance in the Debtor's accounts was approximately $26,735.48. As of the date of this Disclosure Statement, the cash balance in the debtor-in-possession account(s) was approximately $103,545.20.

(d) As of the Petition Date, the Debtor's estimated trade accounts receivable were approximately $14,909.68, plus $568,000 owing to the Debtor by Greg and Linda Crabtree.

(e) As of the Petition Date, and notwithstanding what was reflected on the Debtor's books and records prepared prior to the retention of Mr. Burritt and MainStream, LLC, the Debtor's records indicate that it had inventory with a book value of approximately $1,250,000. As of the date hereof, the Debtor has sold substantially all of its inventory and realized gross proceeds of $807,835 from said inventory sales. The Debtor, through its chief restructuring officer, Mr. Burritt, undertook an extensive marketing process to dispose of the inventory. That process was designed to ensure that the value of the inventory was maximized for the benefit of the Estate.

(f) As of the Petition Date, the Debtor owned various office equipment, computers, maintenance equipment and office furniture and furnishings. The Debtor estimated that the net book value of such equipment as of the Petition Date totaled approximately $20,000.

---

[2] Exclusive of Causes of Action.

4. **Liabilities.**

(a) **Secured Liabilities.** As of the Petition Date, the Debtor scheduled secured claims in the aggregate amount of $255,899.64. As of the Bar Date, Secured Claims totaling $176,808.05 were filed with the Bankruptcy Court. The Debtor believes that many of these claims may not be properly perfected under applicable law. These proported secured claims will be subject to objections to be filed by the Debtor and to the extent that they are not properly perfected under applicable law, will be reclassified by orders of the Bankruptcy Court.

(b) **Unsecured Priority Claims.** As of the Petition Date, the Debtor scheduled unsecured priority claims of $69,000.43, and as the date of this Disclosure Statement, priority claims have been filed in an approximate aggregate amount of $129,922.12. The Debtor believes that many of these claims will be the subject of objections before distributions are made to the holders of such claims. However, the Debtor cannot state with any degree of certainty the amount of such claims which will ultimately become Allowed Claims.

(c) **Unsecured Non Priority Claims.** As of the Petition Date, the Debtor believed its unsecured nonpriority claims to be approximately $27,770,456.18, which includes the unsecured claims of individuals and entities which made investments in the Debtor. As of the Bar Date, unsecured claims totaling $40,752,573.96 were filed with the Bankruptcy Court. The Debtor and its professionals are attempting to reconcile the filed Claims with the Claims listed on the Schedules. Based upon a review of the claims filed with the Bankruptcy Court, many of the investors filed claims seeking amounts in excess of the amount(s) they invested in the Debtor. The Debtor intends to object to Class 2 Claims that seek recoveries from the Estate of amount(s) in excess of the actual funds invested in the Debtor less funds paid by the Debtor to the investor/claimant. It is the position of the Debtor that all other amounts claimed as part of a Class 2 Claim, including but not limited to, "benefit of the bargain" measure of damages, interest, consequential damages, remedies, statutory damages any other measure of damages that are inconsistent with the cash-in/cash-out theory represent false profits which are not recoverable from the Estate in the Chapter 11 Case. The total amount of Class 2 Claims will be dependent on the outcome of the claim objection process.

5. **Retention of Mainstream LLC.**

In October 2010, certain of the parties which made investments in the Debtor formed an ad-hoc and unofficial committee of investors/noteholders (the "Pre-Petition Committee"). The Pre-Petition Committee included all of the members of the Committee, plus certain other investors who are not members of the Committee. James Donnan was a member of the Pre-Petition Committee. The Pre-Petition Committee retained the law firm of Morris, Manning and Martin, LLP as its counsel. The Debtor is informed and believes that, the Pre-Petition Committee advised the Debtor that the Pre-Petition Committee believed that the Debtor should retain a financial advisor. The Debtor is informed and believes that the Pre-Petition Committee interviewed three firms, including, MainStream, LLC, Finley, Colmer & Company and Conway McKenzie & Dunleavy. The Debtor is informed that the Pre-Petition Committee recommended to the Debtor that the Debtor should retain MainStream, LLC, as its financial advisor, because of

10

MainStream, LLC's expertise in inventory liquidation, and because MainStream, LLC proposed to be compensated as a percentage of inventory liquidated (as opposed to other firms that only sought an hourly retention), and because of its forensic accounting expertise and experience. In December 2010, MainStream, LLC signed its original engagement letter with the Debtor to perform certain advisory services for the Debtor. MainStream, LLC's engagement by the Debtor was ultimately expanded prior to the Petition Date. Prior to its retention by the Debtor, neither MainStream, LLC or Mr. Burritt were affiliated with or had any business dealings or worked with (a) the Debtor, (b) Greg Crabtree or Linda Crabtree, (c) the officers, employees, shareholders or directors of the Debtor, or (d) any of the members of the Pre-Petition Committee, except its retained counsel, Morris, Manning and Martin, LLP, or (e) James and Mary Donnan. Additional detail regarding MainStream, LLC and its engagement can be found in the retention application for Mr. Burritt that was filed with the Bankruptcy Court [DN 100].

## III.      EVENTS IN THE CHAPTER 11 CASE

### A.      Bankruptcy Filing And First Day Orders.

On the Petition Date, the Debtor filed its voluntary petition under chapter 11 of the Bankruptcy Code. In connection with its chapter 11 petition, the Debtor filed a number of initial motions requesting relief designed to minimize the disruption of the Debtor's operations and to facilitate a successful reorganization. Specifically, the Debtor filed certain motions seeking, among other things, authorization to:

- Motion of the Debtor for Entry of an Order (A) Scheduling an Expedited Hearing On First Day Motions and Applications Filed by the Debtor and (B) Approving the Form and Manner of Notice Thereof [DN 10]

- Motion of the Debtor for an Order Waiving Compliance with Local Bankruptcy Rule 9013-2 in Connection with Certain First Day Motions and Applications [DN 4]

- Motion for Entry of an Order Granting the Debtor Additional Time Within Which to File Schedules and Statements [DN 5]

- Motion of the Debtor for an Order (A) Authorizing the Debtor to (1) Pay and Honor Certain Pre-Petition Claims for (i) Wages, Salaries, Employee Benefits and Other Compensation, (ii) Withholdings and Deductions and (iii) Reimbursable Expenses; (2) Continue to Provide Certain Employee Benefits in the Ordinary Course of Business; (3) Pay All Related Costs and Expenses; and (B) Directing Banks to Receive, Process, Honor and Pay all Checks Presented for Payment and Electronic Payment Requests Relating to the Foregoing [DN 6]

- Motion of the Debtor for Entry of an Order under 11 U.S.C. §§ 105(a) and 366 (i) Prohibiting Utilities from Discontinuing, Altering, or Refusing Service, (ii) Establishing Procedures for Determining Adequate Assurances of Payment, and (iii) Establishing

Procedures for Utilities to Opt Out of the Debtor's Proposed Procedures for Adequate Assurance [DN 7]

- Motion of the Debtor for Entry of an Order (a) Authorizing the Debtor to Remit and Pay Sales, Use, and Franchise Taxes and Certain Other Government Charges and (b) Approving Related Relief [DN 8]

- Emergency Motion of the Debtor for Entry of Interim and Final Orders (A) Authorizing Use of Cash Collateral; (B) Granting Adequate Protection; and (C) Granting Related Relief [DN 9]

- Motion of the Debtor for Entry of an Order (I) Authorizing Temporary Use of Pre-Petition Bank Accounts, (II) Allowing Payment of Certain Checks Presented for Payment Prepetition and (III) directing Banks to Process, Honor and Pay Certain Checks Presented for Payment Prepetition [13]

- Affidavit of James R. Burritt, Chief Restructuring Officer of GLC Limited, In Support of First Day Motions [DN 14]

### B.    Official Committee in this Chapter 11 Case.

Official committees appointed under section 1102 of the Bankruptcy Code have, among other rights, the right to (i) consult with a debtor concerning administration of the case, (ii) investigate the acts, conduct, assets, liabilities and financial condition of the debtor, the operation of the debtor's business, and any other matter relevant to the case or to the formulation of a plan, and (iii) participate in the formulation and acceptance or rejection of a plan. The Debtor has worked closely with the Committee formed in this Chapter 11 Case.

The Committee in this Chapter 11 Case was appointed by the United States Trustee on March 7, 2011. The creditors appointed to serve on the Committee are: (i) Karen & Kevin Price, (ii) Tom E. Baugh, Jr., (iii) J&M Brands, (iv) Maurice J. Koury, and (v) UGAPRICE, LLC. Pursuant to authorization by the Bankruptcy Court, the Committee employed Morris Manning and Martin LLP to represent the Committee in this Chapter 11 Case.

### C.    Retention of Legal Counsel and Financial Professionals.

The Bankruptcy Court has entered orders authorizing (a) the Debtor to retain the following professionals to assist in this Chapter 11 Case: (i) Frost Brown Todd, LLC as chapter 11 attorneys; and (ii) James R. Burritt as Chief Restructuring Officer and (iii) Leon C. Ebbert, PC, CPA as accountants and (b) the Committee to retain Morris Manning and Martin LLP as Counsel.

### D.    Asset Dispositions.

On April 8, 2011, the Debtor filed Emergency Motion of the Debtor for Entry of an Order, Pursuant to 11 U.S.C. 105(a) and 363, Approving Expedited Procedures to Sell Certain De Minimis Assets of the Debtor Free and Clear of All Liens, Claims, Interests and Encumbrances (the "De Minimis Asset Motion")]. On May 19, 2011, the Debtor filed the

12

Motion of Debtor for Order: (A) Authorizing the Sale of the Debtors Inventory Assets Pursuant to 11 U.S.C. § 363(b), (f) and (m); (B) Approving Notice Thereof; and (C) Approving the Retention, Employment and Compensation of Great American Group, LLC and Broadstreet Capital as Sales Consultant to the Debtor (the "Asset Sale Motion"). As of the date hereof, the Debtor has sold the majority of its inventory.

**E.**      <u>**Meeting of Creditors.**</u>

On May 5, 2011 the United States Trustee for the Southern District of Ohio conducted the section 341 meeting of creditors.

**F.**      <u>**Schedules and Statements.**</u>

The Debtor filed its Schedules and Statement of Financial Affairs on April 29, 2011.

## G.    Avoidance Actions

The Debtor, the Committee and their professionals are in the process of analyzing all transfers made by the Debtor prior to the Petition Date and the Debtor is seeking to recover those transfers or fraudulent conveyances pursuant to the provisions of the Bankruptcy Code and applicable state law.  Such transfers include, but are not limited to, transfers made during the period prior to the Petition Date to certain current and former investors in the Debtor, i.e., the "net winner" payments, commissions and potential redemptions to those investors/transferees who are not good faith transferences for value.  Based upon such analysis and the Debtor's Schedules, the Debtor and its professionals have determined that, during this period the Debtor transferred over $60,000,000 to various investors/creditors of the Debtor.  At this time, the Debtor cannot estimate what portion of the above transfers will be recoverable by the Estate.  However, as of the date hereof, the Debtor has sent demand letters to in excess of 20 parties seeking to recover in excess of $10,000,000, excluding demands made to insiders of the Debtor, including Mr. and Mrs. Crabtree, Mr. and Mrs. Donnan, and members of their respective families.  If the Debtor is unable to reach agreements with these parties, the Debtor will commence adversary proceedings in the Bankruptcy Court. Pursuant to the Settlement Procedures Order, as of the date hereof, the Debtor has reached settlements with certain "net winners" that will generate proceeds of approximately $500,000 for the benefit of the Debtor's estate.

## H.    Settlement Procedures Order

On June 16, 2011, the Debtor filed its Settlement Procedures Motion, *Motion Of The Debtor For Entry Of An Order Fixing Class Of Controversies And Authorizing The Debtor To Compromise And Settle Controversies Within Such Class Without Further Notice Or Hearing* [DN 177] and on July 12, 2011, the Court entered the *Order Fixing Class Of Controversies And Authorizing Debtor To Compromise And Settle Controversies Within Class Without Further Notice Or Hearing* [DN 202] the ("Settlement Procedures Order").  The Settlement Procedures Order details procedures for the Debtor to resolve avoidance action claims with the involvement and approval of the Committee and the United States Trustee.   A copy of the Settlement Procedures Order is attached, hereto and incorporated as Exhibit E.

## I.    Crabtree Adversary Proceeding.

On March 24, 2011, the Debtor initiated an Adversary Proceeding against Gregory L. Crabtree, Linda L. Crabtree, and GLC Enterprises, Adversary Proceeding No. 1:11-ap-01030.  Contemporaneously, the Debtor also filed a motion for preliminary injunction in an effort to freeze the assets of the Defendants.  On March 30, 2011, the Bankruptcy Court granted Debtor's motion for preliminary injunction.   An Order was entered prohibiting the Defendants from selling, disposing of, or otherwise transferring any of their assets.

The Adversary Proceeding against the above named parties is an action for breach of fiduciary duty, civil conspiracy, unjust enrichment, preference, fraudulent conveyance, recovery of avoidable transfers, and for constructive trust.  It is alleged that each of the defendants had responsibility for and did oversee the maintenance of Debtor's books and records and had control over all of Debtor's assets and operations.  From March 2004 until February 2011, each of the

defendants engaged in self-dealing and used, without compensation or other consideration to Debtor, the cash, credit, equipment, and other personal and real property, services, and resources of Debtor for their own personal benefit and for the benefit of their business and personal associates.

Initial paper discovery in the Adversary Proceeding is mostly complete. The parties filed a joint preliminary pretrial statement on June 16, 2011. The Bankruptcy Court has scheduled a Pretrial Conference for July 25, 2011 at which time the Bankruptcy Court will impose deadlines for completion of discovery and any dispositive motions and will also schedule the trial date. It is anticipated that this matter will be scheduled for trial in January 2012.

## J.     Donnan Adversary Proceeding

On June 30, 2011, James and Mary Donnan filed a voluntary chapter 11 petition in the United States Bankruptcy Court for the Middle District of Georgia, Athens Division (the "Georgia Bankruptcy Court"), Case No. 11-31083 (the "Georgia Bankruptcy Case").On July 15, 2011, the Debtor filed its Adversary Complaint for Injunctive Relief, Prohibition of Use of Collateral, Constructive Trust, or Other Relief, Adversary Case No. 11-03050, against Defendants James and Mary Donnan in the Georgia Bankruptcy Court (the "Donnan Adversary Complaint"). In the Donnan Adversary Complaint, the Debtor alleged that James and Mary Donnan were substantially, if not primarily, responsible for initiating and maintaining a significant ponzi scheme allegedly used to fund the business operations of the Debtor. The Debtor further alleged that James and Mary Donnan amassed profits totaling approximately $9,157,000.00 from the ponzi scheme.

The Donnan Adversary Complaint raised claims for (1) injunctive relief to prohibit James and Mary Donnan from liquidating, transferring, or dissipating their assets pending the Georgia Bankruptcy Court's final ruling on whether to impose a constructive trust or grant the Debtor's other requested relief; (2) prohibition of the use of cash collateral or other equitable relief by James and Mary Donnan; (3) imposition of a constructive trust over proceeds of the above-described ponzi scheme initially asserted by the James and Mary Donnan to be part of their bankruptcy estate; (4) turnover of property of the Debtor's bankruptcy estate; (5) violation of the automatic stay in the Debtor's bankruptcy case; (5) objecting to the dischargeability of James and Mary Donnan's obligations to the Debtor; and (6) objecting to the requested discharge by James and Mary Donnan. James and Mary Donnan promptly answered the Adversary Complaint and generally denied the allegations raised by the Debtor in the Donnan Adversary Complaint.

On July 15, 2011, the Debtor filed an *Emergency Motion for Injunctive Relief and Prohibition of Use of Cash Collateral and Motion for Imposition of Constructive Trust or Other Equitable Relief* (the "Emergency Motion") in the Donnans' Chapter 11 Case. The Emergency Motion requested that the Georgia Bankruptcy Court prohibit James and Mary Donnan from liquidating, transferring, or dissipating assets in their possession, custody, or control or from using the Debtor's assets or property of the Debtor's estate pending a ruling on the Debtor's substantive claims for recovery of the proceeds of the ponzi scheme. In addition, the Debtor requested that the Georgia Bankruptcy Court impose a constructive trust over all proceeds of the ponzi scheme that were in the possession of the James and Mary Donnan or were asserted to be property of the Donnans' bankruptcy estate.

15

On July 22, 2011, the Georgia Bankruptcy Court entered the *Agreed Order and Notice of Continued Hearing* (the "Donnan Agreed Order). In the Donnan Agreed Order, the Georgia Bankruptcy Court prohibited the James and Mary Donnan from selling or transferring any of their assets except as set forth in the Donnan Agreed Order. The Donnan Agreed Order also stated that the hearing on the Emergency Motion would be continued until August 29, 2011 at 9:30 a.m.

After extensive negotiations, the parties have entered into a Release and Settlement Agreement. The Release and Settlement Agreement provides that certain property of James and Mary Donnan will be assigned, transferred and conveyed to the Debtor, free and clear of all claims, liens, interests, or encumbrances, upon approval of the settlement by the Georgia Bankruptcy Court and the Bankruptcy Court. In addition, James and Mary Donnan acknowledge in the Release and Settlement Agreement that the Debtor is entitled to a constructive trust for the sole benefit the Debtor's Estate over such property. The property included within the constructive trust includes real estate, depository and investment accounts, and ownership interests in various business and investment entities.

The Debtor believes that the value of the assets to be conveyed to the Debtor is approximately $4.5 million. In addition, James and Mary Donnan have agreed that certain other property will be included in the constructive trust and turned over to the Debtor upon request. The Debtor will evaluate such property going forward to see whether there is any benefit in obtaining such property for the Estate. Finally, James and Mary Donnan will assign to the Debtor all rights, title, and interest in a promissory note executed by Todd Donnan in favor of James and Mary Donnan in the amount of $1,050,000 and the Debtor may have standing to pursue the Donnans' potential avoidance actions.

Subject to approval of the Bankruptcy Court and the Georgia Bankruptcy Court, the Debtor will receive or will have the right to receive all non-exempt assets owned by James and Mary Donnan, with the exception of their personal residence (which upon information and belief has no equity beyond exemptions and the costs of a sale) and any assets owned prior to the formation of the Debtor. The Debtor has requested that the settlement should be approved by the Bankruptcy Court.

The Release and Settlement Agreement also lists certain property of James and Mary Donnan that will not be turned over to the Debtor or become part of the constructive trust. Such property generally includes the personal residence, household goods and furnishings, football memorabilia, and other miscellaneous personal items, as well as a promissory note, certain stocks, and certain IRAs and retirement accounts. Many of these assets are asserted to be exempt in the Donnans' Bankruptcy Schedules. Additionally, James and Mary Donnan have shown that some or all of these assets were acquired prior to the formation of Debtor, and thus cannot be considered proceeds of the ponzi scheme. Such assets will not be conveyed to the Debtor in connection with the Release and Settlement Agreement.

CINLibrary 0121049.0583831  2305226v11

As consideration for the turnover of assets and the imposition of a constructive trust, James and Mary Donnan will be released by the Debtor from certain claims of Debtor as set forth in the Release and Settlement Agreement.

The Georgia Bankruptcy Court conducted a hearing on approval of the Release and Settlement Agreement on August 29, 2011. The August 29, 2011 hearing has not been concluded by the Georgia Bankruptcy Court and will be rescheduled by the Georgia Bankruptcy Court.

## IV.     THE PLAN

The Plan is attached hereto and incorporated herein as **Exhibit A**. The summary description of the Plan is qualified in its entirety by reference to the full text of the Plan. The following table classifies Claims and Interests for all purposes, including voting, confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Class 1 contains Secured Claims | Unimpaired | No (deemed to accept the Plan) |
| Class 2 | Class 2 contains General Unsecured Claims | Impaired | Yes |
| Class 3 | Class 3 contains the Section 510(b) Claims | Impaired | No (deemed to reject the Plan) |
| Class 4 | Class 4 contains the Interests in the Debtor | Impaired | No (deemed to reject the Plan) |

## A.     Administrative Expense Claims.

In full and complete satisfaction, discharge and release of its Administrative Claim, each holder of an Allowed Administrative Claim shall receive one of the following treatments, in the sole discretion of the Plan Administrator: (i) to the extent not already paid, on the later of the Effective Date or thirty (30) Business Days after the date on which such Administrative Claim becomes an Allowed Claim, or, in each such case, as soon as reasonably practicable thereafter, Cash in the full amount of such Allowed Administrative Claim; (ii) to the extent not yet due and payable, payment in accordance with the terms and conditions of the particular transaction giving rise to the Administrative Claim; (iii) to the extent such Claims are Administrative Claims of the United States Trustee for fees pursuant to 28 U.S.C. § 1930(a)(6), Cash in accordance with the applicable schedule for payment of such fees; (iv) treatment on such other terms as may be mutually agreed upon in writing between the holder of such Allowed Administrative Claim and

17

the Debtor (in consultation with the Committee), prior to the Effective Date, or the Plan Administrator, on or after the Effective Date; or (v) Cash on the first date that funds are available to the Plan Administrator that are not subject to a Lien, as determined by the Plan Administrator in his sole discretion, to be available for Distribution; provided, however, that interim and/or final payment of Allowed Administrative Claims approved by the Bankruptcy Court shall be paid at the time of and in accordance with such Bankruptcy Court approval.

**B.      Administrative Claims Bar Date.**

Administrative Claim requests respecting administrative claims that have arisen or will arise in the period from the Petition Date through the Effective Date, inclusive, must be filed and served pursuant to the procedures set forth in the Confirmation Order and/or notice of entry of Confirmation Order, no later than forty-five (45) days after the Effective Date (unless an earlier date is set by the Bankruptcy Court). Notwithstanding anything to the contrary herein, no Administrative Claim request need be filed for the allowance of any fees of the United States Trustee arising under 28 U.S.C. § 1930. Any Entities that are required to, but fail to file such an Administrative Claim request on or before the deadline referenced above, shall be forever barred from asserting such Claim against the Debtor or the Plan Administrator and their respective attorneys, other professionals, trustee and/or agents, or any of property of the Debtor, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Administrative Claim.

**C.      Priority Tax Claims.**

(a)      Payment. On the later of the Effective Date or forty-five (45) Business Days after the date on which a Priority Tax Claim becomes an Allowed Claim, or, in each such case, as soon as reasonably practicable thereafter; each holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date will receive in full and complete satisfaction, discharge and release of its Priority Tax Claim, one of the following treatments, in the sole discretion of the Plan Administrator: (i) Cash in the full amount of the Allowed Priority Tax Claim or (ii) regular installment payments in Cash, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, (a) of a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (b) which total value shall include simple interest to accrue on any outstanding balance of such Allowed Priority Tax Claim starting on the Effective Date at the rate of interest determined under applicable nonbankruptcy law pursuant to section 511 of the Bankruptcy Code; and (c) over a period ending not later than 5 years after the Petition Date.

(b)      Installment Payments. Any installment payment(s) made pursuant to section 1129(a)(9)(C) of the Bankruptcy Code shall be in equal quarterly Cash payments beginning on the later of the first day of the calendar month following (i) the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Claim, and subsequently on the first day of each third calendar month thereafter, as necessary.

(c)      Priority Tax Claim That Is Not Otherwise Due And Payable On Or Prior To The Effective Date. The amount of any Priority Tax Claim that is not otherwise due and payable on or prior to the Effective Date, and the rights of the holder of such Claim, if any, to payment in respect thereof shall: (a) be determined in the manner in which the amount of such

CINLibrary 0121049.0583831  2305226v11

Claim and the rights of the holder of such Claim would have been resolved or adjudicated if the Chapter 11 Case had not been commenced; (b) survive after the Effective Date as if the Chapter 11 Case had not been commenced; and (c) not be discharged pursuant to section 1141 of the Bankruptcy Code. In accordance with section 1124 of the Bankruptcy Code, and notwithstanding any other provision of the Plan to the contrary, the Plan shall not alter or otherwise impair the legal, equitable, and contractual rights of any holder of a Priority Tax Claim that is not otherwise due and payable on or prior to the Effective Date.

## D.     **Priority Claims.**

In full and complete satisfaction, discharge and release of its Priority Claim, each holder of an Allowed Priority Claim will receive Cash equal to the unpaid portion of such Allowed Priority Claim, on (or as soon as practical thereafter) the later of (a) the Effective Date, (b) forty-five business Days after the date on which said entity becomes a holder of such Allowed Priority Claim, or (c) such date as such Entity may agree to with the Debtor prior to the Effective Date, or the Plan Administrator on or after the Effective Date.

## E.     **Fee Claims.**

Retained Professionals or other Entities asserting a Fee Claim for services rendered before the Effective Date must file and serve on the Plan Administrator and such other Entities who are designated by the Bankruptcy Rules or order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than 45 days after the Effective Date. Objections to any Fee Claim must be Filed and served on the Plan Administrator and the requesting party by the later of (a) 45 days after the Effective Date and (b) 30 days after the Filing of the applicable request for payment of the Fee Claim. To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court regarding the payment of Fee Claims.

## F.     **Treatment of Claims Against and Interests in the Debtor.**

1.     Class 1 –Secured Claims.

(i)     *Impairment*:  Class 1 is Unimpaired under the Plan.

(ii)    *Treatment*:  In full and complete satisfaction, discharge and release of their respective Class 1 Secured Claim, each holder of an Allowed Class 1 Secured Claim, if any, shall receive one of the following treatments, in the sole discretion of the Plan Administrator:

(iii)   *Lump Sum Payments*:  Holders of Allowed Class 1 Secured Claims shall receive payment in full on the later of: (i) the date of the liquidation or disposition of the Collateral securing the Allowed Class 1 Secured Claim, or (ii) the Effective Date, or (iii) the date that is forty-five (45) Business Days after any such Claim is

19

allowed by order of the Bankruptcy Court or by agreement between said holders of the respective Allowed Class 1 Secured Claims and the Plan Administrator; or

(iv) *Return of Collateral*:  The Plan Administrator may surrender the Collateral securing said Allowed Class 1 Other Secured Claim to such Claim holder in full satisfaction of its Allowed Class 1 Secured Claim on the later of: (i) the Effective Date, or (ii) the date that is ten (10) days after any such Claim is allowed by order of the Bankruptcy Court or by agreement between such holder of an Allowed Class 1 Secured Claim.

(v) *Retention of Liens*:  The holder of an Allowed Class 1 Secured Claim shall retain its Lien securing such Claim as of the Confirmation Date until all Distributions have been made to such holder as provided in this Section.

(vi) *Deficiency Claim*:  Any Deficiency Claim of holders of Allowed Class 1 Secured Claims shall be treated as a Class 2 General Unsecured Claim if otherwise allowable under state law.

(vii) *Voting*:  Class 1 is Unimpaired, and Holders of Allowed Class 1 Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Allowed Class 1 Secured Claims are not entitled to vote to accept or reject the Plan; provided, however, that all Class 1 Secured Claims shall be subject to Allowance under the provisions of the Plan and the Bankruptcy Code.

2.     Class 2 –General Unsecured Claims.

(i) *Impairment*:  Class 2 is Impaired under the Plan.

(ii) *Treatment*:  Each holder of an Allowed Class 2 General Unsecured Claim shall receive in Cash, in full and final satisfaction of such Claim, its Pro Rata share of the proceeds of the Remaining Assets after payment in full of (i) Plan Expenses, (ii) Allowed Administrative Claims, (iii) Allowed Priority Tax Claims, (iv) Allowed Priority Claims and (v) Allowed Class 1 Secured Claims. Such Distributions shall be made from to time to time by the Plan Administrator as set forth in the Plan.  Each holder of an Allowed Class 2 General Unsecured Claim shall also be entitled receive interest on account of an Allowed Class 2 General Unsecured Claim, to the extent allowed under applicable law, accruing from and after the Effective Date, but only to the extent that each holder of an Allowed Class 2 General Unsecured Claim receives payment

20

in full on account of their Allowed Class 2 General Unsecured Claim.

    (iii)    *Cramdown*:  To the extent necessary, the Debtor will request Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to Class 2.  The Debtor reserves the right to modify the Plan with respect to Class 2.

    (iv)    *Voting*:  Class 2 is impaired and Holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

    (v)    *Miscellaneous*:  Class 2 includes the Claims of general unsecured creditors, including, but not limited to, those Claims of individuals and entities who made investments in the Debtor; but only to the extent of the actual funds invested in the Debtor less funds paid by the Debtor to the individual or entity.

3.    Class 3 – Subordinated Claims against the Debtor.

    (i)    *Classification*:  Class 3 consists of all Subordinated Claims under Section 510(b) and (c) of the Bankruptcy Code against the Debtor.

    (ii)    *Treatment*:  Holders of Subordinated Claims will not receive any distribution on account of such Claims unless and until each holder of an Allowed Class 2 General Unsecured Claim receives payment in full plus accrued interest.

    (iii)    *Voting*:  Class 3 is Impaired, and Holders of Class 3 Claims are not entitled to receive or retain any property under the Plan on account of Allowed Class 3 Claims.  Therefore, Holders of Class 3 Claims are deemed not to have accepted the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Class 3 Claims are not entitled to vote to accept or reject the Plan.

    (iv)    Section 510(b) and (c) of the Bankruptcy Code provides for the subordination of a Claim (a) arising from the rescission of a purchase or sale of a security of the Debtor, for damages arising from the purchase or sale of a such a security or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such claim and (b) under principles of equitable subordination, subordinate for purposes of distributing all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest.  Class 3 may include Claims for fictitious interest, or other fictitious profits or any amount in excess of funds invested in the Debtor less funds paid by the Debtor.

4.    Class 4 – Interests.

21

(i)     *Impairment*:  Class 4 is Impaired under the Plan.

(ii)    *Treatment*:  On the Effective Date, all Interests shall be deemed cancelled, and all holders of Interests shall neither receive nor retain any property under the Plan.

(iii)   *Voting*:  Class 4 is Impaired and Holders are conclusively presumed to have rejected the Plan pursuant to section 1126(f) of the Bankruptcy code.  Therefore, Holders of Class 4 Interests are not entitled to vote to accept or reject the Plan.

## G.    Distributions Under the Plan.

1.     Creditors Must Provide Identifying Information**.**  In order to receive Distributions, all holders of Allowed Claims shall be required to provide to the Plan Administrator, at the address set forth below, such holder's federal tax identification number.  A notice identifying the holder's name, address, and federal tax identification number must be mailed to:

James R. Burritt
MainStream, LLC
720 Brixworth Blvd., Suite 200
Knoxville, TN  37934-4773

2.     Distributions**.**  The Plan Administrator, on behalf of the Debtor shall make Distributions of the proceeds of the Remaining Assets, if any, in the priorities and amounts established in the Plan.  In general, the Plan Administrator will distribute at least quarterly the net proceeds from the Remaining Assets, or if the Debtor is holding at least $500,000.00 in net proceeds from the Remaining Assets, reserving an amount determined by the Plan Administrator to pay the Plan Expenses of the Debtor in excess of said amount.  Notwithstanding that general intent, Distributions shall commence if and when there has been sufficient recovery of by the Debtor to make a Distribution practical and continue thereafter at such intervals as determined in the Plan Administrator's discretion, provided however, that the Plan Administrator shall not be required to make any Distribution if the Remaining Assets available for Distribution are not sufficient, in the Plan Administrator's discretion to justify incurring the expense to the Plan Administrator necessarily associated with the making of such Distributions.  The Plan Administrator may retain an amount of Remaining Assets reasonably necessary to meet claims and contingent liabilities (including Disputed Claims) and Plan Expenses of the Debtor.  Notwithstanding anything to the contrary in the Plan, the Plan Administrator shall make a final Distribution, pursuant to the terms of the Plan, even if the Debtor is holding funds less than $500,000.00.

3.     Disputed Claims.  With respect to Disputed Claims, any Distribution otherwise payable to the holders of such claims shall be held in a reserve account by the Plan Administrator pending resolution of the disputed status of such claim.  After final resolution has been reached with respect to the Disputed Claims, any remaining property held in such reserve account will be distributed in accordance with the Plan.

22

4. **Distribution After Allowance.** Within ten (10) Business Days after the date when a Disputed Claim becomes an Allowed Claim, the Plan Administrator will distribute to the holders of Disputed Claims that have become Allowed any property in the reserve account that would have been distributed to such Claim holders on the Distribution dates on which Distributions previously were made to holders of Allowed Claims, if the Disputed Claims that have become Allowed had been Allowed Claims, on such earlier Distribution dates.

5. **No Partial Distribution.** The Plan Administrator shall not make any partial Distributions to any holder of any Disputed Claims pending resolution of such Disputed Claims.

6. **Delivery of Distributions.** The Plan Administrator is only required to make a Distribution where the Plan Administrator has a current mailing address and tax identification number for the holder of the Allowed Claim. The Plan Administrator shall use his reasonable efforts to ascertain this information prior to making such Distributions but shall not be required to overcome these or any other barriers which would prevent a Distribution from being made.

7. **Fractional Dollars.** Notwithstanding anything to the contrary contained in the Plan, the Plan Administrator shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

8. **De Minimis Distributions.** The Plan Administrator shall have no obligation to make a Distribution on account of an Allowed Claim if the amount to be distributed to the holder of an Allowed Claim on the Distribution date has a value of less than $10.00.

9. **Undeliverable Checks or Uncashed Checks.** The Plan Administrator is not be required to make subsequent Distributions with Distribution checks which have been returned to the Plan Administrator as undeliverable (the "Undeliverable Checks") or Distribution checks which have not been cashed by beneficiaries (the "Uncashed Checks") unless the required information is received from such beneficiaries within 60 days of the first attempted Distribution.

10. **Unclaimed Property.** All unclaimed or returned Distributions as described in the Plan shall constitute Remaining Assets to be distributed in accordance with the terms of the Plan.

11. **Untimely Claims.** Except as otherwise agreed by the Plan Administrator, any Claim filed after the applicable Bar Date shall be deemed disallowed and expunged without further notice, action or order of the Bankruptcy Court, and holders of such Claims shall not receive any Distribution on account of such Claims.

12. **Interest on Claims.** Interest shall not accrue on Claims, and no holder of a Claim shall be entitled to interest accruing on any Claim unless otherwise expressly provided under applicable law or pursuant to the terms of the Plan.

13. **No Recourse.** No claimant shall have recourse to the Debtor and the Plan Administrator or the Committee other than for the enforcement of rights or Distributions.

CINLibrary 0121049.0583831  2305226v11

14.     Final Distribution.  The final Distribution shall occur upon the payment of all Plan Expenses of the Debtor and the payment of all Allowed Claims pursuant to the terms set forth in the Plan to the extent funds are available after liquidation of all the Remaining Assets, regardless of whether the Debtor is holding funds that are less than $500,000.

## H.     Treatment of Disputed Claims.

1.     Objection to Claims.  Except with respect to Claims that already are Allowed Claims by order of the Bankruptcy Court, the Plan Administrator may object to any Claim, including, Administrative Claims, Priority Tax Claims, Priority Claims, whether listed on the schedules filed by Debtor or filed by any Creditor, on or before the later of (a) one hundred eighty (180) days from the date of filing of any Claim or (b) unless extended by the Bankruptcy Court, one hundred and eighty (180) days after the Effective Date.

2.     Resolution of Disputed Claims.  Subject to the terms of the Plan with respect to previously Allowed Claims, all objections to Claims shall be litigated to a Final Order except to the extent the Plan Administrator elects to withdraw any such objection or the Plan Administrator and the claimant elect to compromise, settle or otherwise resolve any such objection, in which event the Plan Administrator may settle, compromise or otherwise resolve any Disputed Claim without approval of the Bankruptcy Court.

3.     Estimation.  The Plan Administrator may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Plan Administrator has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to such Claim.

4.     Distribution on Disputed Claims.  No Distributions shall be made with respect to a Disputed Claim until such Disputed Claim becomes an Allowed Claim.  In the event, and to the extent, a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Allowed Claim shall receive such Distributions as to which such holder is then entitled under the Plan.

5.     Reserve for Disputed Claims.  With respect to Claims to be paid by the Plan, the Plan Administrator shall hold in reserve, for the benefit of each holder of a Disputed Claim, Cash in an amount required by order of the Bankruptcy Court or, in the absence of such order, Cash equal to the Distribution that would have been made to the holder of such Disputed Claim, if it were an Allowed Claim in the liquidated amount, if any, asserted on the Effective Date.  If and to the extent that a Disputed Claim becomes an Allowed Claim, on the first Distribution Date after such allowance, the Plan Administrator shall distribute to the holder thereof the amount of Cash to which such holder is entitled under the provisions of this Plan.

## I.     Executory Contracts and Unexpired Leases.

1.     Assumption or Rejection of Executory Contracts.  All executory contracts and unexpired leases to which the Debtor is a party shall be deemed rejected, pursuant to sections

24

365 and 1123 of the Bankruptcy Code, on the Confirmation Date except those executory contracts or unexpired leases that: (i) have been assumed by the Debtor (or assumed and assigned by the Debtor to third parties) on or before the Confirmation Date; (ii) are assumed (or assumed and assigned) after the Confirmation Date by a Final Order granting a motion that is pending as of the Confirmation Date; or (iii) become the subject of a dispute over the amount or manner of cure and for which the Plan Administrator makes a motion to reject such contract or lease based upon the existence of such dispute.

2.  **Deadline to File Rejection Damage Claims.**  Each Entity that is a party to an executory contract or unexpired lease rejected under the Plan must file with the Bankruptcy Court and serve on the Plan Administrator, on or before the earlier of forty five (45) days after entry of the Confirmation Order or thirty (30) days after entry of an order rejecting such contract or lease, a proof of claim for damages alleged to arise from the rejection of the applicable contract or lease or be forever barred from filing a Claim, or sharing in Distributions under the Plan, related to such alleged rejection damages.  Claims for damages for the rejection of an executory contract or unexpired lease shall constitute Class 2 General Unsecured Claims but only to the extent that the Claims are otherwise allowable under applicable law.

## J.  **Plan Administrator.**

1.  **Plan Administrator.**  The Debtor has selected James R. Burritt to be the Plan Administrator and Mr. Burritt has accepted such position.  The Plan Administrator shall be compensated as set forth in the Plan.

2.  **Duties.**  The Plan Administrator's duties include: (i) the pursuit of Causes of Action, including but not limited to, the Avoidance Actions; (ii) objections to, and resolution of, all Claims; (iii) the distribution of funds to pay Plan Expenses of the Debtor and to pay Claims; (iv) the liquidation of the Remaining Assets on and after the Effective Date; and (v) such other matters as provided herein and in the discretion of the Plan Administrator.  The Plan Administrator may employ professionals or other persons, which may include firms that are or were employed by the Debtor or the Committee, in connection with the performance of his duties and compensate such persons or professionals for their reasonable fees and expenses.  The Plan Administrator intends to retain the law firm of Frost Brown Todd LLC as his counsel.  The Plan Administrator may compromise or settle any Claims, Causes of Action (including but not limited to Avoidance Actions) or other matters or disputes relating to the Remaining Assets or the Debtor without notice or Bankruptcy Court approval.

3.  **Payment of Quarterly Fees.**  The Plan Administrator shall pay the quarterly fees, pursuant to 28 U.S.C. § 1930(a)(6), to the U.S. Trustee until this Chapter 11 Case has been converted, dismissed or closed by the Bankruptcy Court.

4.  **Fees and Expenses.**  The fees and expenses of the Plan Administrator shall be governed by the terms of the Plan. In no event shall the Plan Administrator be required to expend his own funds.  Any fees and/or expenses incurred after the Effective Date on behalf of the Debtor, i.e., the Plan Expenses, shall be paid in accordance with the Plan.

CINLibrary 0121049.0583831  2305226v11

5.     Post-Effective Date Professional Fees.  Except as otherwise set forth herein, the reasonable fees and expenses of the Plan Administrator and the professionals representing the Plan Administrator for services provided after the Effective Date may be paid by the Plan Administrator as provided herein without further Court approval after notice to the Oversight Committee.  Provided available funds exist, payment shall be made within thirty (30) days after submission of a detailed invoice to the Plan Administrator.  If the Plan Administrator or the Oversight Committee disputes the reasonableness of any such invoice, the undisputed portion of such invoice shall be timely paid, and the affected professional may submit the dispute to the Bankruptcy Court for appropriate resolution.  If there are insufficient funds available to pay all fees and expenses of professionals and compensation to the Plan Administrator in full, such professionals and the Plan Administrator shall share Pro Rata in the available funds until payment in full is made.

6.     Liability; Indemnification.  Unless the Bankruptcy Court orders otherwise, the Plan Administrator shall not be required to give any bond for the faithful performance of his duties hereunder.  Except for his or their own gross negligence or willful misconduct, neither the Plan Administrator or any professional person, representative, director, officer, employee, or agent of the Plan Administrator retained by the Debtor, after the Effective Date, or the Plan Administrator on behalf of the Debtor, after the Effective Date, (collectively the "Indemnified Parties"), shall have any liability to any Entity for acts or omissions related to the Debtor and the Debtor shall indemnify the Indemnified Parties against expenses, including attorney's fees, judgments, penalties, fines and amounts paid in settlement actually and reasonably incurred by the Indemnified Parties.

7.     General Powers.  Except as otherwise provided in the Plan, the Plan Administrator shall have, without prior or further authorization or further order of the Bankruptcy Court, such powers and authority necessary to fulfill the purpose of the Plan including, but not limited to, the following: (A) to prosecute and defend all actions affecting the Debtor and, after notice to the Oversight Committee, to compromise or settle any suits, claims, or demands, or waive or release any rights relating to the Debtor provided however, that if the Oversight Committee raises a timely objection to the proposed compromise or settlement, the Plan Administrator shall seek Bankruptcy Court approval of the proposed settlement or compromise; (B) to prosecute, settle, or otherwise resolve Disputed Claims and Causes of Action, including but not limited to Avoidance Actions, and deposit any proceeds therefrom for Distribution pursuant to the provisions of the Plan; (C) to make Permitted Investments; (D) to maintain escrows and other accounts, make Distributions to holders of Allowed Claims and take other actions consistent with the Plan and the implementation thereof; (E) to pay Plan Expenses; (F) to implement and enforce all provisions of the Plan relating to the Remaining Assets; (G) to maintain appropriate books and records, including but not limited to, maintaining a record and account for all proceeds received by the Debtor for Distribution in accordance with the Plan; (H) to abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of the Plan Administrator's choice, any assets that the Plan Administrator concludes are of no benefit; and (I) to otherwise engage in all acts that would constitute ordinary course of business in performing the obligations of the Plan Administrator.

8.     Limitation on the Plan Administrator Powers.  The Plan Administrator may invest and reinvest all funds held by the Reorganized Debtor (subject to Distribution requirements set

CINLibrary 0121049.0583831   2305226v11

forth in the Plan) in Permitted Investments designed to provide a reasonable return to the Debtor and consistent with liquidity requirements for payment of Plan Expenses and making of Distributions hereunder. The Plan Administrator shall not be responsible, and shall have no liability whatsoever, to any person or entity for any loss to the Debtor, or the amount of interest thereon, resulting from the investment thereof in such Permitted Investments. The Plan Administrator shall not invest any funds in a security or instrument that does not constitute a Permitted Investment or take any action that may cause the Debtor to become subject to the provisions of the Investment Company Act of 1940, as amended.

9. **Accounts.** The Plan Administrator may maintain, on behalf of the Debtor such accounts as necessary at any bank or financial institution organized under the laws of the United States of America or any state thereof, as he may, in his discretion, select in accordance with section 345(a) of the Bankruptcy Code.

10. **Payment of Plan Expenses.** Subject to the terms of the Plan, the Plan Administrator shall pay all expenses of the Debtor or the Oversight Committee incurred after the Effective Date, including the fees of professionals retained by the Debtor, the Plan Administrator and the Oversight Committee, first from the proceeds of the Remaining Assets, as such expenses are incurred in the ordinary course of administering the Debtor and the Plan.

11. **Compensation of the Plan Administrator and Post Effective Date Professionals.**

(a) The Plan Administrator shall receive weekly compensation, commencing on the Effective Date and ending upon the closing of the Chapter 11 Case, at his standard hourly rate of $315.00, not to exceed $8,800.00 per week, plus reimbursement of his normal and customary out of pocket expenses. The Plan Administrator's fee(s) will be payable on the first Business Day of the month (being the first day on which banking institutions in the State of Ohio are not authorized or required by law or regulation to be closed) following the month for which service has been rendered. Such compensation shall be paid as a Plan Expense of the Debtor.

(b) On or before the last day of each month following the month for which compensation is sought, each of the post Effective Date professionals seeking compensation under the Plan, including but not limited to, the Plan Administrator, counsel for the Debtor, counsel for the Plan Administrator and counsel for the Oversight Committee, shall serve a monthly statement on the Plan Administrator and the Oversight Committee, provided, however, that failure of any of the professionals to serve a monthly statement on the Plan Administrator and the Oversight Committee for any one or more months shall not waive or impair the right of such professionals to subsequently seek compensation for all or any number of such months in a later statement delivered to the Plan Administrator and the Oversight Committee. The Plan Administrator and the Oversight Committee will have ten (10) days from the date such statement is received to review the statement and object to such statement by serving a written objection on such professional setting forth the precise nature of the objection and the amount at issue. At the expiration of the ten (10) day period, the Plan Administrator shall promptly pay out 100% of the amounts requested, except for the portion of such fees and disbursements to which an objection has been made, if any. The parties shall attempt to consensually resolve objections, if any, to any monthly statement. If the parties are unable to reach a consensual resolution of any such objection, the party which received an objection to its fees may seek payment of such fees by

27

filing a motion with the Bankruptcy Court on proper notice to the Plan Administrator. Such compensation shall be paid as a Plan Expense of the Debtor.

12. **Limitation of Liability and Indemnification of the Plan Administrator.** The Plan Administrator shall exercise the rights and powers vested in him by the Plan and use the same degree of care and skill in his exercise as a prudent person would exercise or use under the circumstances in the conduct of that person's own affairs. No provision of the Plan shall be construed to relieve the Plan Administrator from liability for his own grossly negligent actions, his own grossly negligent failure to act, fraud, or his own willful misconduct, except as otherwise provided herein.

13. **No Liability for Acts of Predecessor.** No successor Plan Administrator shall be in any way responsible for the acts or omissions of any Plan Administrator in office prior to the date on which he/she becomes Plan Administrator unless a successor Plan Administrator expressly assumes such responsibility.

14. **No Implied Obligations.** Except as otherwise set forth in the Plan, the Plan Administrator shall not be liable except for the performance of such duties and obligations as are specifically set forth herein and in the Plan, and no implied covenants or obligations shall be read into this Plan.

15. **No Liability for Good Faith Error of Judgment.** The Plan Administrator shall not be liable for any error of judgment made in good faith, unless it shall be proved that the Plan Administrator was grossly negligent in ascertaining the pertinent facts.

16. **Reliance on Agents and Professionals.** Except as otherwise provided in this Plan, the Plan Administrator may engage and consult with legal counsel and other agents and professionals selected and employed by him pursuant to the Plan and shall not be liable for any action taken or suffered by the Plan Administrator in reliance upon the advise of such counsel, agents or advisors unless it shall be proved that such reliance constituted willful misconduct or gross negligence. The Plan Administrator shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Remaining Assets.

17. **Reliance on Documents.** Except as otherwise provided herein, the Plan Administrator: (A) may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, and other paper or document believed by the Plan Administrator to be genuine and to have been signed or presented by the proper party or parties; and (B) shall have no liability or responsibility with respect to the form, execution, or validity thereof and no duty to inquire as to the identity, authority, or rights of the persons so signing or presenting.

18. **No Personal Obligation.** None of the provisions hereof shall require the Plan Administrator to expend or risk his own personal funds or otherwise incur personal financial liability or expense in the performance of his duties hereunder. Persons dealing with the Plan Administrator, or seeking to assert claims against him shall look only to the Remaining Assets, to the extent permitted by the Plan or applicable law, to satisfy any liability incurred by the Plan

CINLibrary 0121049.0583831   2305226v11

Administrator to such person in carrying out the terms of the Plan, and the Plan Administrator shall have no personal, individual obligation to satisfy any such liability.

19.     **Indemnification**.  So long as the Plan Administrator shall have acted in compliance with the standards of conduct set forth in the Plan, the Plan Administrator shall be indemnified by and receive reimbursement from the Remaining Assets against and from any and all losses, claims, damages, and expenses (including, without limitation, any reasonable fees of counsel or other expenses incurred in defense or investigation of actions or proceedings in respect thereof) which he may incur in the exercise and performance of any of his powers and duties under the Plan.

20.     **Removal of Plan Administrator**.  The Plan Administrator may be removed for cause shown upon application to the Bankruptcy Court.

21.     **Resignation of Plan Administrator**.  The Plan Administrator may resign by an instrument in writing signed by the Plan Administrator and filed with the Bankruptcy Court, provided that the Plan Administrator shall continue to serve as the Plan Administrator after his resignation until the earlier of (a) 90 days after his resignation or (b) the appointment of a successor Plan Administrator shall become effective in accordance with the Plan or as the Bankruptcy Court shall otherwise order.

22.     **Appointment of Successor Plan Administrator**.  In the event of the death, resignation, incompetence, total disability, or removal of a Plan Administrator, the Bankruptcy Court shall have authority to appoint a successor Plan Administrator.  Such appointment may specify the date on which such appointment shall be effective.  Every successor Plan Administrator appointed hereunder shall acknowledge such appointment and the terms and provisions of the Plan and thereupon the resignation or removal of the retiring Plan Administrator shall become effective and such successor Plan Administrator without any further act, deed, or conveyance shall become vested with all the rights powers, trusts, and duties of the retiring Plan Administrator.

23.     **Tax Returns**.  The Plan Administrator shall be responsible for filing all of the tax returns required for the Debtor.

## K.     **The Oversight Committee**.

The Committee shall be reconstituted as of the Effective Date as the Oversight Committee without any further action by the Committee, this Court or the United States Trustee, other than identification of the members of the Oversight Committee.  The Oversight Committee shall have all of the rights and duties of the Committee prior to the Effective Date and as otherwise set forth in the Bankruptcy Code and herein.  The Oversight Committee shall automatically dissolve without any further action by the Oversight Committee on the earlier of (i) the date of completion of all of the functions of the Oversight Committee and the Plan Administrator and the entry of an order closing the Chapter 11 Case; (ii) the date of conversion of the Chapter 11 Case to a case under chapter 7; or (iii) thirty (30) days after the final distribution is made pursuant to the Plan.  All of the documents, communications, work-product held by or on behalf of the Committee shall automatically transfer to the Oversight Committee as

CINLibrary 0121049.0583831  2305226v11

of the Effective Date. Similarly, all of the rights and privileges of the Committee, including, without limitation, any attorney-client privilege work product doctrine or privilege, and all other privileges and immunities attaching to any and all documents and communications (whether written or oral) of the Committee shall automatically transfer to the Oversight Committee and its representatives as of the Effective Date. The Oversight Committee may retain professionals to assist them, including current counsel for the Committee, in furtherance of their rights and duties under the Plan. Counsel for the Oversight Committee shall be compensated as a Plan Expense pursuant to the terms of the Plan. Unless the Debtor has the prior written approval of the Oversight Committee, the Debtor may not, without entry of an Order from the Court: (i) alter, amend or modify this Plan; or (ii) settle or compromise Causes of Action, including but not limited to, Avoidance Actions, and objections to the allowance of any Claim.

## L.    **Confirmation Process.**

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

1.    <u>Solicitation of Votes</u>.    In accordance with sections 1126 and 1129 of the Bankruptcy Code, the Claims in Classes 2 and 3 of the Plan are impaired, and the holders of Allowed Claims in Class 2 are entitled to vote to accept or reject the Plan. Claims in Class 1 of the Plan are unimpaired. The holders of Allowed Claims in each of such Class are conclusively presumed to have accepted the Plan, and the solicitation of acceptances with respect to such Classes is not required under section 1126(f) of the Bankruptcy Code. The holders of Allowed Claims deemed to have accepted the Plan shall receive with this Disclosure Statement a Notice of Non-Voting Status – Unimpaired Classes. The holders claims in Class 3 and Interests in Class 4 of the Plan will not receive any distributions under the Plan will not receive a ballot and are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. The holders of Claims and Interests deemed to have rejected the Plan shall receive with this Disclosure Statement a Notice of Non-Voting Status – Impaired Class.

As to the classes of claims entitled to vote on the Plan, the Bankruptcy Code defines acceptance of the Plan by a class of creditors as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of the claims of that class that have timely voted to accept or reject the Plan.

A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

Any creditor in any impaired Class (a) whose Claim has been listed by the Debtor in the Schedules filed with the Bankruptcy Court (provided that such Claim has not been scheduled as disputed, contingent or unliquidated) or (b) who filed a proof of claim, which Claim is not the subject of an objection or request for estimation, is entitled to vote on the Plan. For a discussion of the procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, see the Disclosure Statement Order.

2.    <u>The Confirmation Hearing</u>. The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a confirmation hearing. The Confirmation Hearing in respect of the Plan has been scheduled for October 27, 2011, commencing at 10:00 a.m. prevailing Eastern Time, before

CINLibrary 0121049.0583831   2305226v11

the Honorable Jeffery P. Hopkins, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of Ohio, 411 U.S. Courthouse, U.S. Bankruptcy Court, Atrium Two Suite 800, 221 East Fourth Street, Cincinnati, Ohio 45202. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing. Any objection to the confirmation of the Plan must be made in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim or other amount or description of the Interest held by the objector. Any such objection must be filed with the Bankruptcy Court and served in accordance with the Disclosure Statement Order such as to be received on or before October 21, 2011, at 4:00 p.m. prevailing Eastern Time. Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

3. <u>Confirmation</u>. At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all requirements of section 1129 of the Bankruptcy Code are met. Among the requirements for confirmation of a plan are that the plan is (a) accepted by all impaired classes of claims and equity interests or, if rejected by an impaired class, that the plan "does not discriminate unfairly" and is "fair and equitable" as to such class, (b) feasible, and (c) in the "best interests" of creditors and stockholders that are impaired under the plan.

## M. **Acceptance.**

As set forth above, Class 2 is impaired under the Plan and is entitled to vote to accept or reject the Plan. Class 1 is unimpaired under the Plan and, therefore, is conclusively presumed to have voted to accept the Plan. Holders of Claims and Interests in Classes 3 and 4 are receiving no distributions under the Plan and, therefore, are conclusively presumed to have voted to reject the Plan.

With respect to impaired Classes of Claims that are deemed to reject the Plan, the Debtor shall request that the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code. If any other impaired Class of Claims entitled to vote does not accept the Plan by the requisite statutory majority provided in section 1126(c) of the Bankruptcy Code, the Debtor reserves the right to amend the Plan or to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code or both.

## N. **Unfair Discrimination and Fair and Equitable Tests.**

To obtain nonconsensual confirmation of the Plan, it must be demonstrated that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each impaired, nonaccepting Class. The Bankruptcy Code provides a non-exclusive definition of the phrase "fair and equitable." Section 1129(b) of the Bankruptcy Code establishes "cram down" tests for secured creditors, unsecured creditors and equity holders, as follows.

<u>Secured Creditors</u>. Either (i) each impaired secured creditor retains its Liens securing its secured claim and receives on account of its secured claim deferred cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property

31

securing the claim is sold free and clear of Liens with such Liens to attach to the proceeds of the sale and the treatment of such Liens on proceeds to be provided in clause (i) or (ii) above.

Unsecured Creditors. Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

Equity Interests. Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greater of the fixed liquidation preference to which such holder is entitled, or the fixed redemption price to which such holder is entitled or the value of the interest, or (ii) the holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan.

The Plan does not "discriminate unfairly" with respect to a nonaccepting class if the value of the cash and/or securities to be distributed to the nonaccepting class is equal to, or otherwise fair when compared to, the value of the distributions to other classes whose legal rights are the same as those of the nonaccepting class.

The Plan Proponent believes that the Plan is fair and equitable and does not discriminate unfairly with respect to any Classes that vote not to accept the Plan.

## O. **Feasibility.**

Section 1129(a)(11) of the Bankruptcy Code requires the Bankruptcy Court to make a finding that confirmation of the Plan is not likely to be followed by the liquidation, or need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan. The Distributions to be made under the Plan are not dependent upon the future financial performance of any business. Instead, consummation of the Plan is dependent upon, among other things, the prosecution of certain Causes of Action and the distribution of proceeds from such claims and the liquidation of the Remaining Assets. Assuming that the Plan is confirmed, the Plan is necessarily feasible.

## P. **Miscellaneous Requirements.**

Section 1129(a)(4) of the Bankruptcy Code provides that the Plan can be confirmed only if any payment made or to be made by the Debtor or by a person issuing securities or acquiring property under the Plan for services or for costs and expenses in connection with the case or in connection with the plan and incident to the Chapter 11 Case, has been approved by, or is subject to approval by the Bankruptcy Court as reasonable. The Plan Proponent submits that the Plan meets the requirements of section1129(a)(4) of the Bankruptcy Code.

Section 1129(a)(5) of the Bankruptcy Code conditions confirmation on disclosure of the identity and affiliates of any individual proposed to serve after the Effective Date as a director, officer, or voting trustee of the Debtor. Section 1129(a)(5) of the Bankruptcy Code further requires that (i) appointment to or continuance in such office of such individual be consistent with the interests of Creditors and equity security holders and with public policy; and (ii) the Debtor discloses the identity of any insider who will be employed or retained by the organized

32

entity and the nature of any compensation for such insider. As the Debtor is liquidating and has ceased operation, the requirements of section 1129(a)(5) of the Bankruptcy Code are largely inapplicable. All persons or entities serving as officers or directors of the Debtor who have not previously been terminated shall cease serving in such capacity as of the Effective Date. The Debtor shall be deemed dissolved sixty (60) days after consummation or substantial consummation of the Plan. After the Effective Date, the Plan Administrator will be authorized to act on behalf of the Debtor as provided for in the Plan. The Plan Administrator will be James R. Burritt.

**Q.    Best Interests Test.**

With respect to each impaired Class of Claims and Interests, confirmation of the Plan requires that each holder of a Claim or Interest either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code.  To determine what holders of Claims and Interests in each impaired Class would receive if the Debtor was liquidated under chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in the context of a chapter 7 liquidation case.  The cash amount that would be available for satisfaction of the Claims and Interests would consist of the proceeds resulting from the disposition of the unencumbered assets and properties, if any, of the Debtor, augmented by the unencumbered cash, if any, held by the Debtor at the time of the commencement of the liquidation case.  Such cash amount would be reduced by the costs and expenses of liquidation and by such additional administrative and priority claims that might result from the termination of the Debtor's business and the use of chapter 7 for the purposes of liquidation.

The Debtor's costs of liquidation under chapter 7 would include the fees payable to a trustee in bankruptcy which include the statutory fees payable to a chapter 7 trustee, as well as those fees payable to attorneys and other professionals that such a chapter 7 trustee might engage.  These claims and other claims that might arise in a liquidation case or result from the pending Chapter 11 Case, including any unpaid expenses incurred by the Debtor during the Chapter 11 Case, such as compensation for attorneys, financial advisors and accountants, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay prepetition unsecured Claims.

To determine if the Plan is in the best interests of each impaired Class, the present value of the distributions from the proceeds of a liquidation of the Debtor's unencumbered assets and properties, after subtracting the amounts attributable to the foregoing claims, must be compared with the value of the property offered to such Classes of Claims under the Plan.

The Plan Proponent believes that the value of any distributions in a chapter 7 case would be less than the value of distributions under the Plan because, among other reasons, distributions in a chapter 7 case may not occur for a longer period of time, thereby reducing the present value of such distributions.  In this regard, it is possible that distribution of the proceeds of a liquidation could be delayed for a period in order for a chapter 7 trustee and its professionals to become knowledgeable about the Chapter 11 Case and the Claims against the Debtor.  The fees

and expenses of a chapter 7 trustee, including but not limited to the statutory fees, also would likely exceed those of the Professionals retained by the Plan Administrator, thereby further reducing Cash available for distribution.

The Plan Proponet believes that Confirmation and implementation of the Plan will provide a greater distribution to Creditors than liquidation under chapter 7 of the Bankrutpcy Code. Liquidation under chapter 7 would require that a trustee be appointed and charged with liquidating the assets of the Estate, administering and adjudicating claims, and distributing the proceeds of the sale of assets of the Estate in conformity with the priority scheme of the Bankruptcy Code. The priorities of distribution provided in the Plan are largely the same as the Trustee would follow under chapter 7. However, administration and distribution of the Estate by a chapter 7 trustee would result in occurrence of administrative costs in excess of those projected under the Plan. Also, a new time period for the filing of Claims would commence under Bankruptcy Rule 1019(2), possibly resulting in the filing of additional Claims against the Estate conversion of the chapter 11 Case to a case under chapter 7 and appointment of a trustee for administration of the Estate would delay liquidation of any remaining assets and distribution of the proceeds. The Debtor's familiarity with its operations will allow it to complete liquidation of the assets and distribute the proceeds quicker and more efficiently than a Chapter 7 Trustee.

Given the foregoing, the Plan Proponet does not believe that it would be economical or in the best interest of the estate to now convert the Chapter 11 Case to chapter 7 since to do so would require, among other things, a chapter 7 trustee and his or her representatives to become familiar with numerous aspects of the case. The resulting costs and delay and lack of institutional knowledge, could significantly impact the ultimate recovery realized by the Estate.

Attached hereto and incorporated herein as **Exhibit D**[3] is a liquidation analysis of the Debtor. This liquidation analysis, however, is based on the Debtor's good faith estimate of the aggregate amount of Claims in each Class and upon resolution of all such Claims that are Disputed Claims, based on all currently known information. The amount of the Distributions of Available Cash and Cash that ultimately will be received by a particular Holder of an Allowed Claim may be adversely or favorable affected. These estimates also are based on a good faith estimate of the recovery from Causes of Action, including Avoidance Actions. For all of the reasons stated above, no representation can be, or is being, made with respect to whether the estimated Allowed amount of Claims in each Class will be accurate.

## R.     Effect of Confirmation of the Plan.

1.     Vesting of Assets.  On the Effective Date, title to the Remaining Assets shall vest in the Debtor, free and clear of all claims, liens, charges, encumbrances and interests of Creditors and Interest holders (except to the extent that such claims, Liens, charges, encumbrances and/or interests have been reinstated, or as otherwise expressly provided herein).

---

[3] **Exhibit D** shall be filed with this Court no later than five (5) days prior to the hearing on approval of this Disclosure Statement and may be amended by the Debtor, from time to time, at any time up through the date of entry of the Disclosure Statement Order and thereafter upon notice to the Bankruptcy Court.

CINLibrary 0121049.0583831  2305226v11

2.      Discharge.  Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of the Plan will not discharge the Debtor; *provided, however*, upon confirmation of the Plan and the occurrence of the Effective Date, Creditors may not seek payment or recourse against or otherwise be entitled to any distribution from the assets of the Debtor or the Estate except as expressly provided in the Plan.

3.      **Injunction.   Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Entities that have held, hold or may hold Claims or Interests in the Debtor or the Estate are, with respect to any such Claims or Interests, permanently enjoined from and after the Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or the Debtor, the Estate, or any of their property, (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtor, the Estate or any of their property, (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Estate or any of their property, (iv) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the Estate or any of their property, and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law.**

**For clarification, and notwithstanding the provisions of Sections 10.3(a) through 10.3(e) of the Plan, nothing contained in the Plan shall effectuate a release or relinquishment of any right, claim or Cause of Action that the Debtor, the Estate or the Plan Administrator may have against those Entities listed in <u>Exhibit C</u> to this Disclosure Statement.**

4.      Term of Injunctions or Stays.  Unless otherwise provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in such applicable order.

5.      Releases by Debtor and the Estate.

(a)      The Debtor, in its individual capacity and as debtor-in-possession, for and on behalf of the Estate, releases and discharges, absolutely, unconditionally, irrevocably and forever, and shall be permanently enjoined from any prosecution or attempted prosecution of, any and all Causes of Action arising from the beginning of time through the Effective Date, against (i) counsel for the Debtor, Frost Brown Todd LLC, (ii) counsel for the Committee, Morris, Manning, and Martin, LLP; (iii) the CRO, James R. Burritt, (iv) the Debtor's pre-petition advisors, MainStream, LLC, (v) any member of the Committee not individually, but only acting in such capacity as a member of the Committee, and specifically not as a creditor, party in interest or as a defendant of a Cause of Action in the Chapter 11 Case or otherwise, in any way

relating to the Debtor, the Chapter 11 Case or the Plan; provided, however, that the foregoing shall not operate as a waiver of or release from any Causes of Action arising out of (x) the rights of the Debtor or the Plan Administrator to enforce the Plan and the contracts, instruments, releases, and other agreements or documents delivered hereunder, and, as to the Entities identified in subclauses (iv) through (v) and their respective related parties, (y) acts or omissions to act involving willful misconduct, recklessness or gross negligence, (z) transactions avoidable or amounts recoverable under sections 544, 547, 548 and 550 of the Bankruptcy Code and applicable law, or (aa) or any Cause of Action against any member of the Committee that does not relate to acts taken as a member of the Committee, unless as a result of a breach of those duties or gross negligence or willful misconduct. Notwithstanding anything to the contrary in this Plan, the releases provided to the Entities identified in subclauses (i) through (v) and their respective related parties are complete and absolute.

(b)     *Exculpation*. Except with respect to obligations under the Plan, neither (i) Frost Brown Todd LLC, (ii) Morris, Manning, and Martin, LLP; (iii) James R. Buritt, (iv) MainStream, LLC, (v) any member of the Committee, not individually but only in their capacity as a member of the Committee, (vi) the Plan Administrator, and (vii) their respective Related Parties, solely in their capacity as such, shall have or incur any liability to any Entity whatsoever, including, without limitation, any holder of any Claim or Interest for any act or omission taken in good faith in connection with, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination or confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or property to be distributed pursuant to the Plan, or any contract, instrument, release, or other agreement or document created or entered into, pursuant to or in connection with the Plan, except for willful misconduct, recklessness or gross negligence.

(c)     For clarification, and notwithstanding the provisions of the Plan, nothing contained in the Plan shall effectuate a release or relinquishment of any right, claim or Cause of Action that the Debtor or the Estate may have against those Entities listed in Exhibit C to the Disclosure Statement.

6.     Causes of Action.

(a)     The Debtor is granted authority and standing, on behalf of the Debtor and its Estate to initiate any Causes of Action, including but not limited to, Avoidance Actions, in the name of and on behalf of the Debtor and its Estate. The Causes of Action may include, but are not limited to: (i) any and all Causes of Action pursuant to any applicable section of the Bankruptcy Code, including but not limited to,; Avoidance Actions; (ii) any and all Causes of Action pursuant to applicable state and federal law; (iii) objections to Claims; (iv) claims that the Estate is entitled to set off or recoupment claims against parties with claims against the Estate; (v) claims against any and all of the Debtor's current or former shareholders, directors, officers, employees, agents, accountants, attorneys, advisors, partners, associates, affiliates of the Debtor (including but not limited to Gregory Crabtree, Linda Crabtree, Thomas Crabtree, Lisa Holbrook, Wes Holbrook, Michael Crabtree, Rodney Crabtree, Jonathan Holbrook, Courtney Crabtree, Amber Steele, Barbara Crabtree, Brianna Crabtree, GLC Enterprises, Bargain Buys, James Donnan, Mary Donnan, Tammy Donnan, Todd Donnan, Jeffrey Donnan, Greg Johnson, Paige Johnson or any insider of the Debtor as defined in section 101(31) of the Bankruptcy Code or any other Entities related to or controlled by the foregoing parties) for conduct, actions, or

failures to act prior to the Petition Date, which conduct is actionable under any theory of law or equity, including, but not limited to, fraud, breach of fiduciary duty, breach of contract, mismanagement or malfeasance of any kind, self-dealing, abuse of discretion, professional malpractice, fraud, misrepresentation, violations of state or federal securities laws or similar claims, as well as claims that may be recoverable under any applicable insurance policies maintained by the Debtor and (vi) any other litigation or Causes of Action, whether legal, equitable, or statutory in nature, arising out of, or in connection with, the Debtor's business, assets, or operations, or otherwise affecting the Debtor. In addition to the foregoing potential defendants, some of the Entities who may be the subject of litigation brought by the Plan Administrator, on behalf of the Debtor, are identified in **Exhibit C** to this Disclosure Statement. The foregoing potential defendants and the Entities listed on **Exhibit C** to this Disclosure Statement[4] are not exhaustive and if a specific Cause of Action or defendant is not identified thereon, it is because such Cause of Action or defendant is not known to the Debtor or the Plan Administrator at this time. On behalf of the Debtor and its Estate, the Debtor preserves for the Debtor, the rights to any Causes of Action that may be identified on or after the Effective Date. The recoveries, if any, from any litigation brought by the Debtor will depend on many factors, which cannot be predicted at this time. The Plan Administrator may in his sole discretion elect not to pursue any Causes of Action (including but not limited to Avoidance Actions) the pursuit of which the Plan Administrator deems not to be in the best interest of the Estate or the Debtor.

(b)     *Retention of Causes of Action*. Except as specifically provided herein or in the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights, claims, or Causes of Action (including any Avoidance Actions) that the Debtor may have or which the Debtor may choose to assert on behalf of the Estate, in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtor, its officers, directors, or representatives, (ii) the avoidance of any transfer by or obligation of the Estate or the Debtor under chapter 5 of the Bankruptcy Code or applicable state law or the recovery of the value of such transfer, (iii) the turnover of any property of the Estate, or (iv) any other Cause of Action not specifically released pursuant to the Plan.

(c)     *Reservation of Rights*. Except as specifically provided herein or in the Confirmation Order, nothing contained herein or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action (including but not limited to Avoidance Actions), right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the Petition Date, or has as a chapter 11 debtor from and after the Petition Date under the Bankruptcy Code or applicable law, against or with respect to any Claim left unimpaired by the Plan. The Debtor or the Plan Administrator, as the case may be, shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action (including but not limited to Avoidance Actions), rights of setoff, or other legal or equitable defenses which the

---

[4] **Exhibit C** shall be filed with this Court no later than five (5) days prior to the hearing on approval of this Disclosure Statement and may be amended by the Debtor, from time to time, at any time up through the date of entry of the Disclosure Statement Order and thereafter upon notice to the Bankruptcy Court and any party identified by the subsequent amendment of **Exhibit C**.

Debtor, the Estate, the Plan Administrator or any of them had immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced, and all legal and equitable rights of the Debtor respecting any Claim, Cause of Action (including but not limited to Avoidance Actions and the Construction Claims), right of setoff, or other legal or equitable defense left unimpaired by the Plan may be asserted after the Confirmation Date by the Debtor or the Plan Administrator to the same extent as if the Chapter 11 Case had not been commenced.

(d)     ALL CAUSES OF ACTION SHALL SURVIVE CONFIRMATION AND THE COMMENCEMENT OR PROSECUTION OF CAUSES OF ACTION SHALL NOT BE BARRED OR LIMITED BY ANY ESTOPPEL, WHETHER JUDICIAL, EQUITABLE, OR OTHERWISE.  The Plan Administrator's right on behalf of the Debtor to commence and prosecute Causes of Action (including but not limited to Avoidance Actions) shall not be abridged or materially altered in any manner by reason of confirmation of the Plan.  No defendant party to any Cause of Action (including but not limited to an Avoidance Action) shall be entitled to assert any defense based, in whole or in part, upon confirmation of the Plan, and confirmation of the Plan shall not have any res judicata or collateral estoppel effect upon the commencement and prosecution of Causes of Action (including but not limited to Avoidance Actions).  The Confirmation Order will contain findings that the foregoing shall be sufficient for all purposes to satisfy the requirements of the standard set forth in Browning v. Levy, 283 F.3d 761 (6th Cir. 2002).

7.     Preservation of Insurance.  Nothing in the Plan shall diminish or impair the enforceability of any policies of insurance that may cover Claims against the Debtor or any other Entity.

**S.     Consummation.**

The Plan will be consummated on the Effective Date.  The confirmation of the Plan will occur upon the satisfaction of the conditions precedent set forth in the Plan.  The Effective Date of the Plan will occur on the first Business Day on which the conditions precedent to the effectiveness of the Plan, as set forth in the Plan, have been satisfied or waived pursuant to the Plan.  The Plan is to be implemented pursuant to its terms, consistent with the provisions of the Bankruptcy Code.

**T.     Conditions to Effective Date; Modification or Revocation of the Plan**.

1.     Conditions to Effective Date.  The Plan may not be consummated unless each of the conditions set forth below has been satisfied:

(a)     The Confirmation Order shall have been entered; and

(b)     All documents, instruments and agreements, in form and substance satisfactory to the Debtor, provided for under or necessary to implement the Plan, shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the Debtor.

CINLibrary 0121049.0583831   2305226v11

2.	**Modification of the Plan.**  Subject to the approval of the Oversight Committee, the Debtor may alter, amend, or modify the Plan under section 1127 of the Bankruptcy Code at any time prior to the Effective Date.  After the Effective Date, the Debtor and the Plan Administrator may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, or to address such matters as may be necessary to carry out the purposes and effects of the Plan.  Notwithstanding any reference herein to the forms of documents to be filed with the Bankruptcy Court prior to the Confirmation Hearing, and without limiting the preceding portions of this Article XI, the Debtor may make any non-material changes to such forms prior to the Effective Date.

3.	**Revocation of the Plan.**  The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then the Plan shall be null and void, and nothing contained herein shall:  (i) constitute a waiver or release of any Claims by or against, or Liens in property of, the Debtor; or (ii) serve as an admission of fact or conclusion of law or otherwise prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor.

# V.	**RISK ASSOCIATED WITH THE PLAN**

HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE THEREIN), PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

A.	**Parties in interest may object to the Debtor's classification of Claims.**

Section 1122 of the Bankruptcy Code provides that the Plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.  The Plan Proponent believes that the classification of claims and interests under the Plan complies with the requirements set forth in the Bankruptcy Code. However, the Plan Proponent cannot assure you that parties in interest and/or the Bankruptcy Court will reach the same conclusion.

B.	**The commencement of the Chapter 11 Case may have negative implications under certain contracts of the Debtor.**

The Debtor is party to various contractual arrangements under which the commencement of the Chapter 11 Case and the other transactions contemplated by the Plan could, subject to the Debtor's rights and powers under sections 362 and 365 of the Bankruptcy Code, (i) result in a breach, violation, default or conflict, (ii) give other parties thereto rights of termination or cancellation, or (iii) have other adverse consequences for the Debtor.  The magnitude of any such adverse consequences may depend on, among other factors, the diligence and vigor with which

CINLibrary 0121049.0583831   2305226v11

other parties to such contracts may seek to assert any such rights and pursue any such remedies in respect of such matters, and the ability of the Debtor prior to the Effective Date or the Liquidating Trustee following the Effective Date to resolve such matters on acceptable terms through negotiations with such other parties or otherwise.

## C. The Plan Proponent may not be able to secure confirmation of the Plan.

### 1. Risk of Non-Confirmation of the Plan

Although the Plan Proponent believes that the Plan will satisfy all requirements necessary for confirmation of the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion. Moreover, there can be no assurance that modifications to the Plan will not be required for confirmation or that such modifications would not necessitate the solicitation of votes.

### 2. Non-Consensual Confirmation

In the event any impaired Class of Claims or Interests does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Plan Proponent's request if at least one impaired Class has accepted the Plan (such acceptance being determined without including the vote of any "insider" in such Class), and as to each impaired Class that has not accepted the Plan, if the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes. The Plan Proponent believes that the Plan satisfies these requirements.

## D. The Plan Proponent may object to the amount or classification of your Claim.

The Plan Proponent reserves the right to object to the amount or classification of any Claim. The estimates set forth in this Disclosure Statement cannot be relied on by any creditor whose Claim is subject to an objection. Any such Claim holder may not receive its specified share of the estimated distributions described in this Disclosure Statement.

## E. The information in this Disclosure Statement is based on estimates, which may turn out to be incorrect.

The information in this Disclosure Statement is based upon Claims reflected in the Schedules and a preliminary review of the Claims filed as of the date hereof. Upon the passage of the Bar Date and the completion of a detailed analysis of the proofs of claim, the actual amount of Claims may differ from the current estimates. Further, the amounts of Disputed Claims that ultimately are allowed by the Bankruptcy Court may be significantly more or less than the estimated amount of such Claims. The actual aggregate amount of Allowed Claims may differ significantly from the estimates set forth in this Disclosure Statement. Accordingly, the amount of the Distributions that ultimately will be received by a particular holder of an Allowed Claim may be adversely or favorably affected by the aggregate amount of Claims ultimately Allowed.

CINLibrary 0121049.0583831  2305226v11

# VI. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

No rulings or determinations by the Internal Revenue Service have been obtained or sought by the Debtor with respect to the Plan. The Plan does not purport to address the federal income tax consequences of the Plan to particular classes of taxpayers (such as foreign persons, S corporations, mutual funds, small business investment companies, regulated investment companies, broker-dealers, insurance companies, tax-exempt organizations and financial institutions) or the state, local or foreign income and other tax consequences of the Plan.

NO REPRESENTATIONS ARE MADE REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE PLAN TO ANY HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT A TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.

THE FOREGOING DISCUSSION OF CERTAIN FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. ACCORDINGLY, THE INFORMATION CONTAINED HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSES OF (i) AVOIDING PENALTIES UNDER THE INTERNAL REVENUE CODE, OR (ii) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR MATTER ADDRESSED HEREIN. ADDITIONALLY, HOLDERS OF CLAIMS SHOULD CONSULT THEIR TAX ADVISORS WITH RESPECT TO THE TAX CONSEQUENCES OF THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF FEDERAL, STATE, LOCAL, FOREIGN AND OTHER TAX LAWS.

# VII. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

## A. Liquidation Under Chapter 7.

If the Plan can not be confirmed, the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code in which case a trustee will be appointed to liquidate the assets of the Debtor. It is impossible to predict precisely how the proceeds of a liquidation of the Debtor's assets under chapter 7 of the Bankruptcy Code would be distributed to the respective holders of Claims against or Interests in the Debtor. However, the Debtor believes that liquidation under chapter 7 would result in, among other things, (i) smaller distributions being made to creditors than those provided for in the Plan because of additional administrative expenses attendant to the appointment of a trustee and the trustee's employment of attorneys and other professionals, and (ii) additional expenses and claims, some of which may be entitled to priority.

## B. Alternative Plan of Reorganization.

If the Plan is not confirmed, the Debtor or any other party in interest could attempt to formulate a different plan with respect to the Debtor. Such a plan would necessarily involve the

CINLibrary 0121049.0583831  2305226v11

orderly liquidation of the Debtor's assets. The Debtor has concluded that the Plan represents the best alternative to protect the interests of creditors and other parties in interest.

Further, the Debtor believes that the Plan enables the Debtor to maximize the value of its assets, allowing its creditors to realize the highest recoveries under the circumstances. In a liquidation under Chapter 11 of the Bankruptcy Code, no chapter 7 trustee, who would likely have less familiarity with the Chapter 11 Case than the Plan Administrator, will need to be appointed, thus minimizing the administrative expenses of the Debtor's estate. Accordingly, the Debtor believes that the creditors of the Debtor will receive greater recoveries through the Plan than in a chapter 7 liquidation.

## VIII. <u>MISCELLANEOUS</u>

### A. <u>Securities and Exchange Commission</u>

Notwithstanding any provision herein to the contrary, no provision of the Plan, the Disclosure Statement or the Confirmation Order shall (i) discharge or release the Debtor or any other person or entity from any right, any claim (which as to any claim against property of the Debtor Estate's has been timely and properly asserted in the Chapter 11 Case), any cause of action or any power or any interest held or assertable by the United States Securities and Exchange Commission or (ii) enjoin, impair or delay the United States Securities and Exchange Commission from commencing or continuing any claims, causes of action, proceedings or investigations against the Debtor or any other person or entity in any non-bankruptcy forum, provided however, that any enforcement of a claim (as defined in the Bankruptcy Code) or monetary judgment, if any, against the Estate and/or property of the Debtor's Estate, will be brought strictly in accordance with the Bankruptcy Code, the Bankruptcy Rules and orders of the Bankruptcy Court in the Chapter 11 Case, to which the United States Securities and Exchange Commission is otherwise bound, subject to all applicable defenses.

CINLibrary 0121049.0583831   2305226v11

# IX. CONCLUSION AND RECOMMENDATION

The Debtor believes that confirmation and implementation of the Plan is preferable to any of the alternatives described above because it will provide the greatest recoveries to holders of Claims. Other alternatives would involve delay, uncertainty and substantial administrative costs. The Debtor urges holders of impaired Claims entitled to vote on the Plan to accept the Plan.

Respectfully submitted,

**GLC LIMITED**

By:   /s/ James R. Burritt

James R. Burritt
Chief Restructuring Officer

CINLibrary 0121049.0583831  2305226v11

# EXHIBIT A

# PLAN

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

IN RE:                          *

GLC LIMITED,                    *   CHAPTER 11

                                *   JUDGE HOPKINS

       DEBTOR.           *   CASE NO. 11-11090


\*  \*  \*  \*  \*  \*  \*  \*   \*   \*   \*   \*   \*   \*   \*   \*


## DEBTOR'S MODIFIED FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION (WITH TECHNICAL MODIFICATIONS STATED ON RECORD AT DISCLOSURE STATEMENT HEARING)


**Dated: September 8, 2011**


**FROST BROWN TODD LLC**
Ronald E. Gold, Esq.
Joseph B. Wells, Esq.
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
Telephone: (513) 651-6800

**ATTORNEYS FOR THE DEBTOR AND DEBTOR IN POSSESSION**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | * | |
| **GLC LIMITED,** | * | **CHAPTER 11** |
| | * | **JUDGE HOPKINS** |
| **DEBTOR.** | * | **CASE NO. 11-11090** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEBTOR'S CHAPTER 11 PLAN OF LIQUIDATION

GLC Limited (the "Debtor") hereby proposes the following Chapter 11 Plan of Liquidation pursuant to section 1121(a), title 11, United States Code:

## TABLE OF CONTENTS

**ARTICLE I.**

**DEFINITIONS** ........................................................................................................................... 1

**ARTICLE II.** ............................................................................................................................. 8

**TREATMENT OF UNCLASSIFIED CLAIMS** ....................................................................... 8

2.1. Administrative Claims ............................................................................................. 8

2.2. Administrative Claim Bar Date ............................................................................... 8

2.3. Priority Tax Claims. ................................................................................................ 9

2.4. Priority Claims ....................................................................................................... 10

2.5. Fee Claims ............................................................................................................. 11

**ARTICLE III.**

**CLASSIFICATION OF CLAIMS AND INTERESTS** ........................................................... 11

3.1. Class 1 Claims ...................................................................................................... 11

3.2.    Class 2 Claims ................................................................................................. 11

3.3.    Class 3 Claims ................................................................................................. 11

3.4.    Class 4 Interests ............................................................................................. 11

**ARTICLE IV.** .................................................................................................................. **11**

**TREATMENT OF CLASSES OF CLAIMS OR INTERESTS** ....................................................... **11**

4.1.    Class 1 –Secured Claims. ................................................................................ 11

4.2.    Class 2 –General Unsecured Claims. ............................................................. 13

4.3.    Class 3 – Subordinated Claims against the Debtor ....................................... 14

4.4.    Class 4 – Interests .......................................................................................... 14

**ARTICLE V.** ................................................................................................................... **15**

**PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS** ..................................................... **15**

5.1.    Objection to Claims ....................................................................................... 15

5.2.    Resolution of Disputed Claims ...................................................................... 15

5.3.    Estimation ...................................................................................................... 15

5.4.    Distribution on Disputed Claims ................................................................... 15

5.5.    Reserve for Disputed Claims ......................................................................... 16

**ARTICLE VI.** .................................................................................................................. **16**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ......................................................... **16**

6.1.    Assumption or Rejection of Executory Contracts ......................................... 16

6.2.    Deadline to File Rejection Damage Claims ................................................... 16

**ARTICLE VII.** ................................................................................................................. **17**

**EXECUTION AND IMPLEMENTATION OF THE PLAN** .......................................................... **17**

7.1.    Funding of the Plan ....................................................................................... 17

7.2.    Post Confirmation Debtor ............................................................................. 17

7.3.    Vesting of Property of the Estate ................................................................................................ 18

7.4.    Effectuating Documents ........................................................................................................... 18

**ARTICLE VIII.** ....................................................................................................................... **18**

**PLAN ADMINISTRATOR** ......................................................................................................... **18**

8.1.    Plan Administrator .................................................................................................................. 18

8.2.    Duties ...................................................................................................................................... 18

8.3.    Payment of Quarterly Fees ...................................................................................................... 19

8.4.    Fees and Expenses .................................................................................................................. 19

8.5.    Post-Effective Date Professional Fees .................................................................................... 19

8.6.    Liability; Indemnification ........................................................................................................ 20

8.7.    General Powers ....................................................................................................................... 20

8.8.    Limitation on the Plan Administrator Powers ........................................................................ 21

8.9.    Accounts ................................................................................................................................. 21

8.10.    Payment of Plan Expenses ...................................................................................................... 22

8.11.    Compensation of the Plan Administrator and Post Effective Date Professionals .................... 22

8.12.    Limitation of Liability and Indemnification of the Plan Administrator ..................................... 23

8.13.    No Liability for Acts of Predecessor ........................................................................................ 23

8.14.    No Implied Obligations ........................................................................................................... 23

8.15.    No Liability for Good Faith Error of Judgment ........................................................................ 24

8.16.    Reliance on Agents and Professionals .................................................................................... 24

8.17.    Reliance on Documents .......................................................................................................... 24

8.18.    No Personal Obligation ........................................................................................................... 24

8.19.    Indemnification ...................................................................................................................... 25

8.20.    Removal of Plan Administrator ............................................................................................... 25

8.21.    Resignation of Plan Administrator .......................................................................................... 25

8.22.    Appointment of Successor Plan Administrator ........................................................................ 25

8.23.     Tax Returns ........................................................................................................ 26

**ARTICLE IX.** ................................................................................................................. **26**

**DISTRIBUTIONS** ............................................................................................................ **26**

9.1.     Creditors Must Provide Identifying Information .............................................. 26

9.2.     Distributions ...................................................................................................... 26

9.3.     Disputed Claims ................................................................................................. 27

9.4.     Distribution After Allowance ............................................................................ 27

9.5.     No Partial Distribution ...................................................................................... 28

9.6.     Delivery of Distributions ................................................................................... 28

9.7.     Fractional Dollars .............................................................................................. 28

9.8.     De Minimis Distributions................................................................................... 28

9.9.     Undeliverable Checks or Uncashed Checks........................................................ 28

9.10.     Unclaimed Property ........................................................................................... 28

9.11.     Untimely Claims ................................................................................................ 29

9.12.     Interest on Claims ............................................................................................. 29

9.13.     No Recourse ...................................................................................................... 29

9.14.     Final Distribution .............................................................................................. 29

**ARTICLE X.** .................................................................................................................. **29**

**ACCOUNTING AND REPORTS TO BENEFICIARIES** ...................................................... **29**

10.1.     General Reporting.............................................................................................. 29

10.2.     Withholding ....................................................................................................... 29

10.3.     Conflicting Claim ............................................................................................... 30

**ARTICLE XI.** ................................................................................................................. **30**

**EFFECTS OF CONFIRMATION**....................................................................................... **30**

11.1.     Binding Effect.................................................................................................... 30

11.2. Discharge ........................................................................................................... 30

11.3. Releases and Injunctions. .................................................................................... 31

11.4. Retention of Causes of Action/Reservation of Rights ........................................... 33

11.5. Preservation of Insurance .................................................................................... 36

## ARTICLE XII. ........................................................................................................... 36

## MODIFICATION OF THE PLAN .............................................................................. 36

12.1. Modification of the Plan ...................................................................................... 37

12.2. Revocation of the Plan ........................................................................................ 37

## ARTICLE XIII. .......................................................................................................... 37

## CONDITIONS TO EFFECTIVE DATE OF PLAN ...................................................... 37

13.1. Conditions to Effective Date ................................................................................ 37

13.2. Notice of Effective Date ....................................................................................... 38

## ARTICLE XIV. .......................................................................................................... 38

## ADMINISTRATIVE PROVISIONS ........................................................................... 38

14.1. Retention of Jurisdiction ..................................................................................... 38

14.2. Successors and Assigns ........................................................................................ 40

14.3. Severability .......................................................................................................... 40

14.4. Governing Law ..................................................................................................... 41

14.5. The Committee ..................................................................................................... 41

14.6. Application of Section 1146 of the Bankruptcy Code ............................................ 42

14.7. Cramdown ........................................................................................................... 42

14.8. Continuation of Injunctions and Stays ................................................................. 42

14.9. Substantial Consummation of Plan ...................................................................... 42

14.10. Post-Confirmation Reports and Fees ................................................................... 43

14.11. Settlement of Causes of Action/Claims ............................................................... 43

**14.12.     Securities and Exchange Commission. ................................................................................. 43**

# ARTICLE I.

## DEFINITIONS

(a)     The following terms shall have the meanings indicated when used in capitalized form in this Plan:

**1.**     "*Accrued Professional Compensation*" means, at any given moment, all accrued, contingent and/or unpaid fees and expenses for legal, financial, advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under sections 328, 330(a) or 331 of the Bankruptcy Code or otherwise rendered prior to the Confirmation Date by any Retained Professionals in the Chapter 11 Case that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not been previously paid regardless of whether a fee application has been filed for any such amount.  To the extent that the Bankruptcy Court or any higher court denies or reduces by a Final Order any amount of a Retained Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation.

**2.**     "*Administrative Claim*" means a Claim for payment of costs or expenses of administration specified in sections 503(b) and 507(a)(2) of the Bankruptcy Code.

**3.**     "*Administrative Claim Bar Date*" means the date fixed pursuant to section 1.3 of the Plan by which all Entities asserting Administrative Claims arising in the period from the Petition Date through the Effective Date, inclusive, must have filed proofs of such Administrative Claims or requests for payment of such Administrative Claims or be forever barred from asserting such Administrative Claims against the Debtor or its property, or such other date by which any such Administrative Claim must be filed as may be fixed by order of the Bankruptcy Court.

**4.**     "*Affiliate*" means "affiliate" as defined in section 101(2) of the Bankruptcy Code.

**5.**     "*Allowed Claim*" means a Claim: (a) either (i) proof of which has been timely filed with the Bankruptcy Court or has been deemed timely filed by a Final Order; or (ii) if not so filed, scheduled by the Debtor other than as disputed, contingent or unliquidated; or (iii) any stipulation of amount and nature of a Claim filed prior to entry of the Confirmation Order; and (b) allowed by a Final Order, by this Plan, or because no party in interest timely has filed an objection, filed a motion to equitably subordinate, or otherwise sought to limit recovery on such Claim.  An Allowed Claim shall not include interest accruing after the Petition Date on the amount of any Claim except as expressly provided herein.

**6.**     "*Avoidance Actions*" means any and all rights, claims, and Causes of Action under sections 510 and 544 through 553 of the Bankruptcy Code or applicable state law that the Debtor or its Estate may possess against any Entity, whether arising before or after the Petition Date.

**7.** "*Ballot*" shall mean the Ballot for accepting or rejecting the Plan.

**8.** "*Ballot Date*" shall mean the date set by the Bankruptcy Court by which all Ballots with respect to the Plan must be received.

**9.** "*Bankruptcy Code*" means title 11 of the United States Code (11 U.S.C. §§ 101 et seq.), as amended from time to time, as applicable to the Chapter 11 Case.

**10.** "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Ohio, Western Division or any other court or adjunct thereof exercising competent jurisdiction.

**11.** "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as applicable to the Chapter 11 Case.

**12.** "*Bar Date*" means May 30, 2011, the date by which date all Entities asserting certain Claims arising before the Petition Date must have filed proofs of such Claims or be forever barred from asserting such Claims against the Debtor or its Estate.

**13.** "*Bar Date Order*" means that certain order entered by the Bankruptcy Court on or about March 14, 2011, [DE #72] establishing the Bar Date.

**14.** "*Business Day*" means any day other than Saturday, Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

**15.** "*Cash*" means cash and cash equivalents, including but not limited to bank deposits, checks, and other similar items.

**16.** "*Cause of Action*" means any action, cause of action, suit, account, controversy, agreement, promise, right to legal remedy, right to an equitable remedy, right to payment and claim, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise held by the Debtor or its Estate against any Entity, whether arising before or after the Petition Date, including, but not limited to those specifically described in the Plan and in the Disclosure Statement.

**17.** "*Chapter 11 Case*" means this case under chapter 11 of the Bankruptcy Code concerning the Debtor, administered under Case No. 11-11090.

**18.** "*Claim*" means a claim against the Debtor, as such term is defined in section 101(5) of the Bankruptcy Code.

**19.** "*Class*" means a category of Claims or Interests as provided for in Article IV of the Plan.

**20.** "*Collateral*" means the Debtor's tangible and intangible real and personal property assets subject to valid, perfected and unavoidable Liens and security interests and the proceeds thereof.

**21.** "*Committee*" means the Official Committee of Unsecured Creditors of GLC Limited, appointed on March 7, 2011 [DE #40], as such committee may be reconstituted from time to time.

**22.** "*Confirmation Date*" means the date the Bankruptcy Court enters an order confirming the Plan.

**23.** "*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

**24.** "*Confirmation Order*" means the order to be entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code.

**25.** "*Creditor*" means an Entity holding a Claim.

**26.** "*Debtor*" means GLC Limited.

**27.** "*Deficiency Claim*" means, with respect to a Claim that is partially secured, the amount by which the Allowed amount of such Claim exceeds the Debtor's interest in the property that serves as Collateral for the Claim, as limited by applicable state law.

**28.** "*Disclosure Statement*" means the disclosure statement relating to the Plan (including all exhibits and schedules annexed thereto or referred to therein) as may be altered, amended, supplemented or modified from time to time, filed by the Debtor pursuant to section 1125 of the Bankruptcy Code and incorporated herein by reference.

**29.** "Disputed Claim" means any Claim that is not an Allowed Claim as of the relevant date.

**30.** "*Distribution*" means a payment made to holders of Allowed Claims pursuant to the Plan.

**31.** "*Distribution Date*" means any date on which a Distribution is made.

**32.** "*Effective Date*" means the first Business Day on which all conditions to effectiveness of the Plan have been satisfied or waived.

**33.** "*Entity*" means "entity" as defined in section 101(15) of the Bankruptcy Code.

**34.** "*Estate*" means the estate of the Debtor created on the Petition Date as defined under section 541 of the Bankruptcy Code.

**35.** "*Fee Claim*" means a claim under sections 328, 330(a), 331, 363 or 503 of the Bankruptcy Code for Accrued Professional Compensation.

**36.** "*Final Order*" means an order, ruling or judgment, as entered by the Bankruptcy Court: (i) that has not been reversed, modified or amended, and is not stayed; (ii) as to which the time to appeal from or to seek review or rehearing or petition for certiorari has expired; and (iii) that is no longer subject to review, reversal, modification or amendment; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules, may be filed relating to such order or judgment shall not cause such order or judgment not to be a "Final Order."

**37.** "*Holder*" shall mean the holder of a Claim against or Equity Interest in the Debtor.

**38.** "*Impaired*" means any Claim or Interest, or Class of Claims or Interests, which is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

**39.** "*Interest*" means any ownership interest or right to acquire any ownership interest in the Debtor or any other equity security (as defined in the Bankruptcy Code) in the Debtor.

**40.** "*Lien*" means "lien" as defined in section 101(37) of the Bankruptcy Code.

**41.** "*Petition Date*" means February 28, 2011.

**42.** "*Plan*" means this plan of liquidation under chapter 11 of the Bankruptcy Code (including all exhibits and schedules annexed hereto), as the same may be altered, amended, or modified from time to time (after the Confirmation Date, such amendments or modifications being effective only if approved by order of the Bankruptcy Court).

**43.** "*Plan Administrator*" means James R. Burritt.

**44.** "*Plan Expenses*" means (A) fees, expenses, and other compensation of the Plan Administrator, the Oversight Committee and any accountants, legal counsel, or other professionals or agents employed by the Plan Administrator and the Oversight Committee in connection with the administration of the Plan, (B) expenses associated with the transfer, disposition, and liquidation of the Remaining Assets, (C) taxes, fees, levies, assessments, and other governmental charges, if any, incurred and payable by the Plan, (D) all other costs and expenses of administration of the Plan; and, (E) costs and expenses – including fees of legal counsel, for litigating, settling, and otherwise resolving all Causes of Action, including but not limited to, Avoidance Actions, Disputed Claims, and other contested matters relating to the Plan and its consummation.

**45.** "*Permitted Investments*" means temporary liquid investments such as United States Treasury Bills, short-term interest-bearing certificates of deposits, tax exempt securities, money market accounts, cash-equivalent investments or investments permitted pursuant to section 345 of the Bankruptcy Code or as otherwise permitted under a Final Order of the Bankruptcy Court.

**46.** "*Priority Claim*" means any Claim to the extent entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

**47.** "*Priority Tax Claim*" means any Claim of governmental units, to the extent entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

**48.** "*Pro Rata*" means the amount to be paid with respect to an Allowed Claim based on the ratio of the Allowed Claim to the total amount of Allowed Claims in the same Class.

**49.** "*Remaining Assets*" means any and all legal or equitable interests of the Debtor or the Estate in any and all property, whether tangible, intangible or titled in the name of the Debtor or any other Entity or Person, including but not limited to, the Avoidance Actions, the Causes of Action and any and all assets, or the proceeds thereof, seized or recovered by the United States of America in any criminal or civil proceeding for the benefit of the holders of Allowed Claims which are voluntarily provided to the Plan Administrator for distribution hereunder.

**50.** "*Retained Professional*" means any Entity: (a) employed in the Chapter 11 Case pursuant to a Final Order in accordance with section 327 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, 331 or 363 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**51.** "*Schedules*" means the schedules, as amended from time to time, of assets and liabilities filed by the Debtor with the Bankruptcy Court on April 29, 2011 [DE #134] in accordance with sections 521 and 1106(a)(2) of the Bankruptcy Code.

**52.** "*Secured Claim*" means any Claim, or portion thereof, against the Debtor to the extent such Claim is secured within the meaning of section 506(a) or 1111(b) of the Bankruptcy Code.

**53.** "*Subordinated Claims*" means any Claim, or portion thereof, against the Debtor to the extent such Claim arose within the meaning of section 510(b) and (c) of the Bankruptcy Code, or which may relate to any fictitious profit, interest or other charges in excess of the amount invested in the Debtor.

**54.** "*Settlement Procedures Order*" shall mean that certain *Order Fixing Class Of Controversies And Authorizing Debtor To Compromise And Settle Controversies Within Class Without Further Notice Or Hearing* [DN 202] the ("Settlement Procedures Order").

**55.** "*Substantial Consummation*" shall have the meaning ascribed to it in section 1101(2) of the Bankruptcy Code.

**56.** "*Termination Date*" shall mean the date on which the Plan Administrator has (i) (a) established the wind-up reserve, (b) distributed all Cash held for Holders of Allowed Claims in accordance with their interests as specified in the Plan; and (c) requested the Bankruptcy

Court to enter an order closing the Chapter 11 Case, and the Bankruptcy Court has entered the Final Decree closing the Chapter 11 Case; (ii) has filed all appropriate tax returns on behalf of the Debtor; and (iii) has filed a notice with the Bankruptcy Court of a final accounting and that all actions have been taken by the Plan Administrator as provided in the Plan. On the Termination Date, the Plan Administrator shall be discharged of his duties under the Plan.

57.    "*Unimpaired Claim*" means any Claim or Interest, or Class of Claims or Interests, which is not "impaired" within the meaning of section 1124 of the Bankruptcy Code.

58.    "*Unsecured Claim*" means any Claim or portion thereof, against the Debtor, other than an Administrative Claim, Priority Tax Claim, Priority Claim or Secured Claim.

# TERMS OF CONSTRUCTION

Terms of Construction:  The Plan shall be interpreted using the following standards:

(a)     *Capitalized Terms*:  The capitalized terms of this Plan shall have the meaning set forth in the Plan.  In the event a capitalized term of the Plan is not defined in the Plan, then it shall have the meaning given in the Bankruptcy Code or the Bankruptcy Rules.  In the event a capitalized term of the Plan is not defined in the Plan, the Bankruptcy Code, or the Bankruptcy Rules, then it shall have the meaning such term has in ordinary usage and if one or more meaning for such term exists in ordinary usage, then it shall have the meaning which is most consistent with the purposes of the Plan and the Bankruptcy Code.

(b)     *Reasonable Construction*:  The terms of the Plan shall not be construed against any Entity but shall be given a reasonable construction, consistent with the purposes of the Plan and the Bankruptcy Code.

(c)     *Herein, Hereof, Hereto, and Hereunder*:  The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

(d)     *Plural*:  Unless otherwise specified, the plural shall include the singular and the singular shall include the plural.

(e)     *Gender*:  Unless otherwise specified, the references to the masculine shall include the feminine and references to the feminine shall include the masculine.

(f)     *Including*:  The term "including" shall not be deemed to be exclusive and shall be deemed to mean "including without limitation."

# ARTICLE II.

## TREATMENT OF UNCLASSIFIED CLAIMS

**2.1.** **Administrative Claims**. In full and complete satisfaction, discharge and release of its Administrative Claim, each holder of an Allowed Administrative Claim shall receive one of the following treatments, in the sole discretion of the Plan Administrator: (i) to the extent not already paid, on the later of the Effective Date or thirty (30) Business Days after the date on which such Administrative Claim becomes an Allowed Claim, or, in each such case, as soon as reasonably practicable thereafter, Cash in the full amount of such Allowed Administrative Claim; (ii) to the extent not yet due and payable, payment in accordance with the terms and conditions of the particular transaction giving rise to the Administrative Claim; (iii) to the extent such Claims are Administrative Claims of the United States Trustee for fees pursuant to 28 U.S.C. § 1930(a)(6), Cash in accordance with the applicable schedule for payment of such fees; (iv) treatment on such other terms as may be mutually agreed upon in writing between the holder of such Allowed Administrative Claim and the Debtor (in consultation with the Committee), prior to the Effective Date, or the Plan Administrator, on or after the Effective Date; or (v) Cash on the first date that funds are available in the Liquidating Trust that are not subject to a Lien, as determined by the Plan Administrator in his sole discretion, to be available for Distribution; provided, however, that interim and/or final payment of Allowed Administrative Claims approved by the Bankruptcy Court shall be paid at the time of and in accordance with such Bankruptcy Court approval.

**2.2.** **Administrative Claim Bar Date**. Administrative Claim requests respecting administrative claims that have arisen or will arise in the period from the Petition Date through the Effective Date, inclusive, must be filed and served pursuant to the procedures set forth in the Confirmation Order and/or notice of entry of Confirmation Order, no later than forty-five (45)

days after the Effective Date (unless an earlier date is set by the Bankruptcy Court). Notwithstanding anything to the contrary herein, no Administrative Claim request need be filed for the allowance of any fees of the United States Trustee arising under 28 U.S.C. § 1930. Any Entities that are required to, but fail to file such an Administrative Claim request on or before the deadline referenced above, shall be forever barred from asserting such Claim against the Debtor or the Plan Administrator and their respective attorneys, other professionals, trustee and/or agents, or any of property of the Debtor, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Administrative Claim.

### 2.3. **Priority Tax Claims**.

(a) Payment. On the later of the Effective Date or forty-five (45) Business Days after the date on which a Priority Tax Claim becomes an Allowed Claim, or, in each such case, as soon as reasonably practicable thereafter; each holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date will receive in full and complete satisfaction, discharge and release of its Priority Tax Claim, one of the following treatments, in the sole discretion of the Plan Administrator: (i) Cash in the full amount of the Allowed Priority Tax Claim or (ii) regular installment payments in Cash, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, (a) of a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (b) which total value shall include simple interest to accrue on any outstanding balance of such Allowed Priority Tax Claim starting on the Effective Date at the rate of interest determined under applicable nonbankruptcy law pursuant to section 511 of the Bankruptcy Code; and (c) over a period ending not later than 5 years after the Petition Date.

(b)     Installment Payments.   Any installment payment(s) made pursuant to section 1129(a)(9)(C) of the Bankruptcy Code shall be in equal quarterly Cash payments beginning on the later of the first day of the calendar month following (i) the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Claim, and subsequently on the first day of each third calendar month thereafter, as necessary.

(c)     Priority Tax Claim That Is Not Otherwise Due And Payable On Or Prior To The Effective Date.   The amount of any Priority Tax Claim that is not otherwise due and payable on or prior to the Effective Date, and the rights of the holder of such Claim, if any, to payment in respect thereof shall: (a) be determined in the manner in which the amount of such Claim and the rights of the holder of such Claim would have been resolved or adjudicated if the Chapter 11 Case had not been commenced; (b) survive after the Effective Date as if the Chapter 11 Case had not been commenced; and (c) not be discharged pursuant to section 1141 of the Bankruptcy Code. In accordance with section 1124 of the Bankruptcy Code, and notwithstanding any other provision of the Plan to the contrary, the Plan shall not alter or otherwise impair the legal, equitable, and contractual rights of any holder of a Priority Tax Claim that is not otherwise due and payable on or prior to the Effective Date.

**2.4.     Priority Claims**. In full and complete satisfaction, discharge and release of its Priority Claim, each holder of an Allowed Priority Claim will receive Cash equal to the unpaid portion of such Allowed Priority Claim, on (or as soon as practical thereafter) the later of (a) the Effective Date, (b) forty-five business Days after the date on which said entity becomes a holder of such Allowed Priority Claim, or (c) such date as such Entity may agree to with the Debtor prior to the Effective Date, or the Plan Administrator on or after the Effective Date.

2.5. **Fee Claims**. Retained Professionals or other Entities asserting a Fee Claim for services rendered before the Effective Date must file and serve on the Plan Administrator and such other Entities who are designated by the Bankruptcy Rules or order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than 45 days after the Effective Date. Objections to any Fee Claim must be Filed and served on the Plan Administrator and the requesting party by the later of (a) 45 days after the Effective Date and (b) 30 days after the Filing of the applicable request for payment of the Fee Claim. To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court regarding the payment of Fee Claims.

## ARTICLE III.

## CLASSIFICATION OF CLAIMS AND INTERESTS

For purposes of the Plan, Claims are classified as follows:

3.1. **Class 1 Claims**. Class 1 contains the Secured Claims.

3.2. **Class 2 Claims**. Class 2 contains the General Unsecured Claims.

3.3. **Class 3 Claims**. Class 3 contains Subordinated Claims against the Debtor.

3.4. **Class 4 Interests**. Class 4 contains the Interests in the Debtor.

## ARTICLE IV.

## TREATMENT OF CLASSES OF CLAIMS OR INTERESTS

4.1. **Class 1 –Secured Claims.**

(a) *Impairment*: Class 1 is Unimpaired under the Plan.

(b) *Treatment*:    In full and complete satisfaction, discharge and release of their respective Class 1 Secured Claim, each holder of an Allowed Class 1 Secured Claim, if any, shall receive one of the following treatments, in the sole discretion of the Plan Administrator:

(c) *Lump Sum Payments*:  Holders of Allowed Class 1 Secured Claims shall receive payment in full on the later of: (i) the date of the liquidation or disposition of the Collateral securing the Allowed Class 1 Secured Claim, or (ii) the Effective Date, or (iii) the date that is forty-five (45) Business Days after any such Claim is allowed by order of the Bankruptcy Court or by agreement between said holders of the respective Allowed Class 1 Secured Claims and the Plan Administrator; or

(d) *Return of Collateral*:  The Plan Administrator may surrender the Collateral securing said Allowed Class 1 Other Secured Claim to such Claim holder in full satisfaction of its Allowed Class 1 Secured Claim on the later of: (i) the Effective Date, or (ii) the date that is ten (10) days after any such Claim is allowed by order of the Bankruptcy Court or by agreement between such holder of an Allowed Class 1 Secured Claim.

(e) *Retention of Liens*:  The holder of an Allowed Class 1 Secured Claim shall retain its Lien securing such Claim as of the Confirmation Date until all Distributions have been made to such holder as provided in this Section.

(f) *Deficiency Claim*:  Any Deficiency Claim of holders of Allowed Class 1 Secured Claims shall be treated as a Class 2 General Unsecured Claim.

(g) *Voting*:  Class 1 is Unimpaired, and Holders of Allowed Class 1 Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Class 1 Secured Claims are not entitled to

vote to accept or reject the Plan; provided, however, that all Class 1 Secured Claims shall be subject to Allowance under the provisions of the Plan and the Bankruptcy Code.

**4.2.     Class 2 –General Unsecured Claims.**

(a)     *Impairment*:     Class 2 is Impaired under the Plan.

(b)     *Treatment*:  Each holder of an Allowed Class 2 General Unsecured Claim shall receive in Cash, in full and final satisfaction of such Claim, its Pro Rata share of the proceeds of the Remaining Assets after payment in full of (i) Plan Expenses, (ii) Allowed Administrative Claims, (iii) Allowed Priority Tax Claims, (iv) Allowed Priority Claims and (v) Allowed Class 1 Secured Claims.  Such Distributions shall be made from to time to time by the Plan Administrator as set forth in the Plan.  Each holder of an Allowed Class 2 General Unsecured Claim shall also be entitled receive interest on account of an Allowed Class 2 General Unsecured Claim, to the extent allowed under applicable law, accruing from and after the Effective Date, but only to the extent that each holder of an Allowed Class 2 General Unsecured Claim receives payment in full on account of their Allowed Class 2 General Unsecured Claim.

(c)     *Cramdown*:  To the extent necessary, the Debtor will request Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to Class 2.  The Debtor reserves the right to modify the Plan with respect to Class 2.

(d)     *Voting*:  Class 2 is impaired and Holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

(e)     *Miscellaneous*:  Unless otherwise ordered by the Bankruptcy Court, Class 2 shall include the Allowed Claims of individuals or entities which made investments in the

Debtor, but only to the extent of the actual funds invested in the Debtor less funds paid by the Debtor to the individual or entity.

**4.3.     Class 3 – Subordinated Claims against the Debtor.**

(a)     *Classification*:   Class 3 consists of all Subordinated Claims against the Debtor.

(b)     *Treatment*:     Holders of Subordinated Claims will not receive any distribution on account of such Claims unless and until each holder of an Allowed Class 2 General Unsecured Claim receives payment in full plus accrued interest.

(c)     *Voting*:   Class 3 is Impaired, and Holders of Class 3 Claims are not entitled to receive or retain any property under the Plan on account of Allowed Class 3 Claims. Therefore, Holders of Class 3 Claims are deemed not to have accepted the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Class 3 Claims are not entitled to vote to accept or reject the Plan.

**4.4.     Class 4 – Interests.**

(a)     *Impairment*:   Class 4 is Impaired under the Plan.

(b)     *Treatment*:     On the Effective Date, all Interests shall be deemed cancelled, and all holders of Interests shall neither receive nor retain any property under the Plan.

(c)     *Voting*:   Class 4 is Impaired and Holders are conclusively presumed to have rejected the Plan pursuant to section 1126(f) of the Bankruptcy code.  Therefore, Holders of Class 4 Interests are not entitled to vote to accept or reject the Plan.

# ARTICLE V.

## PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS

**5.1.** **Objection to Claims**. Except with respect to Claims that already are Allowed Claims by order of the Bankruptcy Court, the Plan Administrator may object to any Claim, including, Administrative Claims, Priority Tax Claims, Priority Claims, whether listed on the schedules filed by Debtor or filed by any Creditor, on or before the later of (a) one hundred eighty (180) days from the date of filing of any Claim or (b) unless extended by the Bankruptcy Court, one hundred and eighty (180) days after the Effective Date.

**5.2.** **Resolution of Disputed Claims**. Subject to the terms of the Plan with respect to previously Allowed Claims, all objections to Claims shall be litigated to a Final Order except to the extent the Plan Administrator elects to withdraw any such objection or the Plan Administrator and the claimant elect to compromise, settle or otherwise resolve any such objection, in which event the Plan Administrator may settle, compromise or otherwise resolve any Disputed Claim without approval of the Bankruptcy Court.

**5.3.** **Estimation**. The Plan Administrator may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Plan Administrator has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to such Claim.

**5.4.** **Distribution on Disputed Claims**. No Distributions shall be made with respect to a Disputed Claim until such Disputed Claim becomes an Allowed Claim.  In the event, and to the extent, a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Allowed Claim shall receive such Distributions as to which such holder is then entitled under the Plan.

**5.5.** **Reserve for Disputed Claims**. With respect to Claims to be paid by the Plan, the Plan Administrator shall hold in reserve, for the benefit of each holder of a Disputed Claim, Cash in an amount required by order of the Bankruptcy Court or, in the absence of such order, Cash equal to the Distribution that would have been made to the holder of such Disputed Claim, if it were an Allowed Claim in the liquidated amount, if any, asserted on the Effective Date. If and to the extent that a Disputed Claim becomes an Allowed Claim, on the first Distribution Date after such allowance, the Plan Administrator shall distribute to the holder thereof the amount of Cash to which such holder is entitled under the provisions of this Plan.

**ARTICLE VI.**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**6.1.** **Assumption or Rejection of Executory Contracts**. All executory contracts and unexpired leases to which the Debtor is a party shall be deemed rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, on the Confirmation Date except those executory contracts or unexpired leases that: (i) have been assumed by the Debtor (or assumed and assigned by the Debtor to third parties) on or before the Confirmation Date; (ii) are assumed (or assumed and assigned) after the Confirmation Date by a Final Order granting a motion that is pending as of the Confirmation Date; or (iii) become the subject of a dispute over the amount or manner of cure and for which the Plan Administrator makes a motion to reject such contract or lease based upon the existence of such dispute.

**6.2.** **Deadline to File Rejection Damage Claims**. Each Entity that is a party to an executory contract or unexpired lease rejected under the Plan must file with the Bankruptcy Court and serve on the Plan Administrator, on or before the earlier of forty five (45) days after entry of the Confirmation Order or thirty (30) days after entry of an order rejecting such contract or lease, a proof of claim for damages alleged to arise from the rejection of the applicable

contract or lease or be forever barred from filing a Claim, or sharing in Distributions under the Plan, related to such alleged rejection damages. Claims for damages for the rejection of an executory contract or unexpired lease shall constitute Class 2 General Unsecured Claims.

## ARTICLE VII.

## EXECUTION AND IMPLEMENTATION OF THE PLAN

**7.1.** **Funding of the Plan**. The Plan shall be funded through the effective collection and liquidation by the Plan Administrator of the Remaining Assets, including but not limited to, Causes of Action, into Cash.

**7.2.** **Post Confirmation Debtor**. The Debtor will continue in existence after the Effective Date and will hold title to all of the Remaining Assets, as well as any property acquired after the Effective Date that would otherwise become property of the Estate under section 541 of the Bankruptcy Code. The Debtor will hold the Remaining Assets solely for the benefit of those persons or entities entitled under the Plan to receive that property or the net proceeds from the liquidation of the Remaining Assets. As set forth herein, the Plan Administrator will be the Debtor's principal agent for managing, administering, liquidating, and disbursing the Remaining Assets and, subject to the Bankruptcy Court's jurisdiction, will exercise all of the powers and duties set forth in the Plan. No entity other than an entity entitled to receive a payment or Distribution under this Plan will have any recourse against the Debtor, the Estate or the Plan Administrator. The Plan is a liquidation plan under the provisions of section 1123(b)(4) of the Bankruptcy Code. The Remaining Assets of the Debtor shall be liquidated to Cash, and sold or otherwise disposed of in accordance with the provisions of the Plan and any orders approving the sale of any property of the Estate. All proceeds of such dispositions shall be used for the performance of the obligations set forth in the Plan, and shall not be subject to any Claim by any

entity except as provided in the Plan. The Debtor shall be deemed dissolved sixty (60) days after Substantial Consummation of the Plan.

**7.3.** **Vesting of Property of the Estate**. Except as provided in the Confirmation Order, on the Effective Date, all of the interests and property of the Debtor, tangible and intangible, whether acquired before or after the Petition Date or the Effective Date, shall be vested in the Debtor as it shall be constituted after the Effective Date, subject to the liens and interests of the Holders of Allowed Secured Claims.

**7.4.** **Effectuating Documents**. The Plan Administrator, or such other person(s) as the Plan Administrator may approve is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan. The Plan Administrator or such other person(s) is authorized to certify or attest to any of the foregoing actions.

**ARTICLE VIII.**

**PLAN ADMINISTRATOR**

**8.1.** **Plan Administrator**. The Debtor has selected James R. Burritt to be the Plan Administrator and Mr. Burritt has accepted such position. The Plan Administrator shall be compensated as set forth herein.

**8.2.** **Duties**. The Plan Administrator's duties include: (i) the pursuit of Causes of Action, including but not limited to, the Avoidance Actions; (ii) objections to, and resolution of, all Claims; (iii) the distribution of funds to pay Plan Expenses of the Debtor and to pay Claims; (iv) the liquidation of the Remaining Assets on and after the Effective Date; and (v) such other matters as provided herein and in the discretion of the Plan Administrator. The Plan Administrator may employ professionals or other persons, which may include firms that are or

were employed by the Debtor or the Committee, in connection with the performance of his duties and compensate such persons or professionals for their reasonable fees and expenses. The Plan Administrator intends to retain the law firm of Frost Brown Todd LLC as his counsel. The Plan Administrator may compromise or settle any Claims, Causes of Action (including but not limited to Avoidance Actions) or other matters or disputes relating to the Remaining Assets or the Debtor without notice or Bankruptcy Court approval.

**8.3.    Payment of Quarterly Fees**. The Plan Administrator shall pay the quarterly fees, pursuant to 28 U.S.C. § 1930(a)(6), to the U.S. Trustee until this Chapter 11 Case has been converted, dismissed or closed by the Bankruptcy Court.

**8.4.    Fees and Expenses**. The fees and expenses of the Plan Administrator shall be governed by the terms of the Plan. In no event shall the Plan Administrator be required to expend his own funds.  Any fees and/or expenses incurred after the Effective Date on behalf of the Debtor, i.e., the Plan Expenses, shall be paid in accordance with the Plan.

**8.5.    Post-Effective Date Professional Fees**. Except as otherwise set forth herein, the reasonable fees and expenses of the Plan Administrator and the professionals representing the Plan Administrator for services provided after the Effective Date may be paid by the Plan Administrator as provided herein without further Court approval after notice to the Oversight Committee.  Provided available funds exist, payment shall be made within thirty (30) days after submission of a detailed invoice to the Plan Administrator.  If the Plan Administrator or the Oversight Committee disputes the reasonableness of any such invoice, the undisputed portion of such invoice shall be timely paid, and the affected professional may submit the dispute to the Bankruptcy Court for appropriate resolution.  If there are insufficient funds available to pay all fees and expenses of professionals and compensation to the Plan Administrator in full, such

professionals and the Plan Administrator shall share Pro Rata in the available funds until payment in full is made.

**8.6.    Liability; Indemnification**.  Unless the Bankruptcy Court orders otherwise, the Plan Administrator shall not be required to give any bond for the faithful performance of his duties hereunder.  Except for his or their own gross negligence or willful misconduct, neither the Plan Administrator, the CRO or any professional person of the Debtor or professional person, representative, employee, or agent retained by the Plan Administrator or the Debtor, after the Effective Date (collectively the "Indemnified Parties") shall have any liability to any Entity for acts or omissions related to the Debtor and the Debtor shall indemnify the Indemnified Parties against expenses, including attorney's fees, judgments, penalties, fines and amounts paid in settlement actually and reasonably incurred by the Indemnified Parties.

**8.7.    General Powers**.    Except as otherwise provided in the Plan, the Plan Administrator shall have, without prior or further authorization or further order of the Bankruptcy Court, such powers and authority necessary to fulfill the purpose of the Plan including, but not limited to, the following:  (A) to prosecute and defend all actions affecting the Debtor and, after notice to the Oversight Committee, to compromise or settle any suits, claims, or demands, or waive or release any rights relating to the Debtor provided however, that if the Oversight Committee raises a timely objection to the proposed compromise or settlement, the Plan Administrator shall seek Bankruptcy Court approval of the proposed settlement or compromise; (B) to prosecute, settle, or otherwise resolve Disputed Claims and Causes of Action, including but not limited to Avoidance Actions, and deposit any proceeds therefrom for Distribution pursuant to the provisions of the Plan; (C) to make Permitted Investments; (D) to maintain escrows and other accounts, make Distributions to holders of Allowed Claims and take

other actions consistent with the Plan and the implementation thereof; (E) to pay Plan Expenses; (F) to implement and enforce all provisions of the Plan relating to the Remaining Assets; (G) to maintain appropriate books and records, including but not limited to, maintaining a record and account for all proceeds received by the Debtor for Distribution in accordance with the Plan; (H) to abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of the Plan Administrator's choice, any assets that the Plan Administrator concludes are of no benefit; and (I) to otherwise engage in all acts that would constitute ordinary course of business in performing the obligations of the Plan Administrator.

      **8.8.**    **Limitation on the Plan Administrator Powers**. The Plan Administrator may invest and reinvest all funds held by the Reorganized Debtor (subject to Distribution requirements set forth in the Plan) in Permitted Investments designed to provide a reasonable return to the Debtor and consistent with liquidity requirements for payment of Plan Expenses and making of Distributions hereunder. The Plan Administrator shall not be responsible, and shall have no liability whatsoever, to any person or entity for any loss to the Debtor, or the amount of interest thereon, resulting from the investment thereof in such Permitted Investments. The Plan Administrator shall not invest any funds in a security or instrument that does not constitute a Permitted Investment or take any action that may cause the Debtor to become subject to the provisions of the Investment Company Act of 1940, as amended.

      **8.9.**    **Accounts**. The Plan Administrator may maintain, on behalf of the Debtor such accounts as necessary at any bank or financial institution organized under the laws of the United States of America or any state thereof, as he may, in his discretion, select in accordance with section 345(a) of the Bankruptcy Code.

**8.10.  Payment of Plan Expenses**.  Subject to the terms of the Plan, the Plan Administrator shall pay all expenses of the Debtor or the Oversight Committee incurred after the Effective Date, including the fees of professionals retained by the Debtor, the Plan Administrator and the Oversight Committee, first from the proceeds of the Remaining Assets, as such expenses are incurred in the ordinary course of administering the Debtor and the Plan.

**8.11.  Compensation of the Plan Administrator and Post Effective Date Professionals**.

(a)  The Plan Administrator shall receive weekly compensation, commencing on the Effective Date and ending upon the closing of the Chapter 11 Case, at his standard hourly rate of $315.00, not to exceed $8,800.00 per week, plus reimbursement of his normal and customary out of pocket expenses.  The Plan Administrator's fee(s) will be payable on the first Business Day of the month (being the first day on which banking institutions in the State of Ohio are not authorized or required by law or regulation to be closed) following the month for which service has been rendered.  Such compensation shall be paid as a Plan Expense of the Debtor.

(b)  On or before the last day of each month following the month for which compensation is sought, each of the post Effective Date professionals seeking compensation under the Plan, including but not limited to, the Plan Administrator, counsel for the Debtor, counsel for the Plan Administrator and counsel for the Oversight Committee, shall serve a monthly statement on the Plan Administrator and the Oversight Committee, provided, however, that failure of any of the professionals to serve a monthly statement on the Plan Administrator and the Oversight Committee for any one or more months shall not waive or impair the right of such professionals to subsequently seek compensation for all or any number of such months in a later statement delivered to the Plan Administrator and the Oversight Committee.  The Plan

Administrator and the Oversight Committee will have ten (10) days from the date such statement is received to review the statement and object to such statement by serving a written objection on such professional setting forth the precise nature of the objection and the amount at issue. At the expiration of the ten (10) day period, the Plan Administrator shall promptly pay out 100% of the amounts requested, except for the portion of such fees and disbursements to which an objection has been made, if any. The parties shall attempt to consensually resolve objections, if any, to any monthly statement. If the parties are unable to reach a consensual resolution of any such objection, the party which received an objection to its fees may seek payment of such fees by filing a motion with the Bankruptcy Court on proper notice to the Plan Administrator. Such compensation shall be paid as a Plan Expense of the Debtor.

**8.12. Limitation of Liability and Indemnification of the Plan Administrator**. The Plan Administrator shall exercise the rights and powers vested in him by the Plan and use the same degree of care and skill in his exercise as a prudent person would exercise or use under the circumstances in the conduct of that person's own affairs. No provision of the Plan shall be construed to relieve the Plan Administrator from liability for his own grossly negligent actions, his own grossly negligent failure to act, fraud, or his own willful misconduct, except as otherwise provided herein.

**8.13. No Liability for Acts of Predecessor**. No successor Plan Administrator shall be in any way responsible for the acts or omissions of any Plan Administrator in office prior to the date on which he/she becomes Plan Administrator unless a successor Plan Administrator expressly assumes such responsibility.

**8.14. No Implied Obligations**. Except as otherwise set forth in the Plan, the Plan Administrator shall not be liable except for the performance of such duties and obligations as are

specifically set forth herein and in the Plan, and no implied covenants or obligations shall be read into this Plan.

**8.15.** **No Liability for Good Faith Error of Judgment**. The Plan Administrator shall not be liable for any error of judgment made in good faith, unless it shall be proved that the Plan Administrator was grossly negligent in ascertaining the pertinent facts.

**8.16.** **Reliance on Agents and Professionals**. Except as otherwise provided in this Plan, the Plan Administrator may engage and consult with legal counsel and other agents and professionals selected and employed by him pursuant to the Plan and shall not be liable for any action taken or suffered by the Plan Administrator in reliance upon the advise of such counsel, agents or advisors unless it shall be proved that such reliance constituted willful misconduct or gross negligence. The Plan Administrator shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Remaining Assets.

**8.17.** **Reliance on Documents**. Except as otherwise provided herein, the Plan Administrator: (A) may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, and other paper or document believed by the Plan Administrator to be genuine and to have been signed or presented by the proper party or parties; and (B) shall have no liability or responsibility with respect to the form, execution, or validity thereof and no duty to inquire as to the identity, authority, or rights of the persons so signing or presenting.

**8.18.** **No Personal Obligation**. None of the provisions hereof shall require the Plan Administrator to expend or risk his own personal funds or otherwise incur personal financial liability or expense in the performance of his duties hereunder. Persons dealing with the Plan

Administrator, or seeking to assert claims against him shall look only to the Remaining Assets, to the extent permitted by the Plan or applicable law, to satisfy any liability incurred by the Plan Administrator to such person in carrying out the terms of the Plan, and the Plan Administrator shall have no personal, individual obligation to satisfy any such liability.

8.19. **Indemnification**. So long as the Plan Administrator shall have acted in compliance with the standards of conduct set forth in the Plan, the Plan Administrator shall be indemnified by and receive reimbursement from the Remaining Assets against and from any and all losses, claims, damages, and expenses (including, without limitation, any reasonable fees of counsel or other expenses incurred in defense or investigation of actions or proceedings in respect thereof) which he may incur in the exercise and performance of any of his powers and duties under the Plan.

8.20. **Removal of Plan Administrator**. The Plan Administrator(s) may be removed for cause shown upon application to the Bankruptcy Court.

8.21. **Resignation of Plan Administrator**. The Plan Administrator may resign by an instrument in writing signed by the Plan Administrator and filed with the Bankruptcy Court, provided that the Plan Administrator shall continue to serve as the Plan Administrator after his resignation until the earlier of (a) 90 days after his resignation or (b) the appointment of a successor Plan Administrator shall become effective in accordance with the Plan or as the Bankruptcy Court shall otherwise order.

8.22. **Appointment of Successor Plan Administrator**. In the event of the death, resignation, incompetence, total disability, or removal of a Plan Administrator, the Bankruptcy Court shall have authority to appoint a successor Plan Administrator. Such appointment may specify the date on which such appointment shall be effective. Every successor Plan

Administrator appointed hereunder shall acknowledge such appointment and the terms and provisions of the Plan and thereupon the resignation or removal of the retiring Plan Administrator shall become effective and such successor Plan Administrator without any further act, deed, or conveyance shall become vested with all the rights powers, trusts, and duties of the retiring Plan Administrator.

**8.23. Tax Returns**. The Plan Administrator shall be responsible for filing all of the tax returns required for the Debtor.

## ARTICLE IX.

## DISTRIBUTIONS

**9.1. Creditors Must Provide Identifying Information**. In order to receive Distributions, all holders of Allowed Claims shall be required to provide to the Plan Administrator, at the address set forth below, such holder's federal tax identification number. A notice identifying the holder's name, address, and federal tax identification number must be mailed to:

James R. Burritt
MainStream, LLC
720 Brixworth Blvd., Suite 200
Knoxville, TN 37934-4773

**9.2. Distributions**. The Plan Administrator, on behalf of the Debtor shall make Distributions of the proceeds of the Remaining Assets, if any, in the priorities and amounts established in the Plan. In general, the Plan Administrator will distribute at least quarterly the net proceeds from the Remaining Assets, or if the Debtor is holding at least $500,000.00 in net proceeds from the Remaining Assets, reserving an amount determined by the Plan Administrator to pay the Plan Expenses of the Debtor in excess of said amount. Notwithstanding that general

intent, Distributions shall commence if and when there has been sufficient recovery of by the Debtor to make a Distribution practical and continue thereafter at such intervals as determined in the Plan Administrator's discretion, provided however, that the Plan Administrator shall not be required to make any Distribution if the Remaining Assets available for Distribution are not sufficient, in the Plan Administrator's discretion to justify incurring the expense to the Plan Administrator necessarily associated with the making of such Distributions. The Plan Administrator may retain an amount of Remaining Assets reasonably necessary to meet claims and contingent liabilities (including Disputed Claims) and Plan Expenses of the Debtor. Notwithstanding anything to the contrary in the Plan, the Plan Administrator shall make a final Distribution, pursuant to section 9.14 below, even if the Debtor is holding funds less than $500,000.00.

**9.3.** **Disputed Claims**. With respect to Disputed Claims, any Distribution otherwise payable to the holders of such claims shall be held in a reserve account by the Plan Administrator pending resolution of the disputed status of such claim. After final resolution has been reached with respect to the Disputed Claims, any remaining property held in such reserve account will be distributed in accordance with the Plan.

**9.4.** **Distribution After Allowance**. Within ten (10) Business Days after the date when a Disputed Claim becomes an Allowed Claim, the Plan Administrator will distribute to the holders of Disputed Claims that have become Allowed any property in the reserve account that would have been distributed to such Claim holders on the Distribution dates on which Distributions previously were made to holders of Allowed Claims, if the Disputed Claims that have become Allowed had been Allowed Claims, on such earlier Distribution dates.

**9.5.** **No Partial Distribution**. The Plan Administrator shall not make any partial Distributions to any holder of any Disputed Claims pending resolution of such Disputed Claims.

**9.6.** **Delivery of Distributions**. The Plan Administrator is only required to make a Distribution where the Plan Administrator has a current mailing address and tax identification number for the holder of the Allowed Claim. The Plan Administrator shall use his reasonable efforts to ascertain this information prior to making such Distributions but shall not be required to overcome these or any other barriers which would prevent a Distribution from being made.

**9.7.** **Fractional Dollars**. Notwithstanding anything to the contrary contained in the Plan, the Plan Administrator shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

**9.8.** **De Minimis Distributions**. The Plan Administrator shall have no obligation to make a Distribution on account of an Allowed Claim if the amount to be distributed to the holder of an Allowed Claim on the Distribution date has a value of less than $10.00.

**9.9.** **Undeliverable Checks or Uncashed Checks**. The Plan Administrator is not be required to make subsequent Distributions with Distribution checks which have been returned to the Plan Administrator as undeliverable (the "Undeliverable Checks") or Distribution checks which have not been cashed by beneficiaries (the "Uncashed Checks") unless the required information is received from such beneficiaries within 60 days of the first attempted Distribution.

**9.10.** **Unclaimed Property**. All unclaimed or returned Distributions as described in the Plan shall constitute Remaining Assets to be distributed in accordance with the terms of the Plan.

**9.11.  Untimely Claims**. Except as otherwise agreed by the Plan Administrator, any Claim filed after the applicable Bar Date shall be deemed disallowed and expunged without further notice, action or order of the Bankruptcy Court, and holders of such Claims shall not receive any Distribution on account of such Claims.

**9.12.  Interest on Claims**. Interest shall not accrue on Claims, and no holder of a Claim shall be entitled to interest accruing on any Claim unless otherwise expressly provided under applicable law or pursuant to the terms of the Plan.

**9.13.  No Recourse**.  No claimant shall have recourse to the Debtor and the Plan Administrator or the Committee other than for the enforcement of rights or Distributions.

**9.14.  Final Distribution**.  The final Distribution shall occur upon the payment of all Plan Expenses of the Debtor and the payment of all Allowed Claims pursuant to the terms set forth in the Plan to the extent funds are available after liquidation of all the Remaining Assets, regardless of whether the Debtor is holding funds that are less than $500,000.

## ARTICLE X.

## ACCOUNTING AND REPORTS TO BENEFICIARIES

**10.1.  General Reporting**. To the extent it is feasible and practicable as determined by the Plan Administrator, each Distribution by the Plan Administrator shall be accompanied by a report which details and accounts for the Remaining Assets since the prior report.  The report shall contain a summary of expenses incurred by the Plan Administrator and Distributions made on account of Allowed Claims.

**10.2.  Withholding**. To the extent that the Plan Administrator is required by applicable law to withhold or otherwise deduct any taxes, fees, levies, assessments, or other governmental charges in respect of any Distributions made pursuant to the Plan, the Plan Administrator shall be

entitled to withhold or deduct the amount of such taxes, fees, levies, assessments, or other governmental charges from the gross amounts of such Distributions and remit such amounts to the applicable taxing or other governmental authorities.

**10.3.    Conflicting Claim**.  In the event the Plan Administrator becomes aware of any disagreement or conflicting claims with respect to the Remaining Assets, or if he, in good faith, is in doubt as to any action which should be taken under the Plan, he shall have the absolute right, at his election, to do any or all of the following: (A) to the extent and only to the extent of such disagreement or conflict, or to the extent deemed by the Plan Administrator necessary or appropriate in light of such disagreement or conflict, withhold or cease all further performance under the Plan (save and except for the safekeeping of the Remaining Assets) until the Plan Administrator is satisfied that such disagreement or conflicting claims have been fully and finally resolved; (B) file a suit in interpleader or in the nature of interpleader in the Bankruptcy Court or any other court of competent jurisdiction and obtain an order requiring all parties involved to litigate in the Bankruptcy Court their respective claims arising out of or in connection with the Plan; or (C) file any other appropriate action, adversary proceeding, motion, or other request for relief in the Bankruptcy Court or any other court of competent jurisdiction.

## ARTICLE XI.
### EFFECTS OF CONFIRMATION

**11.1.    Binding Effect**. On and after the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtor whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

**11.2.    Discharge**. Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of this Plan will not discharge the Debtor; provided, however, upon confirmation of the Plan and

the occurrence of the Effective Date, Creditors may not seek payment or recourse against or otherwise be entitled to any Distribution from the Remaining Assets of the Debtor or the Estate.

**11.3.  Releases and Injunctions**.

(a)  *Releases by Debtor and the Estate*.  The Debtor, in its individual capacity and as debtor-in-possession, for and on behalf of the Estate, releases and discharges, absolutely, unconditionally, irrevocably and forever, and shall be permanently enjoined from any prosecution or attempted prosecution of, any and all Causes of Action arising from the beginning of time through the Effective Date, against (i) counsel for the Debtor, Frost Brown Todd LLC, (ii) counsel for the Committee, Morris, Manning, and Martin, LLP; (iii) the CRO, James R. Burritt, (iv) the Debtor's pre-petition advisors, Mainstream Management, (v) any member of the Committee not individually, but only acting in such capacity as a member of the Committee, and specifically not as a creditor, party in interest or as a defendant of a Cause of Action in the Chapter 11 Case or otherwise, in any way relating to the Debtor, the Chapter 11 Case or the Plan; provided, however, that the foregoing shall not operate as a waiver of or release from any Causes of Action arising out of (x) the rights of the Debtor or the Plan Administrator to enforce the Plan and the contracts, instruments, releases, and other agreements or documents delivered hereunder, and, as to the Entities identified in subclauses (iv) through (v) and their respective Related Parties, (y) acts or omissions to act involving willful misconduct, recklessness or gross negligence, (z) transactions avoidable or amounts recoverable under sections 544, 547, 548 and 550 of the Bankruptcy Code and applicable law, or (aa) or any Cause of Action against any member of the Committee that does not relate to acts taken as a member of the Committee, unless as a result of a breach of those duties or gross negligence or willful misconduct. Notwithstanding anything to the contrary in this Plan, the releases provided to the Entities

identified in subclauses (i) through (v) and their respective Related Parties are complete and absolute.

(b) *Exculpation*. Except with respect to obligations under the Plan, neither (i) Frost Brown Todd LLC, (ii) Morris, Manning, and Martin, LLP; (iii) James R. Buritt, (iv) MainStream Management, (v) any member of the Committee, not individually but only in their capacity as a member of the Committee, (vi) the Plan Administrator, and (vii) their respective Related Parties, solely in their capacity as such, shall have or incur any liability to any Entity whatsoever, including, without limitation, any holder of any Claim or Interest for any act or omission taken in good faith in connection with, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination or confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or property to be distributed pursuant to the Plan, or any contract, instrument, release, or other agreement or document created or entered into, pursuant to or in connection with the Plan, except for willful misconduct, recklessness or gross negligence.

(c) *Injunction*. Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Entities that have held, hold or may hold Claims or Interests in the Debtor or the Estate are, with respect to any such Claims or Interests, permanently enjoined from and after the Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or the Debtor, the Estate, or any of their property, (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtor, the Estate or any of their

property, (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Estate or any of their property, (iv) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the Estate or any of their property, and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law.

(d)     For clarification, and notwithstanding the provisions of the Plan, nothing contained in the Plan shall effectuate a release or relinquishment of any right, claim or Cause of Action that the Debtor or the Estate may have against those Entities listed in Exhibit C to the Disclosure Statement.

**11.4.**   Retention of Causes of Action/Reservation of Rights

(a)     *Causes of Action.*  The Debtor is granted authority and standing, on behalf of the Debtor and its Estate to initiate any Causes of Action, including but not limited to, Avoidance Actions, in the name of and on behalf of the Debtor and its Estate.  The Causes of Action may include, but are not limited to:  (i) any and all Causes of Action pursuant to any applicable section of the Bankruptcy Code, including but not limited to, Avoidance Actions; (ii) any and all Causes of Action pursuant to applicable state and federal law; (iii) objections to Claims; (iv) claims that the Estate is entitled to set off or recoupment claims against parties with claims against the Estate; (v) claims against any and all of the Debtor's current or former shareholders, directors, officers, employees, agents, accountants, attorneys, advisors, partners, associates, affiliates of the Debtor (including but not limited to Gregory Crabtree, Linda Crabtree, Thomas Crabtree, Lisa Holbrook, Wes Holbrook, Michael Crabtree, Rodney Crabtree, Jonathan Holbrook, Courtney Crabtree, Amber Steele, Barbara Crabtree, Brianna Crabtree, GLC

Enterprises, Bargain Buys, James Donnan, Mary Donnan, Tammy Donnan, Todd Donnan, Greg Johnson, Paige Johnson or any insider of the Debtor as defined in section 101(31) of the Bankruptcy Code or any other Entities related to or controlled by the foregoing parties) for conduct, actions, or failures to act prior to the Petition Date, which conduct is actionable under any theory of law or equity, including, but not limited to, fraud, breach of fiduciary duty, breach of contract, mismanagement or malfeasance of any kind, self-dealing, abuse of discretion, professional malpractice, fraud, misrepresentation, violations of state or federal securities laws or similar claims, as well as claims that may be recoverable under any applicable insurance policies maintained by the Debtor and (vi) any other litigation or Causes of Action, whether legal, equitable, or statutory in nature, arising out of, or in connection with, the Debtor's business, assets, or operations, or otherwise affecting the Debtor. In addition to the foregoing potential defendants, some of the Entities who may be the subject of litigation brought by the Plan Administrator, on behalf of the Debtor, are identified in Exhibit C to the Disclosure Statement. The foregoing potential defendants and the Entities listed on Exhibit C to the Disclosure Statement are not exhaustive and if a specific Cause of Action or defendant is not identified thereon, it is because such Cause of Action or defendant is not known to the Debtor or the Plan Administrator at this time. On behalf of the Debtor and its Estate, the Debtor preserves for the Debtor, the rights to any Causes of Action that may be identified on or after the Effective Date. The recoveries, if any, from any litigation brought by the Debtor will depend on many factors, which cannot be predicted at this time. The Plan Administrator may in his sole discretion elect not to pursue any Causes of Action (including but not limited to Avoidance Actions) the pursuit of which the Plan Administrator deems not to be in the best interest of the Estate or the Debtor.

(b)  *Retention of Causes of Action*.  Except as specifically provided herein or in the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights, claims, or Causes of Action (including any Avoidance Actions), including but not limited to, any defenses of the Debtor under the Bankruptcy Code and applicable laws, that the Debtor may have or which the Debtor may choose to assert on behalf of the Estate, in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtor, its officers, directors, or representatives, (ii) the avoidance of any transfer by or obligation of the Estate or the Debtor under chapter 5 of the Bankruptcy Code or applicable state law or the recovery of the value of such transfer, (iii) the turnover of any property of the Estate, or (iv) any other Cause of Action not specifically released pursuant to the Plan.

(c)  *Reservation of Rights*.  Except as specifically provided herein or in the Confirmation Order, nothing contained herein or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action (including but not limited to Avoidance Actions), right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the Petition Date or that arose after the Petition Date under the Bankruptcy Code and applicable law, against or with respect to any Claim left unimpaired by the Plan.  The Debtor or the Plan Administrator, as the case may be, shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action (including but not limited to Avoidance Actions), rights of setoff, or other legal or equitable defenses which the Debtor, the Estate, the Plan Administrator or any of them had immediately prior to the Petition Date fully as if the Chapter

11 Case had not been commenced, and all legal and equitable rights of the Debtor respecting any Claim, Cause of Action (including but not limited to Avoidance Actions and the Construction Claims), right of setoff, or other legal or equitable defense left unimpaired by the Plan may be asserted after the Confirmation Date by the Debtor or the Plan Administrator to the same extent as if the Chapter 11 Case had not been commenced.

(d)     ALL CAUSES OF ACTION AND DEFENSES SHALL SURVIVE CONFIRMATION AND THE COMMENCEMENT OR PROSECUTION OF CAUSES OF ACTION SHALL NOT BE BARRED OR LIMITED BY ANY ESTOPPEL, WHETHER JUDICIAL, EQUITABLE, OR OTHERWISE.  The Plan Administrator's right on behalf of the Debtor to commence and prosecute Causes of Action (including but not limited to Avoidance Actions) shall not be abridged or materially altered in any manner by reason of confirmation of the Plan.  No defendant party to any Cause of Action (including but not limited to an Avoidance Action) shall be entitled to assert any defense based, in whole or in part, upon confirmation of the Plan, and confirmation of the Plan shall not have any res judicata or collateral estoppel effect upon the commencement and prosecution of Causes of Action (including but not limited to Avoidance Actions).  The Confirmation Order will contain findings that the foregoing shall be sufficient for all purposes to satisfy the requirements of the standard set forth in Browning v. Levy, 283 F.3d 761 (6th Cir. 2002).

**11.5.   Preservation of Insurance**.  Nothing in the Plan shall diminish or impair the enforceability of any policies of insurance that may cover Claims against the Debtor or any other Entity.

**ARTICLE XII.**

**MODIFICATION OF THE PLAN**

**12.1.    Modification of the Plan**. Subject to the approval of the Oversight Committee, the Debtor may alter, amend, or modify the Plan under section 1127 of the Bankruptcy Code at any time prior to the Effective Date.    After the Effective Date, the Debtor and the Plan Administrator may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, or to address such matters as may be necessary to carry out the purposes and effects of the Plan. Notwithstanding any reference herein to the forms of documents to be filed with the Bankruptcy Court prior to the Confirmation Hearing, and without limiting the preceding portions of this Article XI, the Debtor may make any non-material changes to such forms prior to the Effective Date.

**12.2.    Revocation of the Plan**.  The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.    If the Debtor revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then the Plan shall be null and void, and nothing contained herein shall:  (i) constitute a waiver or release of any Claims by or against, or Liens in property of, the Debtor; or (ii) serve as an admission of fact or conclusion of law or otherwise prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor.

## ARTICLE XIII.

## CONDITIONS TO EFFECTIVE DATE OF PLAN

**13.1.    Conditions to Effective Date**.  The Plan may not be consummated unless each of the conditions set forth below has been satisfied:

(a)    The Confirmation Order shall have been entered.

(b)    All documents, instruments and agreements, in form and substance satisfactory to the Debtor, provided for under or necessary to implement the Plan, including this

Plan Administrator, shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the Debtor.

**13.2.     Notice of Effective Date**.  Within seven (7) Business Days of the Effective Date the Plan Administrator shall file a notice of occurrence of the Effective Date with the Bankruptcy Court.

**ARTICLE XIV.**

**ADMINISTRATIVE PROVISIONS**

**14.1.     Retention of Jurisdiction**.     Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor and the Plan as is legally permissible, including but not limited to:

(a)     Determination of the allowability of Claims against, or the administrative expenses of, the Debtor, and the validity, extent, priority, and nonavailability of consensual and nonconsensual liens and other encumbrances;

(b)     Determination of any of the Debtor's tax liability pursuant to section 505 of the Bankruptcy Code;

(c)     Approval, pursuant to section 365 of the Bankruptcy Code, of all matters related to the assumption, assumption and assignment, or rejection, of any executory contract or unexpired lease of the Debtor;

(d)     Resolution of controversies and disputes regarding the enforcement or interpretation of the Plan, the Confirmation Order, or the Bankruptcy Court's orders that survive confirmation of the Plan pursuant to the Plan or other applicable law;

(e)     Implementation of the provisions of the Plan, and entry of orders in aid of confirmation and consummation of the Plan and enforcing settlements or orders entered during the Chapter 11 Case or as part of the Plan;

(f)     Modification of the Plan pursuant to section 1127 of the Bankruptcy Code;

(g)     To hear and determine all matters related to the Plan, including but not limited to:  (i) the formation, operation and winding up of the Debtor; (ii) the appointment and/or removal of the Plan Administrator; and (iii) disputes concerning the administration of the Debtor and payment of costs and expenses of the Debtor;

(h)     Entry of a Final Order closing the Chapter 11 Case;

(i)     Resolution of disputes concerning Disputed Claims, Claims for disputed Distributions and recharacterization or equitable subordination of Claims;

(j)     Resolution of any disputes concerning whether an Entity had sufficient notice of, among other things: (i) the Chapter 11 Case; (ii) the applicable Claims' Bar Date; or (iii) the hearing on confirmation of the Plan for the purpose of determining whether a Claim is discharged hereunder;

(k)     Issuance of injunctions, grant and implementation of other orders, or taking such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(l)     Resolution of controversies and disputes regarding settlement agreements, orders, injunctions, judgments, and other matters entered or approved by the Bankruptcy Court in connection with any adversary proceeding, discovery, or contested matter in the Chapter 11 Case;

(m)     Correction of any defect, cure of any omission or reconcile any inconsistency in the Plan, the Confirmation Order or any other documents relating to the Plan, as may be necessary to carry out the purposes or intent of the Plan;

(n)     Adjudication of any pending adversary proceeding, or other controversy or dispute, in the Chapter 11 Case for the Debtor, which arose pre-confirmation and over which the Bankruptcy Court had jurisdiction prior to confirmation of the Plan;

(o)     Adjudication of any Causes of Action (including but not limited to Avoidance Actions);

(p)     Entry and implementation of such orders as may become necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated; and

(q)     Determination of any other matters that may arise in connection with or related to the Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan.

**14.2.  Successors and Assigns**.  The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor, or assign of such Entity.

**14.3.  Severability**.  Should any provision in the Plan be determined to be unenforceable following the Confirmation Date, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan; provided that the Plan, as modified, meets the requirements of the Bankruptcy Code, including, without limitation, section 1127 of the Bankruptcy Code.

**14.4. Governing Law**. Except to the extent the Bankruptcy Code, Bankruptcy Rules, other federal laws apply, or as otherwise expressly provided in the Plan, the rights and obligations arising under the Plan shall be governed by the laws of the State of Ohio without giving effect to principles of conflicts of law.

**14.5. The Committee**. The Committee shall be reconstituted as of the Effective Date as the Oversight Committee without any further action by the Committee, this Court or the United States Trustee, other than identification of the members of the Oversight Committee. The Oversight Committee shall have all of the rights and duties of the Committee prior to the Effective Date and as otherwise set forth in the Bankruptcy Code and herein. The Oversight Committee shall automatically dissolve without any further action by the Oversight Committee on the earlier of (i) the date of completion of all of the functions of the Oversight Committee and the Plan Administrator and the entry of an order closing the Chapter 11 Case; (ii) the date of conversion of the Chapter 11 Case to a case under chapter 7; or (iii) thirty (30) days after the final distribution is made pursuant to the Plan. All of the documents, communications, work-product held by or on behalf of the Committee shall automatically transfer to the Oversight Committee as of the Effective Date. Similarly, all of the rights and privileges of the Committee, including, without limitation, any attorney-client privilege work product doctrine or privilege, and all other privileges and immunities attaching to any and all documents and communications (whether written or oral) of the Committee shall automatically transfer to the Oversight Committee and its representatives as of the Effective Date. The Oversight Committee may retain professionals to assist them, including current counsel for the Committee, in furtherance of their rights and duties under the Plan. Counsel for the Oversight Committee shall be compensated as a Plan Expense pursuant to the terms of the Plan. Unless the Debtor has the prior written

approval of the Oversight Committee, the Debtor may not, without entry of an Order from the Court: (i) alter, amend or modify this Plan; or (ii) settle or compromise Causes of Action, including but not limited to, Avoidance Actions, and objections to the allowance of any Claim.

**14.6. Application of Section 1146 of the Bankruptcy Code**. The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan shall be entitled to the tax treatment provided by section 1146 of the Bankruptcy Code and each recording or other agent of any governmental office shall record any such documents of issuance, transfer, or exchange without any further direction or order from the Bankruptcy Court.

**14.7. Cramdown**. In the event a Class votes against this Plan, and this Plan is not withdrawn as provided above, the Debtor reserves the right to affect a "cram down" of this Plan pursuant to section 1129(b) of the Bankruptcy Code. To the extent any Class is deemed to reject this Plan by virtue of the treatment provided to such Class, this Plan shall be "crammed down" on the claimants within such Class pursuant to section 1129(b) of the Bankruptcy Code.

**14.8. Continuation of Injunctions and Stays**. Unless otherwise provided, all injunctions or stays ordered in the Chapter 11 Case, pursuant to section 105 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date shall remain in full force and effect unless or until subsequently modified or terminated.

**14.9. Substantial Consummation of Plan**. Upon Substantial Consummation of the Plan, the Bankruptcy Court may enter a final order pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022 closing the Chapter 11 Case and making provisions by way of injunction or otherwise as may be equitable. The Debtor may, at any time after Substantial Consummation, move the Bankruptcy Court for a final order pursuant to section 350 of the Bankruptcy Code.

**14.10. Post-Confirmation Reports and Fees**. Pursuant to the terms of Local Bankruptcy Rule 3020-2, six (6) months after entry of the Confirmation Order, and every six (6) months thereafter, or within such other time as the Bankruptcy Court may direct, the Plan Administrator or such other party as the Bankruptcy Court may designate, shall file and serve, pursuant to Local Bankruptcy Rules 9013-3 and 3020-2, a report setting forth the actions taken and progress made toward Substantial Consummation of the Plan until the Chapter 11 Case is closed in accordance with the provisions of the Plan. Thereafter, any party may request information regarding disbursements under the Plan from the Plan Administrator in writing. The Plan Administrator, on behalf of the Debtor, and not in its individual capacity, shall be responsible for timely payment of post-confirmation quarterly fees incurred pursuant to 28 USC §1930(a)(6). Moreover, after Confirmation, the Plan Administrator shall file with the Bankruptcy Court and the United States Trustee a quarterly post-confirmation report in the format specified by the United States Trustee for each quarter that the Chapter 11 Case remains open.

**14.11. Settlement of Causes of Action/Claims.** Subject to the provisions of section 14.5, the Plan Administrator shall be authorized to settle or compromise Causes of Action, including but not limited to Avoidance Action, and objections to the allowance of Claims, pursuant to the Settlement Procedures Order, which procedures shall survive the Effective Date.

**14.12. Securities and Exchange Commission.**

Notwithstanding any provision herein to the contrary, no provision of the Plan, the Disclosure Statement or the Confirmation Order shall (i) discharge or release the Debtor or any other person or entity from any right, any claim (which as to any claim against property of the Debtor has been timely and properly asserted in the Chapter 11 Case), any cause of action or any power or any interest held or assertable by the United States Securities and Exchange

Commission or (ii) enjoin, impair or delay the United States Securities and Exchange Commission from commencing or continuing any claims, causes of action, proceedings or investigations against the Debtor or any other person or entity in any non-bankruptcy forum, provided however, that any enforcement of a claim (as defined in the Bankruptcy Code) or monetary judgment, if any, against the Estate and/or property of the Debtor's Estate, will be brought strictly in accordance with the Bankruptcy Code, the Bankruptcy Rules and orders of the Bankruptcy Court in the Chapter 11 Case**,** to which the United States Securities and Exchange Commission is otherwise bound, subject to all applicable defenses.


[SIGNATURE PAGES IMMEDIATELY FOLLOW]

Respectfully submitted,

**GLC LIMITED**

By: /s/ James R. Burritt

James R. Burritt
Chief Restructuring Officer

# EXHIBIT B

# DISCLOSURE STATEMENT ORDER

**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**

Jeffery P. Hopkins
United States Bankruptcy Judge

**Dated: September 06, 2011**

---

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| GLC LIMITED, | JUDGE HOPKINS |
| DEBTOR. | CASE NO. 11-11090 |
| | RELATED TO DOCKET NO.  271 |

---

**ORDER: (A) APPROVING THE ADEQUACY OF MODIFIED FIRST AMENDED DISCLOSURE STATEMENT; (B) FIXING A RECORD DATE; (C) APPROVING SOLICITATION PACKAGES AND PROCEDURES FOR THE DISTRIBUTION THEREOF; (D) APPROVING FORM OF BALLOTS; (E) APPROVING NOTICE TO NON-VOTING CLASSES; (F) ESTABLISHING VOTING DEADLINES AND PROCEDURES FOR TABULATION OF VOTES; (G) APPROVING PROCEDURES FOR TEMPORARY ALLOWANCE OF CLAIMS; AND (H) SCHEDULING HEARING ON CONFIRMATION OF THE MODIFIED FIRST AMENDED PLAN OF LIQUIDATION, APPROVING FORM OF NOTICE THEREOF AND ESTABLISHING DEADLINE FOR FILING OBJECTIONS TO CONFIRMATION OF THE MODIFIED FIRST AMENDED PLAN OF LIQUIDATION**

---

      **THIS MATTER IS BEFORE THE COURT** in consideration of the request on of GLC

Limited (the "Debtor"), as debtor and debtor in possession in the above-captioned chapter 11

1

case, for entry of an order, *inter alia*: (a) approving the adequacy of the Proposed Disclosure Statement; (b) fixing a record date; (c) approving solicitation packages and procedures for the distribution thereof; (d) approving the form of ballots; (e) approving notice to non-voting classes; (f) establishing voting deadlines and procedures for tabulation of votes; (g) approving procedures for the temporary allowance of claims; and (h) scheduling a hearing on confirmation of the Plan, approving the form of notice thereof and establishing the deadline for filing objections to confirmation of the Plan; and the Court having jurisdiction to consider these issues in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of relief requested by the Debtor being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the relief requested by the Debor being in the best interests of the Debtor, its estate, and all parties in interest; and the Court having reviewed the Proposed Disclosure Statement (and any amendments thereto); and upon the Proposed Disclosure Statement, as may be amended and/or modified, and the records of the Disclosure Statement Hearing; and the Court having found and determined that the legal and factual bases set forth at the Disclosure Statement Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY FOUND THAT:**

A.       Good and sufficient notice of the Disclosure Statement Hearing was provided and no other or further notice need be provided.

B.       The Proposed Disclosure Statement for the Plan contains adequate information within the meaning of section 1125 of the Bankruptcy Code.

2

C.      The Ballot, substantially in the forms annexed hereto as **Exhibit A** is sufficiently consistent with Official Form No. 14 and adequately address the particular needs of this chapter 11 case and are appropriate for each class of claims and interests entitled under the Plan to vote to accept or reject the Plan.

D.      Ballots need not be provided to: (i) the holders of unimpaired claims in Class 1 and because the Plan provides that such class is unimpaired, and therefore, deemed to accept the Plan; or (ii) the holders of impaired claims and  interests in Class 3 and Class 4 because the Plan provides that such class will receive no distribution under the Plan, and therefore, are deemed to reject the Plan.  The Notice of Non-Voting Status – Impaired Class and the Notice of Non-Voting Status – Unimpaired Classes, substantially in the forms attached hereto as **Exhibits B-1 and B-2**, are appropriate and sufficiently consistent with the requirements of Bankruptcy Rule 3017(d).

E.      The period, set forth below, during which the Debtor may solicit acceptances to the Plan, is a reasonable period of time for entities entitled to vote on the Plan to make an informed decision whether to accept or reject the Plan.

F.      The procedures for the solicitation and tabulation of votes to accept or reject the Plan set forth below provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code.

G.      The Confirmation Hearing Notice, substantially in the form annexed hereto as **Exhibit C**, and the procedures set forth below regarding notice to all parties in interest of the time, date, and place of the Confirmation Hearing and the distribution and contents of the Solicitation Packages comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice to all interested parties.

3

H.      The disclosure of potential Causes of Action, including any Avoidance Actions,

(as such terms are defined in the Disclosure Statement and in the Plan), including, but not limited

to, the retention and reservation of rights to prosecute any or all Causes of Action as set forth in

the Disclosure Statement and in the Plan, shall be sufficient for all purposes to satisfy the

requirements of the standard set forth in Browning v. Levy, 283 F.3d 761 (6th Cir. 2002), for

purposes of preserving the Debtor's and the Estate's rights to prosecute any such Causes of

Action or assert all such Claims (as defined in the Disclosure Statement and in the Plan), Causes

of Action, rights of setoff, or other legal or equitable defenses following confirmation of the

Plan.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.      All Objections to approval of the proposed Disclosure Statement that have not

been withdrawn, waived, or settled as announced to the Court at the Disclosure Statement

Hearing are hereby OVERRULED in all respects on the merits or the interests of such

Objections have been otherwise satisfied or adequately provided for.

2.      The Proposed Disclosure Statement (as may have been amended and/or modified)

is APPROVED (hereinafter, the "Disclosure Statement").

3.      The Ballot, the Notice of Non-Voting Status – Impaired Class, and the Notice of

Non-Voting Status – Unimpaired Classes are APPROVED.

4.      The Confirmation Hearing Notice is APPROVED.

**RECORD DATE**

5.      The date of entry of this Order shall be the Voting Record Date for purposes of

determining which holders of claims and interests are entitled to (a) receive Solicitation

Packages, including notice of non-voting status, and (b) vote on the Plan.  The Voting Record

4

Date is for voting purposes only and will have no preclusive effect with regard to which claimants are entitled to receive distributions under the Plan.

6.    With respect to any transferred claim, the transferee will be entitled to receive Solicitation Packages and cast a Ballot on account of the transferred claim only if: (a) all actions necessary to effect the transfer of the claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date; or (b) the transferee files, no later than the Voting Record Date, (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer.  Each transferee shall be treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code and the other procedures set forth in the Motion.

### SOLICITATION PACKAGES AND PROCEDURES FOR THE DISTRIBUTION

7.    By no later than September 21, 2011 (the "Solicitation Date"), the Debtor shall deposit or cause to be deposited in the United States mail, postage prepaid, a Solicitation Package to be delivered to:

    i.   All parties listed in the Schedules as holding liquidated, noncontingent, and undisputed claims in an amount greater than zero;

    ii.   All parties having timely filed proofs of claim in amounts greater than zero in the Debtor's chapter 11 case;[1]

    iii.  The registered and beneficial holders of the Debtor's debt and equity securities as of the Voting Record Date;

    iv.  Any other known holders of claims against or equity interests of the Debtor as of the Voting Record Date;

    v.   The United States Trustee for the Southern District of Ohio;

    vi.  Counsel for the Committee;

---

[1] Any creditor who has filed duplicate claims which are classified under the Plan in the same class shall be provided with only one Solicitation Package and one Ballot for voting a single claim within such class.

vii. The Securities and Exchange Commission;

viii.    Other parties requesting notice in this chapter 11 case; and,

ix.  Any party in interest who requests a Solicitation Package in writing.

8.    The Solicitation Package that will be sent to holders of claims in Class 2 shall contain a copy of (i) this Order, (ii) the Confirmation Hearing Notice, (iii) the Disclosure Statement (together with a copy of the Plan attached as an exhibit thereto), and, (iv) the form of Ballot together with a return envelope.

9.    The Solicitation Package that will be sent to the United States Trustee for the Southern District of Ohio, counsel for the Committee, the Securities and Exchange Commission, and any party in interest who requests a Solicitation Package in writing shall contain a copy of (i) this Order, (ii) the Confirmation Hearing Notice, and (iii) the Disclosure Statement (together with a copy of the Plan attached as an exhibit thereto).

10.    The Solicitation Package that will be sent to holders of Class 1 shall contain a copy of (i) this Order, (ii) the Confirmation Hearing Notice, and (iii) a Notice of Non-Voting Status – Unimpaired Classes.

11.    The Solicitation Package that will be sent to holders of Class 3 and Class 4 shall contain a copy of (i) this Order, (ii) the Confirmation Hearing Notice, and (iii) a Notice of Non-Voting Status – Impaired Class.

12.    The Debtor is not required to send copies of the Plan or the Disclosure Statement to any holder of a claim against, or equity interest in, the Debtor within a Class under the Plan that is deemed to accept or deemed to reject the Plan, unless such party makes a specific request in writing for the same.

13.    The Debtor is not required to distribute copies of the Plan or the Disclosure Statement to any holder of an unimpaired claim or a holder of a scheduled claim listed as

6

contingent, unliquidated, or disputed, and for which such holder did not file a timely proof of claim and not listing such claim as contingent, unliquidated, or disputed, unless such party files a Motion for Temporary Allowance on or before the Motion for Temporary Allowance Deadline.

14.     Any creditor who has filed duplicate proofs of claim against the Debtor that are classified in the same class under the Plan shall be provided with only one Solicitation Package and one Ballot for voting a single claim within such class.

15.     The Debtor may distribute the Solicitation Package on parties for which the Debtor received notice of a forwarding address at such forwarding address (versus the address on the creditors matrix).  The Debtor is not required to distribute the Solicitation Packages to parties for which the notice of the Disclosure Statement Hearing was returned with no forwarding address.

16.     In disseminating the Solicitation Packages, the Debtor may include this Order, the Disclosure Statement and Plan in the form of a CD-ROM in an Adobe Acrobat (PDF) standard format.  Parties will be provided a paper copy of this Order, the Disclosure Statement and Plan upon written request to the Solicitation and Voting Representative.

## Voting Deadline and Procedures for Tabulation of Votes

17.     All persons and entities entitled to vote on the Plan shall deliver their Ballots by mail, hand delivery, or overnight courier such as to be **actually** **received** **no later than 4:00 p.m. (prevailing Eastern Time) on October 14, 2011** (the "Voting Deadline") to Solicitation and Voting Representative as follows:

GLC Limited
c/o Ronald E. Gold
FROST BROWN TODD LLC
301 E. Fourth Street, Suite 3300
Cincinnati, OH 45202

7

18.     Any Ballot received after the Voting Deadline shall not be counted other than as provided for herein.  The Solicitation and Voting Representative shall not be obligated to count Ballots submitted by telecopier, facsimile, e-mail or other electronic communications.

19.     Each holder of a claim within a class of claims entitled to vote to accept or reject the Plan shall be entitled to vote the amount of such claim as set forth in the Schedules unless such holder has timely filed a proof of claim, in which case such holder would be entitled to vote the amount of such claim as set forth in such proof of claim.  The foregoing general procedure will be subject to the following rules (the "Tabulation Rules") to be used by the Plan Proponents:

i.      Subject to any other applicable Tabulation Rule, a claim will be deemed temporarily allowed for purposes of voting on the Plan in an amount equal to either: (i) if no proof of claim has been timely filed on account of such claim, the noncontingent, liquidated and undisputed amount of such claim as set forth in the Schedules; or (ii) if a proof of claim has been timely filed on account of such claim, the noncontingent, liquidated and undisputed amount set forth therein.

ii.     If a claim is deemed allowed under the Plan, such claim will be temporarily allowed for voting only purposes in the amount set forth therein.

iii.    If a claim for which a proof of claim has been timely filed and has not been disallowed is listed, marked or otherwise referenced on its face as contingent, unliquidated or disputed, either in whole or in part, the noncontingent, liquidated and undisputed portion, if any, of such claim will be deemed temporarily allowed for voting purposes in the amount asserted, subject to any other applicable Tabulation Rule, and the remaining contingent, unliquidated or disputed portion of such claim will be allowed for voting purposes in the amount of $1.00.

iv.     If a claim has been allowed pursuant to a stipulation approved by the Court, such claim will be deemed allowed for voting purposes in the amount set forth in such stipulation.

v.      If a claim has been estimated or otherwise allowed for voting purposes by order of the Court, such claim will be temporarily allowed for voting purposes in the amount so estimated or allowed by the Court.

vi.     Claims that are either (i) listed in the Schedules as contingent, unliquidated or disputed, or in the amount of $0, or (ii) not listed in the Schedules, and on account of which no proof of claim was timely filed and no stipulation allowing the claim

8

has been approved by the Court, will be disallowed for purposes of voting on the Plan.

vii.    The holder of a claim that is the subject of an objection to such claim that is pending as of the Voting Deadline is not entitled to vote on the Plan unless this Court enters an order allowing such claim (whether by disposition of the objection or temporarily for voting purposes only) by the Voting Deadline. The holder of a claim that is the subject of an objection that is pending as of the Voting Deadline in which the Debtor or other party in interest objects to the extent such claim: (a) exceeds a certain dollar amount (the "Permitted Claim Amount"); and/or (b) improperly asserts classification as a secured and/or priority claim, will be allowed to vote on the Plan in the amount and classification of such claim for voting and for purposes of satisfying the aggregate amount provisions of section 1126(c) will be limited to the Permitted Claim Amount in the claim classification specified in such objection, unless this Court, on or before the Voting Deadline, enters an order allowing such claim (whether by disposition of the objection or temporarily for voting purposes only) in an amount which exceeds the Permitted Claim Amount and/or in a classification other than that specified in such objection.

viii.   If a holder of a claim identifies a claim amount in its Ballot that is less than the amount otherwise calculated in accordance with the Tabulation Rules, the claim will be temporarily allowed for voting purposes in the lesser amount identified on such Ballot.

ix.     Creditors will not be entitled to vote claims to the extent such claims duplicate or have been superseded by other claims filed by or on behalf of such creditors. The Debtor will determine whether a claim is duplicative or superseded in their discretion.

x.      A party shall not be entitled to a vote on the Plan based upon a guarantee or other contingent theory of payment. There shall be allowed only one vote per claim regardless of how many parties may be subject to legal liability.

xi.     If a claim relates to rejection damages under an executory contract or unexpired lease that has not been rejected as of the Voting Record Deadline, to the extent such claim is for rejection damages, such claim shall be temporarily disallowed by the Court for voting purposes and, to the extent such claim is solely for rejection damages, such Ballot shall not be counted as having voted for or against the Plan.

20.     The Plan Proponents shall use the following procedures (the "Tabulation Procedures") for tabulating the Ballots:

i.      Any Ballot that is illegible or contains insufficient information to permit the identification of the claimant shall not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected.

ii.    Any Ballot cast by a person or entity that does not hold a claim in a class that is entitled to vote to accept or reject the Plan shall not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected.

iii.   Any unsigned Ballot shall not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected.

iv.    Unless the Debtor has agreed in writing to an extension of the Voting Deadline with respect to a particular creditor or interest holder, any Ballot received after the Voting Deadline shall not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected.

v.     Any Ballot sent to a party other than the Solicitation and Voting Representative shall not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected.

vi.    Creditors and interest holders must vote all of their claims or interests within a particular class under the Plan either to accept or reject the Plan and may not split their vote(s).  Any Ballot that partially rejects and partially accepts the Plan shall be counted as an acceptance of the Plan.

vii.   If a creditor casts simultaneous duplicative Ballots which are voted inconsistently, such Ballots shall count as one vote accepting the Plan.

viii.  If multiple Ballots are received from or on behalf of an individual holder of a claim with respect to the same claim prior to the Voting Deadline, the last Ballot timely received will be deemed to reflect the intent and to supersede and revoke any prior Ballot with respect to such claim.

ix.    The method of delivery of the Ballots to be sent to the Solicitation and Voting Representative is at the election and risk of each holder of a claim and (if applicable) nominee, and will be deemed made only when the original executed Ballot is actually received by the Solicitation and Voting Representative.

x.     Delivery of a Ballot by facsimile, e-mail or any other electronic means will not be accepted.

xi.    If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, or other person acting in a fiduciary or representative capacity, such person shall be required to indicate such capacity when signing and must submit proper evidence satisfactory to the Debtor to act on behalf of the creditor for whom such party is acting.

xii.   The Debtor, in its sole discretion, subject to any contrary order of this Court, may waive any defect in any Ballot at any time, whether before or after the Voting Deadline, and without notice.

xiii.   Any holder of impaired claims who has delivered a valid Ballot voting on the Plan may withdraw such vote in accordance with the Bankruptcy Rules.

xiv.    Subject to any contrary order of this Court, the Debtor reserves the right to reject any and all Ballots not proper in form, the acceptance of which would, in the opinion of the Debtor or its counsel not be in accordance with the provisions of the Bankruptcy Code or this Order.

xv.     If no votes to accept or reject the Plan are received with respect to a particular class, such class shall be deemed to have voted to accept the Plan.

xvi.    Unless waived by the Debtor or as ordered by this Court, any defects or irregularities in connection with the deliveries of the Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.

xvii.   With respect to a Ballot received prior to the Voting Deadline, neither the Debtor, the Solicitation and Voting Representative nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur liabilities for failure to provide such notification.

xviii.  Any Ballot that is otherwise properly completed and returned but (a) does not indicate either an acceptance or rejection of the Plan or (b) indicates both an acceptance and rejection of the Plan, will be counted as having been cast as an acceptance of the Plan.

## PROCEDURES FOR TEMPORARY ALLOWANCE OF CLAIMS

21.     Any party that seeks to challenge the temporary allowance of its claim for voting purposes based on the Tabulation Rules, the Tabulation Procedures or otherwise, shall be required to file a motion, pursuant to Bankruptcy Rule 3018(a) (a "Motion for Temporary Allowance"). Motions for Temporary Allowance must be served on the Debtors such as to be **actually received no later than 4:00 p.m. (prevailing Eastern Time) on September 30, 2011** (the "Motion for Temporary Allowance Deadline"). The Debtor, or the Committee, shall (a) have seven (7) days after the Motion for Temporary Allowance Deadline to file and serve any responses to Motions for Temporary Allowance; and (b) coordinate with the Clerk of the Court

11

to set a time to adjudicate and resolve all pending Motions for Temporary Allowance and responses thereto.

22.      Any Ballot submitted by a creditor that files a Motion for Temporary Allowance will be counted solely in accordance with the Tabulation Rules and Tabulation Procedures and other applicable provisions of this Order unless and until the underlying claim is temporarily allowed by the Court for voting purposes in a different amount, after notice and a hearing.

### CONFIRMATION HEARING AND DEADLINE FOR FILING OBJECTIONS
### TO CONFIRMATION OF THE PLAN

23.      The Confirmation Hearing is scheduled for **October 27, 2011 at 10:00 a.m. (prevailing Eastern Time)** in United States Bankruptcy Court for the Southern District of Ohio, before the Honorable Jeffrey P. Hopkins in Courtroom 2 of the Bankruptcy Court, U.S. Bankruptcy Court, Southern District of Ohio, 221 E. Fourth Street, Atrium Two Suite 800, Cincinnati, Ohio 45202. The Confirmation Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date(s) at said hearing and at any adjourned hearing(s).

24.      Objections or proposed modifications, if any, to the Plan must be in writing, and: (a) state the name and address of the objecting party and the nature of the claim or interest of such party; (b) state with particularity the legal and factual grounds of any objection or proposed modification; (c) provide, where applicable, the specific text that the objecting party believes to be appropriate to insert into the Plan; and (d) be filed, together with proof of service, with the Court and served upon: (i) counsel for the Debtor, Frost Brown Todd LLC, 301 E . Fourth Street, 3300 Great American Tower, Cincinnati, Ohio 45202, Attn: Ronald E. Gold; (ii) counsel for the Committee, Morris, Manning, and Martin, LLP, 1600 Atlanta Financial Center, 3343 Peachtree Road, NE, Atlanta, GA  30326, Attn: Frank DeBorde; and (iii) the Office of the United States

12

Trustee, Attn Monica Kindt, 36 East Seventh Street, Suite 2030, Cincinnati, Ohio 45202; such as

to be **actually** **received** no later than **4:00 p.m. (prevailing Eastern Time) on October 21,**

**2011** (the "Confirmation Objection Deadline").  Any confirmation objection not filed and served

as set forth herein shall be deemed waived and may not be considered by the Court.  Upon the

request of a party in interest, the Debtor, in its discretion, may extend the Objection Deadline

with respect to that particular party in interest.

25.     Inclusion of the Confirmation Hearing Notice in the Solicitation Package, and the

service of the Solicitation Packages as provided for herein, provides sufficient notice as required

by the Bankruptcy Code of approval of the Disclosure Statement, the Record Date, the Voting

Deadline, the Confirmation Objection Deadline, and the time, date, and place of the

Confirmation Hearing.

26.     The Debtor is authorized to take or refrain from taking any action necessary or

appropriate to implement the terms of and the relief granted in this Order without seeking further

order of the Court.

27.     The Plan Proponents are authorized to make nonsubstantive changes to the

Disclosure Statement, Plan, Ballots, Confirmation Hearing Notice, Notices of Non-Voting

Status, and related documents without further order of the Court, including changes to correct

typographical and grammatical errors and to make conforming changes among the foregoing

documents.

28.     The determinations, findings, judgments, decrees and orders set forth or

incorporated herein constitute the Court's findings of fact and conclusions of law pursuant to

Bankruptcy Rules 7052 and 9014. Each finding of fact set forth or incorporated herein, to the

extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.

13

Each conclusion of law set forth or incorporated herein to the extent it is or may be deemed a

finding of fact, shall also constitute a finding of fact.

###

Copies to: Default List (Also To Be Served By Counsel for the Debtor in the Manner Indicated Herein)

CINLibrary 0121049.0583831   2370663v3

**EXHIBIT A**
**TO DISCLOSURE STATEMENT ORDER**

**BALLOT**

# THE VOTING DEADLINE BY WHICH YOUR BALLOT MUST BE RECEIVED BY COUNSEL FOR THE DEBTOR IS:  OCTOBER 14, 2011, 4:00 P.M.

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| IN RE: | * |
| GLC LIMITED, | * **CHAPTER 11** |
| | * **JUDGE HOPKINS** |
| DEBTOR. | * **CASE NO. 11-11090** |

**BALLOT FOR HOLDERS OF GENERAL UNSECURED CLAIMS (CLASS 2)**

«Name»
«Address1»
«Address2»
«Address3»
«City_State__ZIP»

Claim Amount:  $«Ballot_Amount» (for voting purposes only)

---

**HOW TO VOTE**

1. REVIEW INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.
2. REVIEW AND COMPLETE ITEM 1 AND ITEM 2
3. **SIGN THE BALLOT.**
4. RETURN THE BALLOT IN THE PRE-PAID, PRE-ADDRESSED ENVELOPE.  **ANY BALLOT RETURNED TO AN ADDRESS OTHER THAN THE ONE ON THE ENVELOPE PROVIDED MAY NOT BE COUNTED. YOU MAY *NOT* RETURN YOUR BALLOT BY FACSIMILE, E-MAIL OR OTHER ELECTRONIC TRANSMISSION.**

---

**Item 1. Class Vote.** The undersigned certifies that the undersigned, a holder of a General Unsecured Claim (Class 2) of the Plan votes to:

☐ **ACCEPT** THE PLAN.                    ☐ **REJECT** THE PLAN.

(check one box only— if you do not indicate either an acceptance or rejection of the Plan, or indicate both an acceptance and a rejection of the Plan, your ballot will be counted as having been cast as an acceptance of the Plan)

**Item 2. Acknowledgments.** By signing this ballot, the undersigned acknowledges receipt of the Disclosure Statement (as defined on the reverse of this ballot) and the other applicable solicitation materials and certifies that the undersigned has reviewed the instructions listed on the reverse of this ballot, and is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant. The undersigned understands that, if this ballot is validly executed but does not indicate either an acceptance or rejection of the Plan, or indicates both an acceptance and rejection of the Plan, this ballot will be counted as having been cast as an acceptance of the Plan.  (If the ballot is not signed on the appropriate lines below, this ballot will not be counted).  **If you vote to accept the Plan, you are specifically consenting to certain releases contained in the Plan, including releases of certain non-debtor entities, as provided in the Plan, upon the occurrence of the Effective Date.**

Name:_____

Signature:_____

Additional Signature: (in the case of a joint tenancy of a claim)_____

Social Security or Federal Tax I.D. No.:_____

If by Authorized Agent, Name and Title:_____

Name of Institution:_____

Street Address:_____

City, State, Zip Code:_____

Telephone Number:_____

Date Completed:_____

**INSTRUCTIONS FOR COMPLETING BALLOT**

GLC Limited (the "Debtor"), as debtor and debtor in possession in the above-captioned chapter 11 case filed its Modified First Amended Plan of Liquidation (as the same may be amended or modified, the "Plan") dated September 1, 2011.  The Bankruptcy Court has approved the *Modified First Amended Disclosure Statement of Debtor Pursuant to Section 1125 of the Bankruptcy Code with Regard to Debtor's Modified First Amended Chapter 11 Plan of Liquidation* (as the same may be amended or modified, the "Disclosure Statement").  The Disclosure Statement provides information to assist you in deciding how to vote your ballot.  If you do not have a Disclosure Statement, you may obtain a copy by contacting Ronald E. Gold, (the "Solicitation and Voting Representative") at 513-651-6800.  Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.  Capitalized terms used in this ballot or these instructions that are not otherwise defined have the meanings ascribed thereto in the Plan.

**You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  Your claim has been placed in Class 2 under the Plan.  If you vote to accept the Plan, you are specifically consenting to certain releases contained in the Plan, including releases of certain non-debtor entities, as provided in the Plan, upon the occurrence of the Effective Date.**

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if 1) it is accepted by the holders of at least two-thirds in amount and more than one-half in number of the claims in each impaired class containing claims who vote on the Plan, 2) it is accepted by the holders of at least two-thirds in amount of the interests in each impaired class containing interests who vote on the Plan and 3) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the class or classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

Please read and follow these instructions carefully. In order for your vote to count, your ballot must be received by the Solicitation and Voting Representative at the address set forth below on or before **October 14, 2011 at 4:00 p.m. (prevailing Eastern Time)** (the "Voting Deadline"), unless such deadline is extended by the Bankruptcy Court.

GLC LIMITED
c/o Frost Brown Todd LLC
Attn: Ronald E. Gold, Esq.
301 E.4 5th Street, Suite 3300
Cincinnati, OH 45202

Your Claim has been temporarily allowed solely for purposes of voting to accept or reject the Plan in accordance with certain tabulation rules approved by the Bankruptcy Court.  The temporary allowance of your Claim for voting purposes does not constitute an allowance of your Claim for purposes of distribution under the Plan and is without prejudice to the rights of the Debtor or other party in interest in any other context (*e.g.,* the right of the Debtor or other party in interest to contest the amount, validity or classification of any Claim for purposes of allowance and distribution under the Plan).  If you wish to challenge the amount of your Claim as set forth on the front of this ballot, you must file a motion, pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure, for an order temporarily allowing your Claim in a different amount or classification by **September 30, 2011 at 4:00 p.m. (prevailing Eastern Time)**.  Unless the Bankruptcy Court orders otherwise, your Claim will not be counted as a vote in excess of the amount set forth on the front side.

This ballot is not a letter of transmittal and may not be used for any purpose other than to vote on the Plan.

This ballot does not constitute and will not be deemed a proof of Claim or equity interest or an assertion of a Claim or equity interest.

If you believe that you received the wrong form of ballot, or if you need additional ballots, please contact the Solicitation and Voting Representative immediately.

**TO COMPLETE THE BALLOT PROPERLY, FOLLOW ALL OF THE PROCEDURES DESCRIBED BELOW:**

(a) Cast ONE vote to accept or reject the Plan by checking the proper box in Item 1;

(b) You must vote all of your Claims or interests within the same class under the Plan either to accept or reject the Plan and may not split your vote. Any Ballot that partially rejects and partially accepts the Plan shall be counted as an acceptance of the Plan;

(c) Sign and date the ballot in Item 2;

(d) If you are completing the ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing, and submit satisfactory evidence of your authority to so act (*e.g.,* a power of attorney or a certified copy of Board resolutions authorizing you to so act);

(e) If the claimant name and address information appearing on the ballot label indicates the joint tenancy of a claim or security, both parties to that claim or security must sign the ballot in order for it to be counted;

(f) Provide your name and mailing address if different from the pre-printed address that appears on the ballot or if no pre-printed address appears on the ballot;

(g) If you cast more than one ballot voting the same Claim prior to the Voting Deadline, the latest dated ballot received by the Solicitation and Voting Representative before the Voting Deadline will supersede all prior ballots;

(h) Return each ballot to the Solicitation and Voting Representative on or before the Voting Deadline using the pre-paid, pre-addressed return envelope enclosed with such ballot by U.S. mail, overnight courier or hand delivery. **Any Ballot returned to an address other than the one on the envelope provided may not be counted. You may *not* return your Ballot by facsimile, e-mail or other electronic transmission.**

**ONLY <u>ORIGINAL</u> BALLOTS WITH <u>ORIGINAL</u> SIGNATURES WILL BE COUNTED. ANY BALLOT THAT IS NOT SIGNED WILL NOT BE COUNTED. ANY BALLOT THAT IS VALIDLY EXECUTED BUT DOES NOT INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN, OR INDICATES BOTH AN ACCEPTANCE AND REJECTION OF THE PLAN, WILL BE COUNTED AS HAVING BEEN CAST AS AN ACCEPTANCE OF THE PLAN.**

**PLEASE COMPLETE AND SEND IN YOUR BALLOT PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT, OR THE VOTING PROCEDURES GENERALLY, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AND VOTING REPRESENTATIVE AT 513-651-6800.**

CINLibrary 0121049.0583831 2330602v3

**EXHIBITS B-1 AND B-2**
**TO DISCLOSURE STATEMENT ORDER**

**NOTICE OF NON-VOTING STATUS – UNIMPAIRED CLASSES**

**AND**

**NOTICE OF NON-VOTING STATUS – IMPAIRED CLASS**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

IN RE:                                    **CHAPTER 11**


**GLC LIMITED,**                          **JUDGE HOPKINS**


        **DEBTOR.**                       **CASE NO. 11-11090**

**NOTICE OF NON-VOTING STATUS**
**UNIMPAIRED CLASSES**

         **PLEASE TAKE NOTICE THAT** on _____ 2011, the United States
Bankruptcy Court for the Southern District of Ohio, Western Division, entered an order
(the "Disclosure Statement Order") approving the Modified First Amended Disclosure
Statement of Debtor Pursuant to Section 1125 of the Bankruptcy Code (as the same may
be amended or modified, the "Disclosure Statement"), filed by GLC Limited (the
"Debtor"), as debtor and debtor in possession in the above-captioned chapter 11 case, in
connection with the Debtor's Modified First Amended Plan of Liquidation (as the same
may be amended or modified, the "Plan").


         **PLEASE TAKE FURTHER NOTICE THAT IF YOU HAVE RECEIVED
THIS NOTICE, YOUR CLAIM(S) AGAINST OR INTEREST(S) IN THE
DEBTOR IS/ARE NOT IMPAIRED AND THEREFORE, PURSUANT TO 11
U.S.C. § 1126(f), YOU ARE (I) DEEMED TO HAVE ACCEPTED THE PLAN
AND (II) NOT ENTITLED TO VOTE ON THE PLAN.  ACCORDINGLY, THE
ENCLOSED DOCUMENTS ARE PROVIDED FOR INFORMATIONAL
PURPOSES ONLY.  COPIES OF THE DISCLOSURE STATEMENT ORDER,
THE PLAN AND THE DISCLOSURE STATEMENT MAY BY OBTAINED,
UPON WRITTEN REQUEST, FROM COUNSEL FOR THE DEBTOR, RONALD
E. GOLD, FROST BROWN TODD LLC, 3300 GREAT AMERICAN TOWER, 301
EAST FOURTH STREET, CINCINNATI, OHIO 45202.**


**Dated:      _____, 2011**           **BY ORDER OF THE UNITED STATES
                                         BANKRUPTCY COURT FOR THE
                                         SOUTHERN DISTRICT OF OHIO,
                                         WESTERN DIVISION**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

IN RE:                                      **CHAPTER 11**

**GLC LIMITED,**                            **JUDGE HOPKINS**

**DEBTOR.**                                 **CASE NO. 11-11090**

### NOTICE OF NON-VOTING STATUS
### IMPAIRED CLASS

 **PLEASE TAKE NOTICE THAT** on _____, 2011, the United States Bankruptcy Court for the Southern District of Ohio, Western Division, entered an order (the "Disclosure Statement Order") approving the Modified First Amended Disclosure Statement of Debtor Pursuant to Section 1125 of the Bankruptcy Code (as the same may be amended or modified, the "Disclosure Statement"), filed by GLC Limited (the "Debtor"), as debtor and debtor in possession in the above-captioned chapter 11 case in connection with the Debtor's Modified First Amended Plan of Liquidation (as the same may be amended or modified, the "Plan").

 **PLEASE TAKE FURTHER NOTICE THAT IF YOU HAVE RECEIVED THIS NOTICE, YOU WILL RECEIVE NO DISTRIBUTION UNDER THE PLAN ON ACCOUNT OF YOUR CLAIM(S) AGAINST OR INTEREST(S) IN THE DEBTORS AND THEREFORE, PURSUANT TO 11 U.S.C. § 1126(g), YOU ARE (I) DEEMED TO HAVE REJECTED THE PLAN AND (II) NOT ENTITLED TO VOTE ON THE PLAN. ACCORDINGLY, THE ENCLOSED DOCUMENTS ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. COPIES OF THE DISCLOSURE STATEMENT ORDER, THE PLAN AND THE DISCLOSURE STATEMENT MAY BY OBTAINED, UPON WRITTEN REQUEST, FROM COUNSEL FOR THE DEBTOR, RONALD E. GOLD, FROST BROWN TODD LLC, 3300 GREAT AMERICAN TOWER, 301 EAST FOURTH STREET, CINCINNATI, OHIO 45202.**

**Dated: _____, 2011**   **BY ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION**

**EXHIBIT C**
TO DISCLOSURE STATEMENT ORDER

**PROPOSED CONFIRMATION HEARING NOTICE**

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| IN RE: | * |
| | |
| GLC LIMITED, | * **CHAPTER 11** |
| | |
| | * **JUDGE HOPKINS** |
| | |
| DEBTOR. | * **CASE NO. 11-11090** |

**NOTICE OF ENTRY OF ORDER: (A) APPROVING THE ADEQUACY OF DISCLOSURE STATEMENT; (B) FIXING A RECORD DATE; (C) APPROVING SOLICITATION PACKAGES AND PROCEDURES FOR THE DISTRIBUTION THEREOF; (D) APPROVING FORM OF BALLOTS; (E) APPROVING NOTICE TO NON-VOTING CLASSES; (F) ESTABLISHING VOTING DEADLINES AND PROCEDURES FOR TABULATION OF VOTES; (G) APPROVING PROCEDURES FOR TEMPORARY ALLOWANCE OF CLAIMS; AND (H) SCHEDULING HEARING ON CONFIRMATION OF THE PLAN OF LIQUIDATION, APPROVING FORM OF NOTICE THEREOF AND ESTABLISHING DEADLINE FOR FILING OBJECTIONS TO CONFIRMATION OF THE PLAN OF LIQUIDATION**

**TO ALL CREDITORS, INTEREST HOLDERS, AND PARTIES IN INTEREST:**

      **NOTICE IS HEREBY GIVEN** that on _____, 2011, the United States Bankruptcy Court for the Southern District of Ohio, Western Division (the "Bankruptcy Court") entered an order (the "Disclosure Statement Order") approving the Modified First Amended Disclosure Statement of Debtor (the "Disclosure Statement") Pursuant to Section 1125 of the Bankruptcy Code with Regard to Debtor's Modified First Amended Chapter 11 Plan of Liquidation  (the "Plan") filed by GLC Limited (the "Debtor"), as debtor and debtor in possession in the above-captioned chapter 11 case.[1] Copies of the Disclosure Statement Order, the Plan, and the Disclosure Statement may be obtained upon written request to Debtor's counsel at the address below.

      **NOTICE IS FURTHER GIVEN** that the Bankruptcy Court has fixed **_____, 2011** as the record date for determining the holders of claims and interests entitled to vote on the Plan.

      **NOTICE IS FURTHER GIVEN** that the Bankruptcy Court has fixed **October 27, 2011 at 10:00 a.m. (prevailing Eastern Time),** as the date and time for the hearing to consider entry of an order confirming the Plan (the "Confirmation Hearing"). The Confirmation Hearing will be held in the United States Bankruptcy Court for the Southern District of Ohio, before the Honorable Jeffrey P. Hopkins in Courtroom 2 of the United States Bankruptcy Court, Southern District of Ohio, 221 E. Fourth Street, Atrium Two Suite 800, Cincinnati, Ohio 45202, and may be continued from time to time without further notice other than the announcement by the Plan Proponents of the continued date, and the Plan may be modified, if necessary, pursuant to 11 U.S.C. § 1127 prior to, during, or as a result of the Confirmation Hearing, without further notice to interested parties.

      **NOTICE IS FURTHER GIVEN** that objections or proposed modifications, if any, to the Plan must be in writing, and: (a) state the name and address of the objecting party and the nature of the claim or interest of such party; (b) state with particularity the legal and factual grounds of any objection or proposed modification; (c) provide, where applicable, the specific text that the objecting party believes to be appropriate to insert into the Plan; and (d) be filed, together with proof of service, with the Court and served upon: (i) counsel for the Debtor, Frost Brown Todd LLC, 301 E . Fourth Street, 3300 Great American Tower, Cincinnati, Ohio 45202, Attn: Ronald E. Gold; (ii) counsel for the Committee, Morris, Manning, and Martin, LLP, 1600 Atlanta Financial Center, 3343 Peachtree Road, NE, Atlanta, GA  30326, Attn: Frank DeBorde; and (iii) the Office of the United States Trustee, Attn Monica Kindt, 36 East Seventh Street, Suite 2030, Cincinnati, Ohio 45202; such as to be **actually received no later than 4:00 p.m. (prevailing Eastern Time) on October 21, 2011** (the "Confirmation Objection Deadline").  **ANY CONFIRMATION OBJECTION NOT FILED AND SERVED AS SET FORTH HEREIN SHALL BE DEEMED WAIVED AND MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

---

[1] See Plan for definitions of capitalized terms that are not otherwise defined in this Notice.

NOTICE IS FURTHER GIVEN that, to be counted, ballots (the "<u>Ballots</u>") to accept or to reject the Plan must be submitted, in accordance with the instructions set forth on the Ballots, such as to be **actually received** no later than **4:00 p.m. (prevailing Eastern Time) on October 14, 2011.**

NOTICE IS FURTHER GIVEN that holders of (a) unimpaired claims and (b) impaired claims and interest that will receive no distribution under the Plan and, therefore, are not entitled to vote on the Plan, will receive a notice of non-voting status rather than a Ballot.  In addition, holders of certain claims, including claims that are the subject of a pending objection, are not entitled to vote on the Plan and, therefore, will not receive a Ballot.  If you are not entitled to vote on the Plan but believe that you should be entitled to vote on the Plan, you must file with the Bankruptcy Court a motion for an order pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure temporarily allowing such claim for purposes of voting to accept or reject the Plan (a "<u>Motion for Temporary Allowance</u>").  Motions for Temporary Allowance must be filed with the Bankruptcy Court by **September 30, 2011 at 4:00 p.m. (prevailing Eastern Time)**.  As to any creditor filing a Motion for Temporary Allowance, such creditor's Ballot will not be counted unless temporarily allowed by the Bankruptcy Court for voting purposes.  Motions for Temporary Allowance not timely filed as set forth herein may not be considered.

NOTICE IS FURTHER GIVEN that, except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Entities that have held, hold or may hold Claims or Interests in the Debtor or the Estate are, with respect to any such Claims or Interests, permanently enjoined from and after the Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or the Debtor, the Estate, or any of their property, (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtor, the Estate or any of their property, (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Estate or any of their property, (iv) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the Estate or any of their property, and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law.

**NOTICE IS FURTHER GIVEN that, the Plan proposes to grant the following releases:**

**The Debtor, in its individual capacity and as debtor-in-possession, for and on behalf of the Estate, releases and discharges, absolutely, unconditionally, irrevocably and forever, and shall be permanently enjoined from any prosecution or attempted prosecution of, any and all Causes of Action arising from the beginning of time through the Effective Date, against (i) counsel for the Debtor, Frost Brown Todd LLC, (ii) counsel for the Committee, Morris, Manning, and Martin, LLP; (iii) the CRO, James R. Burritt, (iv) the Debtor's pre-petition advisors, MainStream, LLC, (v) any member of the Committee not individually, but only acting in such capacity as a member of the Committee, and specifically not as a creditor, party in interest or as a defendant of a Cause of Action in the Chapter 11 Case or otherwise, in any way relating to the Debtor, the Chapter 11 Case or the Plan; provided, however, that the foregoing shall not operate as a waiver of or release from any Causes of Action arising out of (x) the rights of the Debtor or the Plan Administrator to enforce the Plan and the contracts, instruments, releases, and other agreements or documents delivered hereunder, and, as to the Entities identified in subclauses (iv) through (v) and their respective related parties, (y) acts or omissions to act involving willful misconduct, recklessness or gross negligence, (z) transactions avoidable or amounts recoverable under sections 544, 547, 548 and 550 of the Bankruptcy Code and applicable law, or (aa) any Cause of Action against any member of the Committee that does not relate to acts taken as a member of the Committee, unless as a result of a breach of those duties or gross negligence or willful misconduct.  Notwithstanding anything to the contrary in this Plan, the releases provided to the Entities identified in subclauses (i) through (v) and their respective related parties are complete and absolute.**

**Except with respect to obligations under the Plan, neither (i) Frost Brown Todd LLC, (ii) Morris, Manning, and Martin, LLP; (iii) James R. Burritt, (iv) MainStream, LLC, (v) any member of the Committee, not individually but only in their capacity as a member of the Committee, (vi) the Plan Administrator, and (vii) their respective Related Parties, solely in their capacity as such, shall have or incur any liability to any Entity whatsoever, including, without limitation, any holder of any Claim or Interest for any act or omission taken in good faith in connection with, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination or confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or property to be distributed pursuant to the Plan, or**

any contract, instrument, release, or other agreement or document created or entered into, pursuant to or in connection with the Plan, except for willful misconduct, recklessness or gross negligence.

        For clarification, and notwithstanding the provisions of the Plan, nothing contained in the Plan shall effectuate a release or relinquishment of any right, claim or Cause of Action that the Debtor or the Estate may have against those Entities listed in Exhibit C to the Disclosure Statement.

Dated: _____, 2011

                                  **FROST BROWN TODD LLC**

By:    */s/ Ronald E. Gold*
                Ronald E. Gold. (0061351)
                Joseph B. Wells (0082775)
                3300 Great American Tower
                301 East Forth Street
                Cincinnati, Ohio  45202-4182
                513-651-6800  Telephone
                513-651-6981  Facsimile
                rgold@fbtlaw.com  E-Mail
                jbwells@fbtlaw.com  E-Mail

                **ATTORNEYS FOR THE DEBTOR AND DEBTOR-IN POSSESSION**

**EXHIBIT C**

**CAUSES OF ACTION**

## EXHIBIT C

## Retained Causes of Action

In addition to the potential defendants listed in the Disclosure Statement, some of the Entities who may be the subject of litigation brought by the Plan Administrator, on behalf of the Debtor, are identified below. The Entities listed below include those parties that have conducted business with the Debtor and the Debtor is currently investigating any potential Causes of Action against such Entities. THIS DOES NOT NECESSARILY MEAN THAT CAUSES OF ACTION WILL BE FILED AGAINST SUCH ENTITIES; the Debtor does preserve any and all Causes of Action, and legal or equitable claims arising under contract, tort, statute or otherwise against any person or entity, including but not limited to each of the following, and their respective transferees, assignees, and successors:

| | |
|---|---|
| 7-11 | Accent Trading |
| 123 Print | Ace |
| 1st Choice Wholesale Outlet | ACH Corp Debit |
| 3600 Sullivant Ave., LLC | ACM Ohio LLC |
| 4-H | ACMI |
| 84 Lumber | Action Graphics |
| A & A Alterations | Adam L |
| A & A Continuous Gutters | Adams |
| A & A Sales & Services | Adams Landing |
| A & A Sanitation | Adams Sign Service & Repair |
| A & B Store Fixtures | Adams USA |
| A & J Wholesale | Adorama |
| A A Rentals | Advance Auto Parts |
| A to Z Rentals | Advanced Appliance Service |
| A&S Sand Gravel | AEP – Appalachian Power |
| A+ Alterations | AEP Ohio |
| A+ Office Place | Aero Fab, Inc. |
| A4 | Affordable Appliance |
| Abbotts Wrecker Service | AFU Family Limited |
| ABC Restaurant | AFU Family LTD Partnership |
| AC Moore | AI Insurance Group |
| ACB Collection | Airgas |
| ACC | Aldi |

Alex Vance
All American Publishing
All Star Sales
Alladin Fragrances
Allen Consulting Inc
Allen Harrah
Allen Investment Fund
Allen Moir
Allens
Alliance Sports
Allied Warehouse
Allied Warehousing Services, Inc.
Allied Waste
AllStitch Embroidery Supply
Alltech
Alltech Services
Alltel
Alton Russell
Amano Cincinnati
Amazon
Amazon Mktplace Pay.
Amber Steele
American Airlines
American Cancer Society
American Changer Corp
American Electric Power – Ohio
American Home Mortgage Company
American Publishing
American Realty Capital
American States Insurance Company
America's Best Value Inn
AMPAC Ent
Anderson Bat Company
Angela Mallen
Angies Shoes Inc
Anthem Sports
Antonline.com
Appalachian Power
Appalachian Uprising LLC
Apple Online Store
Arbys
Argos
Armstrong
Arricks
Art Club Windows
Artisan & Truck

ASAP
Ashland Specialty Company
Ashlee Murphee
ASICS American Corporation
AT&T
Atchley Cox McCroskey
Athens BMW
Athens First Bank
Athletic Bag Company
Athletic Specialties
Atlantic Coast Cotton
ATM
Auction Mdse
Auction Purchase
Augusta Sportswear
Aurora Tech
Austins Key and Lock
Autozone
Avast
Aven Store
Aztec International
B & D Cleaning
B Keeney
B. Clyde Gillespie
Bacon Products Corp.
Badger Sportswear
Baer Professional Consulting
Bailes Craig & Yon
Bank of America
Barbara Crabtree
Barbara Guntner
Bargain Buys
Bargain Buys LLC
Barry Switzer
Barry Switzer Family Trust
Barry Switzer Family, LLC
Barudan America
BB&T
BBT
Becker Electric Supply
Beckett Publications
Becky Payne
Becky Stuart
BEEHIVE Shote & Luggage Repair
Beford Ford
Bellacinos

Bellsouth Telecommunications, Inc.
Ben
Ben Boggs
Ben Hulsman
Ben Keeney
Benefit Wholesale
Best Buy
Best Materials
Best Way Disposal
Bestmaterials
BG'S Fuel
BG's Quick Serve
Big Brothers Big Sisters
Big Daddy's
Big Green
Big Lots
Big Red Publications
Big Run Landfill
Big Sandy Furniture
Big Sandy Superstore
Bill Daniel
Bill Garlock
Bill Gerlach
Bill Gilmore
Bill Matrix
BillMatrix
Billy Gillespie
Billy Mathena
Billy Stalnaker
Birch Communications
Black Box
Black Diamond
Black Knight Trading
Blick Art Material
Bloomers Candy Company
Blue Generation
Blue Rhino
BNI
Bo Thurston
Bob Evans
Bob Kilcrease
Bob Mayo
Bob Wimberly
Bobby Morrison
Bobby's Mulch
Bon Tool

Bon Tool Co.
Bonnie Jackson
Boombah
Boone County ASA
Borad St Capital
Bosley Rental
BP
Brad Koury
Bradley Communications Inc.
Braggs Body Shop
Braggs Paint and Body Shop
Brandon Summer
Brandon's Landscaping
Brenda Ellis
Brent Copley
Brewer Exxon
Brian Blake
Brian Conaty
Brian Williams
Brianna Crabtree
Broad Bay Cotton
Brokers Narional Life Assurance Co.
Brookstone
Brown Food Service, Inc.
Bruce Shoemaker
Bruce Smith
Brute Group
Bryan Blake
Bryan Walker
Bryan Williams
Bucks Fruit Company
Buddys All American Bar
Budget
Bullzeye Sign
Bureau for Child Support Enforcement
Business License
BWC State Insurance Fund
BWW
Byron Conrad
C & C Electric
C & R Gutters
C L Cobbs/ Integrity Marketing
C. Wright
C.M. Love Hardware
Cabelas.com
Cabell County Career Technology Center

Cabell Huntington Health Dept.
Cabell Midland Band Boosters
Cabinet Wholesalers
Cale Kingery
Calhouns Restaurant
Cam Guard
Camguard Security
Camguard Security Group
Candles And Supplies
Canon
Capital One
Cardmember Services
Carl Tallaferro
Carolina Hosiery Mill
Carolina Hosiery Mills, Inc.
Carolyn Butz
Cash
Catch of the Day
Cathy Stanalter
CEC Electric
Cecil I Walker Machinery Co.
Cedarbrook
Celebrity Auction
Central Power
Central Power Systems
Century LLC
Century Marketing
Chad Pennington
Chad Ratliff
Chad Stewart
Chamber of Commerce
Champro Sports
Charles Smithson
Charles Stephens
Charles Williams
Charleston Newspapers
Charlie Michael
Charmed I'm Sure
Charter One
Chase
Cheasapake Athletic Boosters
Cheek, Johnson, Zaepfel
Cheryl Rhodes
Cheryl Y Wright
Chesapeake Lions Club
Chesapeake Middle School Cheerleaders

Chevron
Chilis
Chillers Dairy and Grill
Chris Peters
Chris Scullion
Christopher Hatton
Christopher Schearer
Chuck Black
Chuck Corns
Chuckie Williams
Chucks Cabinets
CICIS
Cingular Way
Circle System
City Electric Supply
City of Burlington
City of Burlinton, NC
City of Huntington
City of Huntington Treasurer
City of Newport
City of Nitro
City of Pigeon Forge
City of St. Albans
CJT's
CKB Proucts
Clarks Excavation
Clarks Pump n Shop
Classic Food Mart
CLC
Clear Channel
Clearinghouse, Atlas No. 001042588300
Clerk of Courts
Cleveland Equipment
Cliff Keen Athletic
Cline and Hall
Clint Colson
Clorinda Hall
Closeoutcctv
CLS
Coachella Valley Collection Service
Coca Cola Enterprise
Cocke County Partnership
Code Blue HSG
Cogans
Cold Parts
Colonail Food Service Equipment

Colonial
Colonial Food Service
Columbia Gas
Combat Sports
Comcast
Commerical Sign
Comp24 LLC
Compass Bank
Con Jel
Concrete Pump Repair
Concrete Solutions
Connoisseur Media
Contempo Trophy
Contemporary Healthcare Fund, LLP
Conway Freight
Conway MacKenzie Atlanta, LLC
Conway McKenzie
Coopers Glass Service
Country Club
Courtney Crabtree
Cragos
Craig Sargent
Craigs Firearm Supply
Cramer
Crestline Co Inc
CSCS Operating
Cuffy York
Current Foreclosures
CVS Pharmacy
D.A. Harless
D.D. Lucky Trading
Dakota Collectibles
Dalco Dalco Home Sew
Dale Watts
Dan And Daves Sporting Goods
Dan Ransbottom
Dan Shoemaker
Daniels Donnan Wimberly
Danny Holschu & Fred Hayes
Danny Holschuh
Danny Wray
Dans Sport Shop
Dario Gadeia
Darryl Asmar
Daves Exxon
Dave's Tire City

David Allen
David Crosby
David Dwyer
David Dyleski
David G. Helton, MD
David Gannon
David Goshen
David Helton
David Humphreys
David J. Michnovicz
David Jett
David Neal
David Peetom
David Robertson
David Zaepfel
David Zaephyl
Days Inn
Deanos Signs & Graphics
Debbie Beckler
Delta Air
Deluxe Business Systems
Dennis  Clabo  Pigeon Forge Recorder
Dennis Franchonie
Deposit
Dept of Treasury
Derek Wooley
Deroche Canvas
Dewalt Factory Service
Diamond Sports
Diana Wright
Dick Bestwick
Dick Martin Sports, Inc.
Digital River
Dinell Rucker
Direct Tools
Discount Trophy And Co
Displays2Go
Dodger Industries Inc
Dollar General
Dollar Tree
Dolmar
DOL-OSHA
Don McLeod
Don Ransbottom
Donation
Done Right Construction

Donna Leffingwell License Agency
Donnan & Dyleski LLC
Donnan & Johnson
Donnan Dyleski LLC
Doors & Pulls
Dora Griggs
Dorcas L. Griggs
Dorothy Basham
Doug Curry
Doug Shannon
Down Home Salad
Dr. Beg
Dr. David Hon
Dreamhost
DRI Symantec
Dry Creek Wood Products
Dry Ridge BP
Duffield Lovejoy
Duffield, Lovejoy, & Stemple
Duke Energy
Duke Energy Carolinas
Dunbrooke Apparel Co
Duncan Box and Lumber
Dustin Bills
Dynamic Team Sports
Dynamically Managed Restaurants
Earthgrains
East Coast Tee's
Eastham & Associates
Easton Sports Inc
EB Performance LLC
Ebay
Econo Lodge
Ed Gullet
Edd Price
Eddie Marshall
Eddie Thone
Edgar
Edible Arrangements
EDMI Enterprise
Edward
Edward D Helvey
Edward Johnson Auctioneer
Edward Jones
Edward Tolley
Elaine Roberts

Electronic Supply
ELL Enterprises
Employer Services
Enterprise Rent A Car
Environmental Management Inc
EQ Credit Suspense
Eric Lezu
Erie Insurance Group
Ethan Zamora
Exclusive Checks
Express Stop
Extreme Vinyl Graphics
Exxon
Exxonmobile
Fair Labor Association
Fairland Band Boosters
Fairland High School
Fairland Little League
Falcon Safety Products
Family Dollar Stores
Fan Mats
Fannies
Farm House
Farrell, Farrell & Farrell, PLLC
Fashion Bug
Fast Stop
Fastenal
FC Store Fixtures
FDGL- Lease Payment
Fed Ex
Fellers Inc
Ferguson Enterprises
Ferrell Gas
FHS Athletic Boosters
Fibernet
Fifth Third Bank
First Baptist
First Baptist Church
First Data Global Leasing
First Investors
First Sentry
First Sentry Bank
First State Bank
Flavorich
Flowers Baking Co.
Flying J

FMK Closeouts
Foley Belsaw
Food City
Food Fair
Food Lion
Foodfair
Ford Credit
Ford Credit Co.
Forekids Town Fundraiser
Forney Industries, Inc.
Fort Rapids Water Park
Fox 11
Francis M. Back
Frank Beamer
Frank White
Franmar Chemical
Frazier Sports
Fred Cornell
Fred E. King & Fred E. King
Fred Hayes
Fred Ray's Interior Trim
Fred Ray's Interior Trim
Freddie Hayes
Freddie Watson
Frederick Management Company LLC
Fred's
Freedom Farms
Freeman Webb Company
Freightquote
Frito Lay
From the Heart Enterprises
Frontier
Frontier Communications
FrontierCommunications
Fruth Pharmacy
Ft Sanders Sevier
Fuller Tomato
Fun Creation
Fun Factory
Furniture Town
FYFL
G R Shirts
Gabriel Brothers
Game Sportswear
Game Time
Game Wear

Garden Sun Light Inc.
Gared Sports
Gas
Gatlinburg World Outreach Center
Gator Athletics Inc
Gaylord Opryland Hotel
Genco Co.
Gene Ledbettor
General District Court
Genesis Manufacturing
George Gooch
George Man
George Marshall
George Mauganior
Georgia Campus Services
Georgia Tax Credit Fund XX, LLC
GeTI
Giant Closeout Wholesale Inc
Giant Closeouts Wholesale
Gibbs Retail Systems
Gilbert Milner
Gill Athletics
Gillman Home Center
Gilpin's
Gina Johnson
Giovannis
Glass America
GLC 12th Ave.
GLC Brown Street Apts.
GLC Car Wash
GLC Discount
GLC Enterprises
GLCA Chamber of Commerce
Glenn Mullins
Global Forestry Supply
Global Pay Global Payments Inc.
Global Recovery
Global Wholesale & Auction
Go Daddy
Go Mart
Golden Corral
Golden Opp
Golden Opportunity
Golden Opportunity Inc.
Goldsmit Sydnor, Inc.
Goldsmith

Good Earth Organics Corp
Goodwill
Graham Embroidery
Grainger
Grandslamdesigns.com
Greg Hill
Greg Johnson
Greg Rowsey
Gregory Crabtree
GTM Sportswear
Guardian Auto Glass
Gunold USA
H & B Corporate
H W Sport Shop Inc
Halls Funeral Home
Hamilton Chevrolet
Hampton Foods
Hanna's Handiworks
Harbor Freight
Hardware Store Processing
Harland Checks
Harold Adkins
Harry Bryant
Harry F. Byus III (Trey)
Harts Signs
Hawthorne's Towing
Hecla Water
Helca Water Association
Henderson Gravel
Herald Disptach
Herd Insider
Heritage Sportswear
Herr Foods
Herr Foods Inc
Herr's
Hersh Textiles
Hibachi Japanese
Hickory Brands Inc
High Five
Highlander Press
Highlland Graphics
Hillerich Bradsby Co- Louisville Slugger
Hobby Lobby
Hobe Black
Hobert Black
Hogsett Lock Service

Holden Adkins
Holiday Inn
Holiday Point Marina
Holiday Pools
Holloway
Holts Heating & Air
Home City
Home Depot
Home Town Carpet
Homestead Furniture
Hometown Productions
Hommel Enterprises
Hon Company
Honey Baked Ham company
Horse Clock and Watch
Hot Tamales
Hotel Pigeon Forge
House Hasson HArdward Co.; Persinger
Division Inc.
House Hasson Hardware
Howard Sales
HRCC
Hud Foreclosed Com
Hudsons Surfside Flea Market
Hugh Parker
HughesNet.com
Hummel Enterprises, Inc.
Hunt Merch Svcs Dicsount
Hunt Merch Svcs Fee
Hunt Merch Svcs Fincl Adj
Hunt Merch SVcs Interchange
Hunter Miller
Hunter Miller Family
Hunter Miller Family, LLC
Huntington Bank
Huntington City Mission
Huntington High School
Huntington Hose & Hydraulics
Huntington NA
Huntington Prime LLC
Huntington Regional Chamber of
Commerce
Huntington Yacht Club
Huntington Youth Football
Hurley Electric
Hurricane Middle School Athletic Boosters

Hussons Pizza
Imagewear
Independence Communications
Indiana Department of Revenue
Indiana Dept Revenue
Indiana Dept. of Workforce Development
Infinity Group
ING
Ink In A Blink
Internal Revenue Service
International Collection Corporation
Interstate Battery
Intuit
Iron Valley
J & M Brands
J Marcus Company
J Patton Sports
J&M Brands Inc.
J. Gilbert Milner
J. Robert Gardner
J.B. Bloomers
J.S. Lawn & Cleaning
Jack Black
Jake Snyder
Jame Early
James Donnan
James Eads
James G. Wagner Jr.
James L. Johnson
James Loggins
James Ludwig
James Mann
Janice A. Butler, Cocke Co. Clerk
Jaro
Jay C Food Stores
Jay Hatten
Jay Products
JD Lucky Co
Jeff Dykes
Jeff Heath
Jeff Hogsett
Jeff Keys
Jefferds
Jeffrey Bradshaw
Jeffrey Donnan
Jennifer Kendall

Jerald T. Hefner
Jerry McKnight
Jerry's Service Center
Jesse Basham
Jim Besnas
Jim Donnan
Jim Jack
Jim Ludwig
Jim Overby
Jim's Gun Shop
Jimmy Britt
Jims Gun Shop
Jims Lock Service
Joe Basham
Joe Clark
Joe Eplin
Joe Gillespie
Joe Lester
Joe Queen
John Fetty
John Forth
John M. Williams
John R. Bauerle
John R. Perner
John Somsky
John Steele
Johnson Pest
Johnson Pest Control
Johnson Printing
Jonas D. Jennings
Jonathan Holbrook
Jonathan Steele
Joni Statham
Josh Adkins
Josh Clagg
JPMorgan Chase Bank
Jugs Sports, Inc.
Jureta Gregg
Justin
JWT Products
K Bos
K S Trucking
K. Amailia Enterprises
KAGI
Karen Price
KC Store Fixtures

Keith Gunter
Kelly Johnson
Ken Api Supply
Kendrell Bell
Kendrell Bell-i
Kenneth Harbour
Kenneth Jackson
Kenny Queen Hardware
Kevin L Boyce
Kevin Price
Khol's
Kindred Communication
Kindred Communications (The Dawg)
Kleen Rite Corp
Kline and Hall
Kmart
Korney Board Inc
Krispy Kreme
Kroger
Kwik Lube
L Tenampa
L. Holbrook
L. Tenampa
La Carreta
La Roca Mexican Rest
Labels Plus
Lancaster & McKillip PC IOLTA
Lane Baugh
Larry
Larry Johnson
Larry Rhodes
Larry Smart
Latta's
Lawrence Co Building Dept
Lawrence Co. Agricultural Society
Lawrence Co. Chamber of Commerce
Lawrence Co. Clerk of Court
Lawrence Co. Court
Lawrence County Fair Board
Lawrence Water Corp.
Layla Halem
Lee Heikel
Lee Leathers
Leisa Peetom
Lemon Liquidations
Leon Bolton

Leona
Leonard Aluminum Utility Bldg.
Lester
Lewis Scruggs
Liberty Agency Underwriters
Liberty Air Technicians
Liberty Bell
Liepajas Auto Service
Like Nu Ink and Toner
Lincoln Co. Football Boosters
Lincoln Journal
Linda Crabtree
Linsmore Park
Liquidity Services Inc
Lisa Hershel
Lisa Holbrook
Little General
Logan Magic Shoecare
Logans
Loomis Auction
Lora Maynard
Louisville Ladder, Inc.
Louisville Slugger
Love S. Country
Loves Country Inn
Lowes
Lute Supply
Lutes Supply
Luxor Direct
Lydia Baugh
Lydia Baugh Hanna
M & K
M & M
M & M Inflatables
M Haye
M Industrial Center
M J R
M. L. Weiner
Mac Ahmed
Mack Hoover
Macy's
Magic Creations
Magistrate Court
Mail South
Majestic
Mallerie Wolfenbarger

Mapco
Marathon Express
Marc Shoener
Marcella Adkins
Marco Awards
Mario Rodriguez
Mark Dyleski
Mark Gottfried
Marketing Results LTD
Markwort Sporting Goods Company
Marshall Daniels
Marshall Hall of Fame Cafe
Marshall Harless
Marshall University Athletic Equipment
Marshall University Baseball
Marshall University BKST
Martin Sports
Mary Crabtree
Mary Donnan
Massey's Sales
Matjengi LLC
Matney Truck Service
Matt Leadmon
Matt McSweeney
Matthew Hale
Maurice Koury
Mauricia Kraus
Max & Erma's
Maxine M. Gilmore
Mayo Kitchen & Bath
McCoy Freightliner, Inc.
McDaniel Electric
McDavid Sports/Medical
McDonald's #10027
McDonald's
Melinis of Huntington
Memory Suppliers
Merge Left
Merrilees Trustworthy Supply
MetLife
Michael Back
Michael Cheek
Michael Crabtree
Michael P Patterson
Michael T. Crabtree
Michaels

Michelle
Microsoft
Microtel Inn & Suites
Mid-Valley Supply
Midwest Trading Group
Mikasa
Mikaylas Place
Mike Crabtree
Mike Gottfried
Mike Haye
Mike Shepherd
Mike Steinbreaker
Mike Vance
Mike Walters
Miken Sports
Mill Supply, Inc.
Millenium Trust Co.; Cusotidan FBO Lewis
L. Scruggs Jr.
Miller & Martin PLLC
Milt Petty
Minuteman Press
Mizuno
MJ Soffe, LLC
MJ Trucking
Mocap
Mokhless
Mom Fair & White Co.
Monster Scooter Parts
Montie
Morgan Stanley
Morris Manning & Martin LLP
Morristown Livestock Auction
Motion Industries
Mountain Gear
Mountain Press
Mountaineer Gas
Mountaineer Gas Co.
Mountaineer Glass
Mountaineer Wings
Mountaineer Wings (York & Donnan)
MTOT Disc
Mueller Sports Medicine
Muhl Tech
Munn's Electrical
Murphy Express
Mutual Wholesaler, Inc.

Muzak
Mzooka LLC
NAPA Auto Parts Store
Napier Publishing
National  Alarm System
National Bank of Georgia
National Bank of TN
National Car Rental
National Central Alarm
National Central Alarm Systems, Inc.
National Nail Corp
National Parks Resort Lodge
Nazdar Northeast
NC Child Support Centralized Collections
NC Dept. of Revenue
NC Division of Motor Vehicles
NC Employment Sec. Commission
NC Employment Security Commission
NCDOR
NCO Financial Systems
Nelson Bowers dba Village Investments
Nelson Galbreath LLC
New Bapt. Church
New China Garden Buffet
Newegg.com
Newport Hardware
Newport Utilities
Newspaper Svcs
Nextag Inc.
Nic Webb
Nicely's Towing Service
Nichols Associates WV
Nike
Nike
Nitro High School
Nitro Lock & Key
NJ E-Z Pass
Nomas House
Norandex
North American Bancard
North Carolina Dept Revenue
Northern Leasing
Northwestern Mutual
Nostalgic Images Inc
NWYC
NYC B G Wholesale

NYK Logistics
Oakley Direct
O'Charleys
Odd Price
ODTSALETX
Office Depot
Office Max
Ohio American Water
Ohio Builders
Ohio Bureau of Worker's Compensation
Ohio Bureau Workers Comp
Ohio Department of Taxation
Ohio Dept Job and Family Services
Ohio Dept. of Job and Family Services
Ohio Dept. of Taxation
Ohio DMV
Ohio Treasurer of State
Ohio University Foundation
Okeedokee
Okuna International
Ollesheimer & Son Inc
Omaha Fixture
OMNI Hotel
One Stroke
Online Promos
Opening Deposit
Oscar Allman
OVC
Overholt's Hardware
Oxford Industries
P Kent
Pacific Headwear
Paige Johnson
Pam Baugh
Panera Bread
Paper Rolls & Ribbons
Parent - Teacher Store
Park Avenue Bank
partstore.com
Passero & Wilson
Pat Burd
Patricia Burgess
Paul Basham
Paul Hart
Paul Height-i
Paul J. Messer III

Paul Kent
Paul Messer
Paul Mohler
Paul Spurlock
Pauls Quick Serve
Paymentech
Paypal
Paypal Transfer
Peerless Insurance
PeggsCompany
Pendelton Implements
Penske
Pepco Poms Sports
Pepsi Bottling Group
Pershing LLC
Personnel Concepts
Phil Hight
Phil Shoemaker
Philip M. Mayo
Phillip Height
Phyllis Bestwick
Piedmont Natural Gas
Piedmont Natural Gas Company
Pier 1 imports
Pierce Liberman
Pigeon Forge Hardware
Pigeon Forge Hotel Association
Pigeon Forge Outlet Partners
Pigeon Forge Outlets
Pigeon Forge PO
Pilot
Pink Ribbon Racers
Pinnacle Sports
Pioneer Supply
Pit Stop
Pita Pit
Pitt Ohio
Pizza Hut
Pleasant Meats
Poe's Sports and Trophys
Polished Perfection Cleaning
Portsmouth Daily Times
Postmaster
Power Port Products Inc
Premium Map Co
Premium Processing

Prestolite Wire Corp
Prime Copy Plus
Print Inc.
Pro Tuff Decals
Proctorville Community Fire and Rescue
Proctorville CPS
Proctorville Tire and Alignment
Proctorville Tire-c
Proctorville Water
Proctorville Water Co.
Proctorville Womans Club
Programs and More
Progressive
Protech
Pukka Inc
PWR Plumbing
Pyramid Technologies
Quality Carpet Care
Quality Inns
Quality Metal Roof
Quality Products
Quality Restaurant Products
Quality Salvage
Quality Salvage Industries
Quick & Easy Market
Quikrete
Quill Corporation
QVC I nc.
R & L Carrier
Radio Shack
Rally For A Cure
Ramada
Rams Plaza
Randy Davis
Rapid Fire
Rapid Refill Ink
Ray Goodman
Raymond Gorby
Raymond H. Goodmon, III
Raymond or Carol Gorby
Rays Service Center Inc
RB III Associates Inc
RBC
RE Hardware
Receivables Control Group
Red Lobster

Red Roof Inns
Republic Waste Services
Resort Maps
Restockit.com
Returned Check
Returned Check Charge
Reyburn's Auto Service
Rich Hardware
Rich Hardware & Rental
Richard Clark
Richard L. Bestwick
Richardson
Rick Bonci
Rick Estep
Rick Rose
Ricky Chastain
Riley Development Company
Rio Grande
Rite- Aid
River Cities Disposal
River Cities Tires
Rivercities Tires
Robbie McCormick
Robby Johnson
Robert H Ham Assoc
Robert J. Gardiner
Robert Kilcrease
Rock Young
Rodney Crabtree
Ron Price
Rons Plaza
Roy Dennison
Royal Express
Royal Textile Mills
Runell S. Cheek
Rustoleum
Rusty Prichard
RYNO Industries
S & K Auctions
S & K Wholesale
S & P Wholesale
S & S Activewear
S & S Tire
S S Tire
S.S. Logan Packing Co.
SAC Foods LLC

Sadler and Smith
Safeco
Salt of the World Ministries
Sam Swann
Sam's Club
Samir Patel
Sammsoft.com
Sams
Sam's
Samuel Kaufman
Sandy Edwards
Saraglove.com
Sav Rite
Savannah Bank
Save-A-Lot
SCES
Schlotzskys Deli
Schooners Waterfront
Schutt Sports
Scott Baugh
Scott Leamon
Scott Mchaffey
Scott Sword
Scratch And Dent Appliances
Screen Grafex Supply
SCUD
Sea Hawk Motel
Seafood World
Sears
Secretary of State
Select Portfolio
Sentry Fire
Sentry Fire Protection, Inc.
Service Glass
Seven Up
Sevier County Clerk
Sevier County Electric System
Sevier County Food Ministries
Sevier County Trustee
Sevier County Utilities
Sevier County Utility District
Sevier Farmers Cooperative
Sevierville Post Office
Sewing Machine Surgeon
Shane
Shanon Brammer

Sharp Electronics
Shatley and Associates
Shawn Stowers
Sheena Ogle
Sheetz
Shell
Sherry Nelson
Sherwin Williams
Shipping Connections
Shipping Connections, Inc.
Shock Doctor
Shoemaker Snacks
Short Stitch
Sign Express
Sileye Dia
Silver Dollar Sales, Inc.
Silver Star Exxon
Silverton Bridge Bank
Silvio Rodriguez
Sissonville Used Cars Inc
Skill Path Seminars
Skipjack
Sky South
Slipp-Nott
Small Appliance
Smokey Mountain Knife Works
Smokey Mtn. Wholesale
Snyders
Source Sales
South Eastern IN Gas Co.
Southern Imperial
Southern OH Lube & Oil
Southern WV Asphalt
Sparky
SPC Marketing
Special Metals
Speedee Mart
Speedway
Spiro Mitias
Sport Supply Group
Sports Flags and Products
Sports Images
Sportstar Athletics
Spring Valley High School Baseball
Spurlocks Flowers
SS Graphics

St Joseph High School
St. Albans High School
ST. Judes Children's Hosp.
Stadion
Stadium Chair Co.
Stahls ID Direct
Standard Alarm
Standard Alarm Company
Staples
Starbucks
Starks Window Cleaning
State Electric
State Farm Insurance
State of Ohio
State of Ohio UST
State Tax Dept. Compl.Div./Htgn
State WV Insurance Commissioner
Statefoodsafety.com
Statenconzou LLC
Stateside Georgia Tax Credit Fund
Steak Escape
Steeles Auction
Stens
Stephen S. Fennell
Stephens Develope
Stericycle
Sterne Agee
Steve Fennell
Steve Logan
Steve Meyers
Steven Scholze
Steven Scholze
Steve's Refrigeration
Stillpass Realty
Stinson McKay
Stokes Electric Company
Store Supply Warehouse
Strickland Plumbing
Sudden Link
Sullivant Holdings LLC
Sun Time
Sunoco
SunTrust Bank
Super 8
Superior Lamp
Superior Office Service

Superior Office Supply
Support Supply Group
Susan Wise
Suttle Apparatus
Suttner America Co.
Suzanne Tuberville
Switzer Family, LLC
Sysco Food Service/Cincinnati
SYX Global Industries
T A
T A Cedar Grov
Tammy Donnan
Target
Team Sports  America
Teamwork Athletic
TeleCheck
Telecheck Services
Tenn Dept Revenue
Tennessee Dept of Revenue
Tennessee Venture
Terminix
Terrys Mobile Glass LLC
TestCountry
TGI Fridays
The Chamber
The Earthgrains Company
The Flagcenter
The Flower Factory
The H.T. Hackney Co.
The Hardware Store
The Hartford
The Herald Dispatch
The Home Depot
The Jay Products
The Lords Child
The Mountain Press
The Newport Plain Talk
The Office Shop
The Standard Alarm Company
The UPS Store
The Valley Voice
The W.J. Maier Storage Co
The Wells Group
Thermal Paper Warehouse
THF Management, Inc.
THF Nitro Development

THF Realty
Thomas Crabtree
Thomas E. Baugh Educational Trust
Thomas Huskey
Thomas Johnson
Thomas Power
Thomas/Kelly/Johnson Investors
Three Gables Surgery Center
Three Putt Management LLC
TIAA CREF
Tidi Waste
Tidi Waste Systems
Tim Blankenship
Tim Webb
Times News
Tire Stop
Titanic Discount
TL Sportswear
TN Dept Labor and Workforce
Development
TN Dept of Agriculture
TN Dept of Labor & Workforce
TN Dept. of Revenue
Todd Donnan
Todds
Tom Baugh
Tom Beard
Tom E. Baugh Jr.
Tom Huskey
Tom Johnson
Tom Lugenbill
Tom Luginbill
Tom Powers
Tom Russell
Tommy Tuberville
Tonia Fry
Tonix
Tony
Tony Toma's
Top of the World
Tornadoes Baseball
Total Motion Industries
Total Worth - Debeer
Toys R Us
Tractor Supply
Traders Unlimited

TransAcr Technologies Inc.
Transfer
Transfer Express
Travel Doctors
Treadmill Doctor
Treadway Plumbing & Electric
Treasurer City of Htgn
Treasurer of State of Ohio
Trey Byus
Tri Foxco USA
Tri Mountain
Tri State Truck Repair
Trigon Sports
Trisha Burgess
Tritronics
Troy Bunns
Tubelite
Tucks Rentals
TwillUSA
Twin City Knitting Company
Two Guys Pizza
Tyler Mountain Water
UGA Price, LLC
Uhaul
U-Haul
ULINE
Under Armour Direct
Unemployment Compensation
Union Depot Auction
Union Public Service District
Union Public Sewer
Union-Rome Sewer
UniqueScreen Media
Uniroyal
Unisource
Unisource Worldwide, Inc.
United Dairy
United Health Care
United Refrigeration Inc.
Universal ADCOM
University Directories
UPGF Freight
UPS
UPS Store
Upstate Outdoor Power Equip.
US Airways

US Bank
US Treasury
USA Security
USPS
Utility Workers Union of America
Valley Alternators & Starters
Valley Media
Valvoline
Varney Door
VECCELI Italy
Verizon
VF Imagewear
VFW
VHP
Victor York
Victors Hat SH & Riggs
Victory Sports
Virginia Mccoy
Virginia T's
Vista Print
VPI Sports
W.J. Maier Storage
Wagner Rental
Walgreens
Wal-Mart
Wanda
Waste Management
Water Gear Inc.
Wayne Billings
Wayne County Publications
Wayne County Right to Life
WCHS
Webb's Truck Parts
Websters Sporting Goods
Weddington Sales & Service
Weekly Massage
Wellman Weinberg
Wellman, Weinberg &
Wells Concrete
Wells Group
Wenders
Wendys
Wes Banco
Wes Holbrook
Wes Shafer
Wesbanco

West Virginia American Water
West Virginia Business
West Virginia State Tax Dept.
West Virginia State Tax Division
Western Global Investment
Wham Frozen Foods
Wham Frozen Foods Inc.
Wheelersburg Little League
White Way
Whitley's Florist
Wholesale Liquidation
Wicks
William Bo Thurston
William E Gilmore
William E. Gilmore Jr.
William Marks
Wilson
Wilson Sporting Goods
Wimberly Brothers
Wimberly Daniel and Donnan
Wimberly, Daniel & Roberts
Wingate
Wire Transfer
Wire Transfer Fee
WIRKO
Wirko Inc.
Withdrawal
WKEE
WMFL
Woody Chastain
Workforce West Virginia
Workforce WV
Workshop Tools
World Eye Cam
World Marketing of America
World Wide
World Wide Chiropractic
Worldwide Equipment Leasing
Worth - Debeer
WQCW
WV American Water
WV Business Product
WV Dept of Agriculture
WV Electric
WV Panthers
WV Purchasing Division

WV Secretary of State
WV State Dept. of Tax and Revenue
WV State Tax Department
WV State Tax Dept.
WV Tax Dept.
WV Turnpike
WV Unemployment Compensation
WV University Hospital
WVAH
WVHU
XM Satellite Radio
YM Trading
Yorks Unlimited Appliance
Z Tech
Zack Stepling
Zack Stribling
Zichron Eliyahu Inc
Ziegler Healthcare Fund I, LP

Nothing in this Exhibit shall constitute a finding of fact or an adjudication on the merits of any of the retained Causes of Action, which have been listed and described here for the sole purpose of identifying claims and Causes of Action that may be asserted post-confirmation, as described in the Plan. All claims identified herein against a person or entity are intended to include claims against affiliates, predecessor and successor entities. The Debtor's investigation of the retained Causes of Actions is continuing, and the value of these retained Causes of Actions is uncertain.

**EXHIBIT D**

**LIQUIDATION ANALYSIS**

CINLibrary 0121049.0583831   2305226v11

| | Unaudited Book Value 7/31/2011 | See Note | Estimated Recovery % Mid-range | Estimated Liquidation value Mid-range | Estimated Recovery % Low-range | Estimated Liquidation value Low-range |
|---|---|---|---|---|---|---|
| **ASSETS:** | | | | | | |
| | | | | | | |
| Operating Cash | 112,513 | | 100% | 112,513 | 100% | 112,513 |
| Cash in transit | 509 | | 100% | 509 | 100% | 509 |
| Total cash | 113,022 | 1 | 100% | 113,022 | 100% | 113,022 |
| | | | | | | - |
| Accounts Receivable (Less factored account) | 17,865 | 2 | 50% | 8,933 | 25% | 4,466 |
| Insider Receivables | 568,000 | 3 | 50% | 284,000 | 23% | 130,640 |
| | | | | - | | |
| **Inventory** | | | | | | |
| Sellable Merchandise | 147,280 | 4 | 100% | 147,280 | 65% | 95,732 |
| Unsellable Merchandise | 98,186 | | | - | | - |
| | 245,466 | | | - | | - |
| | | | | - | | - |
| **Prepaid deposits:** | | | | - | | - |
| Utility deposits | 6,068 | 5 | 100% | 6,068 | 40% | 2,427 |
| | | | | - | | - |
| **Furniture Fixtures and equipment, at book value** | 64,284 | 6 | 25% | 16,071 | 10% | 6,428 |
| | | | | | | - |
| Other Contingent & Unliquidated Claims | 16,186,671 | 7 | 46% | 7,445,869 | 23% | 3,787,681 |
| | | | | | | |
| **Total assets** | 17,201,376 | | | 8,021,242 | | 4,140,397 |
| | | | | | | |
| | | | | | | |
| **Available to pay debts** | 17,201,376 | | | 8,021,242 | | 4,140,397 |
| | | | | | | |
| | | | | | | |
| **Liquidation administrative cost:** | | | | | | |
| Professional fees | 692,123 | 8 | | 692,123 | | 692,123 |
| US trustee | 5,850 | 9 | | 5,850 | | 5,850 |
| | 697,973 | | | 697,973 | | 697,973 |

|  | Unaudited Book Value 7/31/2011 |  | Estimated Liquidation value Mid-range | Estimated Liquidation value Low-range |
|---|---|---|---|---|
| **Available funds after Liquidation Costs** | 16,503,403 |  | 7,323,269 | 3,442,424 |
|  |  |  |  |  |
| **Secured claims:** |  |  |  |  |
| First State Bank equipment loan | 35,000 |  | 35,000 | 35,000 |
| Pre-petition taxes leins | 37,888 |  | 37,888 | 37,888 |
| Pre-petition Vendors judgment leins | 74,512 |  | 74,512 | 74,512 |
|  | 147,400 |  | 147,400 | 147,400 |
|  |  |  |  |  |
| **Available funds for admin, priority claims** | 16,356,003 |  | 7,175,869 | 3,295,024 |
|  |  |  |  |  |
| **Administrative claims:** |  |  | - |  |
| Post-petition accrued expenses | 290,277 | 9 | 290,277 | 290,277 |
| Contract labor expense | 6,250 | 10 | 6,250 | 6,250 |
|  | 296,527 |  | 296,527 | 296,527 |
|  |  |  |  |  |
| **Priority claims:** |  |  |  |  |
| Post-petition taxes payable | 15,480 |  | 15,480 | 15,480 |
|  |  |  |  |  |
| **Distribution to Unsecured creditors** | 16,043,996 |  | 6,863,862 | 2,983,017 |
|  |  |  |  |  |
| **Unsecured claims:** |  |  |  |  |
| Total of all unsecured claims | 27,839,456 |  | 27,839,456 | 27,839,456 |

1. Represents cash at July 31, 2001.

2. Approximately 40% of accounts receivable are believed to be uncollectable due to businesses and individuals that are no longer in operation and/or the pursuit of which would not be cost effective.  It is estimated that an additional 10% will be written down after negotiation of disputed amounts.

3. Insider Receivables – Negotiations are in the early stages and this estimate is based on what is currently known about real estate equity offered by the Crabtree family in their initial settlement offer.  As the property has yet to be turned over to the debtor we have not yet had access to the properties and do not have a full picture of what type of values may be realized from the sale of these assets. The mid-range assumes a similar or slightly improving economy and that the values designated by the Crabtree's for the properties are accurate. The low side assumes an economic environment that is worse than current conditions and real estate values that have been over stated. It does not take into account a promissory note the Crabtree's will be asked to sign representing the difference between the real estate equity and the amount they took from the Company.

4. The sellable portion of inventory is expected to be sold at full value.  We are finding that many of the boxes do not contain the actual quantities listed and as such the difference between the mid-range and low-range is simply based on the total quantity of units available to sell. Unsellable inventory consists of obsolete items which have no resale value.

5. Deposits are expected to be fully utilized but may not be fully refunded as deposits are used against final balances due.

6. The FF&E estimate takes into account the low demand for this equipment due to the current unfavorable economy and market environment.

7. Mid-range values assume that the Donnan settlement is approved through the Courts as stated in the Motion filed for the August 26 Hearing in Cincinnati and the August 29 Hearing in Macon. The low range assumes a lower amount being realized from the Donnan settlement.

8. Projected additional professional fees for the next twelve months include $240,000 for the CRO, $360,000 for legal and accounting, and $265,000 for the committee counsel.  A contingency fee arrangement regarding litigation issues has been implemented in an attempt to further control costs.

9. Additional US trustee fees are estimated to be $24,000 over the next 12 months.

10. Additional accrued expenses include rent $9,300, utilities $1,500, and insurance $8,000.

11. All employees have been terminated.  Three individuals work as contract labor in the Huntington, WV warehouse.  It is anticipated that two of these contractors will finish at the end of August and the final one by September 7.