## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| GLC LIMITED, | ) | CASE NO. 11-11090 |
| | ) | |
| DEBTOR. | ) | HONORABLE JEFFERY P. HOPKINS |

**AMENDED MOTION OF DEBTOR PURSUANT TO 11 U.S.C. §§ 105(A) AND 363 AND BANKRUPTCY RULES 2002 AND 6004 FOR (I) ENTRY OF AN ORDER (A) ESTABLISHING BIDDING AND AUCTION PROCEDURES RELATED TO THE SALE OF CERTAIN PROPERTY LOCATED AT 200 AND 202 STATE STREET, PROCTORVILLE, OHIO; (B) SCHEDULING AN AUCTION AND SALE HEARING FOR THE SALE OF THE PROPERTY; (C) APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (D) GRANTING CERTAIN RELATED RELIEF; AND (II) ENTRY OF AN ORDER (A) APPROVING THE SALE OF THE PROPERTY LOCATED AT 200 AND 202 STATE STREET, PROCTORVILLE, OHIO FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) COMPELLING GREGORY AND LINDA CRABTREE TO SIGN DEED CONVEYING TITLE TO THE PROPERTY; AND (C) GRANTING CERTAIN RELATED RELIEF**

GLC Limited (the "**Debtor**"), by its undersigned counsel, FROST BROWN TODD LLC, hereby respectfully moves this Court (the "**Motion**") for entry of an order (the **"Bidding Procedures Order"**), in substantially the form attached hereto as Exhibit A, (A) establishing bidding and auction procedures (the "**Bidding Procedures**") in connection with the potential sale of certain property located at 200 and 202 State Street, Proctorville, Ohio (together, the **"Property"**), free and clear of all claims (as defined by section 101(5) of the Bankruptcy Code) and any other interests, liens, mortgages, pledges, security interests, rights of first refusal, obligations and encumbrances of any kind whatsoever (collectively, the "**Interests**"); (B) scheduling an auction (the "**Auction**") and setting a date and time for a sale hearing (the "**Sale Hearing**") for the sale of the Property (the "**Sale**"); (C) approving notice of this Motion, the Bidding Procedures, the proposed Sale of the Property and the Sale Hearing and approving the form of notice attached to this Motion as Exhibit B (the **"Notice"**); and (D) granting certain

related relief. The Debtor further requests that at the Sale Hearing, subject to the results of the Auction and the Bidding Procedures set forth herein, this Court enter an order (a "**Sale Order**") (A) approving and authorizing the Sale of the Property, free and clear of all Interests; (B) compelling Gregory and Linda Crabtree to sign a deed conveying the title to the Property at the closing of the Sale of the Property; and (C) granting certain related relief. In support hereof, the Debtor respectfully represents:

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "**Bankruptcy Code**"), and sections 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

**A.** **General Background**

3. On February 28, 2011 (the "**Petition Date**"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court. The Debtor is authorized to continue to operate its businesses and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 7, 2011, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in this chapter 11 case (the "**Committee**").

4. Prior to the Petition Date, the Debtor owned and operated TrustWorthy Hardware Store in Proctorville, Ohio and Dan's Sporting Goods in Huntington, West Virginia. The Debtor

has an interest in a warehouse, which was purchased at or near the same time of starting the TrustWorthy Hardware Store, and a vacant lot next to such warehouse, which comprise the Property.

5. Upon information and belief, the Property was purchased on March 18, 2010, for the total purchase price of $75,000. Further, upon information and belief, title to the Property is currently in the name of Gregory and Linda Crabtree. However, upon information and belief, the Property was bought by Mr. and Mrs. Crabtree using certain funds of the Debtor.

6. In a deposition of Mr. Crabtree, which was taken on September 20, 2011 (the "**Crabtree Deposition**"),[1] Mr. Crabtree admitted that he used money of the Debtor to buy the Property and to title the Property in his name. *See* Crabtree Deposition pp. 127-129. In addition, when asked whether the Property should be property of the Debtor, Mr. Crabtree responded with an unequivocal "Yes." *See id*. p. 128. Further, Mr. Crabtree stated in his deposition that the reason why he has not transferred title of the Property to the Debtor is because he is just waiting for someone to tell him how to do so. *See id*.

7. Since the Property was admittedly purchased with funds of the Debtor, it is the position of the Debtor that the Property is property of the Debtor and its bankruptcy estate, rather than property of Mr. and Mrs. Crabtree. As such, the Debtor has filed this Motion requesting this Court's approval of the relief sought herein.

   **B.   Background Regarding Marketing of the Property**

8. Since the Petition Date, the Debtor's CRO has, among other things, focused his efforts on marketing, selling and liquidating the Debtor's assets. The CRO has marketed the

---

[1] Copies of the relevant portions of the transcript of the Crabtree Deposition are attached hereto and incorporated herein as Exhibit D.

Debtor's assets and communicated with numerous parties regarding the potential sale of the Debtor's assets.

9. As part of his efforts in marketing the Debtor's assets, the CRO has worked to market the Property. The CRO received an offer from James M. Lundy and Dean Spencer (together, the **"Proposed Purchaser"**) to purchase the Property, free and clear of all Interests, for the purchase price of $75,100.00 (the **"Proposed Purchase Price"**). The Proposed Purchaser has submitted an offer dated October 13, 2011 to the Debtor to purchase the Property, a copy of which is attached hereto as Exhibit C (the **"Purchase Offer"**).

10. While negotiating the proposed sale of the Property, the Proposed Purchaser indicated to the Debtor that a relatively expedited sale process with respect to the Property was critical to the Proposed Purchaser's decision to provide an offer to purchase the Property. Consequently, the Debtor has determined that it is in the best interest of its estate, creditors and other parties in interest to move forward with the Sale process set forth herein.

## RELIEF REQUESTED

11. The Debtor has determined that a prompt Sale of the Property is the best way to maximize the value of the Property for the Debtor's estate and creditors.

12. Accordingly, by this Motion, the Debtor seeks, among other things, entry of the Bidding Procedures Order (A) approving procedures for (i) submitting bids for the Property, (ii) conducting an Auction with respect to the Property, in the event the Debtor receives more than one bid ("**Competing Bids**"); and (iii) scheduling the Auction and a Sale Hearing with respect to any bid accepted by the Debtor; and (B) approving notice of this Motion, the Bidding Procedures, the proposed Sale of the Property and the Sale Hearing, and the form thereof, which is attached to this Motion as Exhibit B.

13. The Debtor also requests that this Court set a Sale Hearing on or before November 10, 2011, but reserves the right to extend the Sale process, including, but not limited to, the applicable bid deadline and Auction date, and reserves the right to request a continuance of the Sale Hearing. At the Sale Hearing, pending the outcome of the Auction and as set forth in the Bidding Procedures, the Debtor intends to seek entry of a Sale Order approving the Sale of the Property free and clear of all Interests, as well as compelling Gregory and Linda Crabtree to sign a deed conveying the title to the Property at the closing of the Sale of the Property.[2] A form of Sale Order will be filed by the Debtor before the Sale Hearing.

**BASIS FOR RELIEF**

14. In furtherance of the Debtor's duty to maximize the value of its estate, the Debtor has filed this Motion seeking approval of a Sale process, including the Bidding Procedures.

**A.    Authority to Approve Sale**

15. Entry of the Sale Order approving the final Sale of the Property at the conclusion of the Sale Hearing is authorized and appropriate under the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides that "the trustee, after notice and a hearing, may use, sell, or lease other than in the ordinary course of business, property of the estate."

16. This Court's power to authorize a sale under section 363(b) of the Bankruptcy Code is to be exercised at its discretion, utilizing a flexible, case by case approach. In re Baldwin United Corp., 43 B.R. 905 (Bankr. S.D. Ohio 1984). The key consideration is this Court's finding that a good business reason exists for the Sale. Stephens Industries, Inc. v. McClung, 789 F.2d 386 (6th Cir. 1986).

---

[2] The Debtor requests that any Sale Order entered by this Court expressly provide that Gregory and Linda Crabtree will not receive any proceeds from the Sale of the Property and that all net proceeds from the Sale of the Property shall be paid to the Debtor's estate.

> [T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business . . .. Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in <u>Lionel</u>, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike. He might, for example, look to such relevant factors as the proportionate value of the assets of the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

<u>In re Walter</u>, 83 B.R. 14, 19-20 (9th Cir. Bankr. 1988), citing <u>In re Lionel Corporation</u>, 722 F.2d 1063, 1070-71 (2d Cir. 1983).

17. The CRO, in his business judgment, has determined that a prompt sale of the Property, pursuant to section 363(b) of the Bankruptcy Code, will maximize the value of the Property for the benefit of the Debtor's creditors and the Debtor's estate.

18. As indicated above, the CRO has worked on behalf of the Debtor to market and solicit offers for the Sale of the Property since the Petition Date. The Debtor has received an offer from the Proposed Purchaser for the Property and the Debtor is confident that the Sale process will maximize the value of the Property.

19. The Bidding Procedures were developed consistent with the need to expedite the Sale process but with the objective of conducting the Sale in a controlled, but fair and open fashion that promotes interest in the Property by financially capable, motivated bidders who are likely to close a transaction, while simultaneously discouraging non-serious offers and offers from parties whom the Debtor does not believe are capable or likely to consummate a transaction. The Debtor believes that the Bidding Procedures for the Auction are commercially

reasonable and are in the best interest of the Debtor, its estate and creditors and will maximize the value obtained from the Sale of the Property. An auction is sufficient to establish that one has paid "value" for assets of a bankruptcy estate, where the auction sale has itself been conducted in good faith. In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986).

20. The Bidding Procedures and proposed Auction are geared toward obtaining the highest and best price for the Property. The Bidding Procedures provide potential bidders an opportunity to perform due diligence and determine a reasonable price at which they would be interested in acquiring the Property. Competing bidders will have the opportunity to bid at the Auction (if they become Qualified Bidders, as defined in the Bidding Procedures Order), thus ensuring that the sale of the Property will be effected through an arm's length transaction. Accordingly, the proposed auction procedure will allow the highest and best bidder to purchase the Property, thereby maximizing the return to the Debtor's estate.

21. The Debtor believes that a prompt Sale of the Property, pursuant to sections 363(b) and (f) of the Bankruptcy Code, on the terms set forth in this Motion is in the best interest of the Debtor, its estate, creditors and other parties in interest.

**B.  The Bidding Procedures[3]**

22. In order to maximize the value of the Property for the benefit of the Debtor's estate and its respective creditors, the Debtor seeks to implement a competitive bidding process that is designed to generate maximum recovery. As described more fully in the Bidding Procedures, attached as Exhibit 1 to the Bidding Procedures Order (attached hereto as Exhibit

---

[3] Terms used but not otherwise defined in this section of this Motion shall have the meanings ascribed to them in the Bidding Procedures attached as Exhibit 1 to the Bidding Procedures Order.

A), the Debtor may sell the Property to any bidder that makes the highest or otherwise best offer for the Property.

23. As described more fully in the Bidding Procedures, the Debtor proposes that competing bids for the Property be governed by the following:[4]

> **Participation Requirements**: Any person that wishes to participate in the Bidding Process (a "**Potential Bidder**") must become a "Qualified Bidder" (defined below). As a prerequisite to becoming a Qualified Bidder, a Potential Bidder must deliver (unless previously delivered) to the Debtor and to the Committee at the addresses specified below, by the Bid Deadline (as defined below):
>
>> i. A letter of indication stating the estimated purchase price and consideration for the Property, clearly indicating total cash consideration to be provided to the Debtor at closing and specifying any deductions from the total cash consideration and which items, if any, the Debtor would be required to pay at closing; and
>>
>> iii. Sufficient information, as may be requested by the Debtor, to allow the Debtor to determine that the bidder has the financial wherewithal to close a sale of the Property, including, but not limited to, a signed commitment for any debt or equity financing, a bank account statement showing the ability of a Potential Bidder to pay cash for the Property, and current audited financial statements (or such other form of financial disclosure and credit-quality support or enhancement acceptable to the Debtor) of the Potential Bidder or those entities that will guarantee the obligations of the Potential Bidder.
>
> A "**Qualified Bidder**" is a Potential Bidder that delivers the documents described in subparagraphs (i) – (ii) above, and that the Debtor, in consultation with the Committee, determines is reasonably likely (based on financial information submitted by the Potential Bidder, the availability of financing, experience and other consideration deemed relevant by the Debtor), to submit a *bona fide* offer and be able to consummate a sale if selected as the Successful Bidder (defined below). Notwithstanding the foregoing, the Proposed Purchaser shall be deemed a Qualified Bidder. Prior to the Auction, the Debtor shall determine, in

---

[4] The following description of the Bidding Procedures is a summary of the terms set forth in the Bidding Procedures attached as <u>Exhibit 1</u> to the Bidding Procedures Order. To the extent that this summary differs in any way from the terms set forth in the Bidding Procedures, the terms of the Bidding Procedures shall control.

consultation with the Committee, and shall notify a Potential Bidder, if such Potential Bidder is a Qualified Bidder.

**Bid Deadline**: A Qualified Bidder that desires to make a bid shall deliver written copies of its bid and the Required Bid Materials (defined below) to (i) the Debtor, c/o James R. Burritt, Mainstream Management, 720 Brixworth Blvd., Suite 200, Knoxville, TN 37934; (ii) counsel to the Debtor, Frost Brown Todd LLC, 3300 Great American Tower, 301 East Fourth Street, Cincinnati, Ohio 45202 (Attn: Ronald E. Gold), and (iii) counsel to the Creditors' Committee, Morris, Manning & Martin, LLP, 1600 Atlanta Financial Center, 3343 Peachtree Road NE, Atlanta, GA 30326 (Attn: Frank W. DeBorde) not later than 4:00 p.m. (prevailing Eastern time) on November 8, 2011 (the "**Bid Deadline**"). In the event that a bid is determined to be a Qualified Bid for the Property, the Debtor shall deliver a written copy of any such Qualified Bid to the Proposed Purchaser.

**Bid Requirements**: All bids, other than the bid of the Proposed Purchaser, must include (unless such requirement is waived by the Debtor) the following information and documents (the "**Required Bid Materials**"):

(i.) A cash purchase price equal to or greater than $82,610.00 (the "**Minimum Bid Amount**"). Any bidder must also provide a representation that in addition to the cash purchase price, if the bidder becomes the Successful Bidder, that the bidder will pay any costs associated with transferring title to the Property and/or any public filings associated with the Sale of the Property.

(ii.) A letter stating that the bidder's offer is irrevocable until the closing of the Sale of the Property on which the Qualified Bidder is submitting a bid.

(iii.) An executed copy of a letter of intent with respect to the purchase of the Property.

(iv.) A cash deposit in the amount of the greater of 10% of the bid amount or $8,261.00 (the "**Bid Deposit**") which shall be placed in a segregated account (the "**Escrow Account**"). The Escrow Account shall not be subject to the claims, liens, security interests, or encumbrances of the Debtor's creditors, and funds shall be disbursed from the Escrow Account only as follows: (i) if the Qualified Bidder becomes the Successful Bidder, its Bid Deposit will be applied to the purchase price, or as otherwise provided under any letter of intent between the Debtor and such Successful Bidder, and (ii) if such Qualified Bidder is not the Successful Bidder at the Auction, then its Bid Deposit shall be returned to it (subject to the other provisions of these Bidding Procedures and the terms of its letter of intent with the Debtor).

(v.) A representation of the bidder and written evidence that the bidder has a commitment for financing or other evidence of bidder's ability to consummate the proposed transaction.

(vi.) The bid shall not request or entitle the bidder to any transaction or break up fee, expense reimbursement, termination or similar type of fee or payment.

(viii.) The bid shall not contain any due diligence, financing or regulatory contingencies of any kind, provided that the bid may be subject to the satisfaction of specific conditions in all material respects at closing.

(ix.) The bid shall fully disclose the identity of each entity that will be bidding for the Property or otherwise participating in connection with such bid, and the complete terms of any such participation.

(x.) The bid shall state that the offering party consents to the core jurisdiction of the Bankruptcy Court.

(xi.) The bid shall include evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the submitted purchase agreement of the bidder, as applicable.

A bid received from a Qualified Bidder that includes all of the Required Bid Materials is a "**Qualified Bid**." The Debtor, in consultation with the Committee, reserves the right to determine the value of any Qualified Bid, and which Qualified Bid constitutes the highest or best offer. Notwithstanding the bid requirements detailed above, the bid of the Proposed Purchaser shall be deemed a Qualified Bid.

**The Auction and Auction Procedures**: If a Qualified Bid, other than that submitted by the Proposed Purchaser, has been received by the Debtor, the Debtor may conduct an Auction with respect to the Property. The Auction shall be conducted at the offices of Frost Brown Todd LLC, 3300 Great American Tower, 301 East Fourth Street, Cincinnati, Ohio 45202 (the "**Auction Site**") at 10:00 a.m. (prevailing Eastern time) on November 9, 2011 (the "**Auction Date**"), or such other place and time as the Debtor shall notify all Qualified Bidders who have submitted Qualified Bids and expressed their intent to participate in the Auction as set forth above.

Except as otherwise provided herein, based upon the terms of the Qualified Bids received, the number of Qualified Bidders participating in the Auction, and such other information as the Debtor determines is relevant, the Debtor, in consultation with the Committee, may conduct the Auction in any manner that it determines will achieve the maximum value for the Property. The Debtor thereafter, in consultation with the Committee, may offer the Property in such successive rounds as the Debtor, in consultation with the Committee, determines to be appropriate so as to obtain the highest or otherwise best bid or combination of bids for the Property. Except as otherwise

provided herein, the Debtor, in consultation with the Committee, also may set opening bid amounts in each round of bidding as the Debtor determines to be appropriate.

If Qualified Bidders submit Qualified Bids, then as soon as practicable after the conclusion of the Auction the Debtor, in consultation with the Committee, shall (i) review each Qualified Bid on the basis of the financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale and (ii) identify the highest or otherwise best offers for the Property (to the extent any such bid is acceptable to the Debtor, in consultation with the Committee, each a "**Successful Bid**" and each bidder making such bid, a "**Successful Bidder**"). At the Sale Hearing, the Debtor, after consultation with the Committee, may present any Successful Bids to the Bankruptcy Court for approval. The Debtor reserves all rights not to submit any bid which is not acceptable to the Debtor for approval to the Bankruptcy Court. The Debtor acknowledges that the bid of the Proposed Purchaser is a Qualified Bid and shall be submitted to the Bankruptcy Court for approval in the event that there are no other Successful Bids. Except as otherwise provided herein, the Debtor, in the exercise of its fiduciary duties, may adopt rules for bidding at the Auction that, in its business judgment, will better promote the goals of the bidding process, the Bankruptcy Code or any order of the Bankruptcy Court entered in connection herewith.

If no Qualifying Bid is submitted by the Bid Deadline, the Debtor shall cancel the Auction and accept the bid of the Proposed Purchaser (in which case, the Successful Bid shall be the bid of the Proposed Purchaser, and the Successful Bidder shall be the Proposed Purchaser).

**Overbid Amount**. There shall be an overbid amount that a Qualified Bidder must bid to exceed the bid of the Proposed Purchaser ("**Overbid Amount**"), and that amount shall be $82,610. The Debtor shall not be allowed or authorized to accept a Qualified Bid amount less than the Overbid Amount, unless the Debtor has deemed the bid of the Proposed Purchaser a Successful Bid.

**Minimum Bid Increment**. There shall be a minimum bid increment of at least $1,000 for all bids made by Qualified Bidders. For example, if a Qualified Bidder bids the Overbid Amount, the next bid cannot be less than $83,610 ($82,610 plus $1,000).

C.     **Notice of Bidding Procedures and Sale**

24.    Notice of Sale Hearing. Within one (1) business day after the entry of the Bidding Procedures Order (the "**Mailing Date**") or as soon thereafter as practicable, the Debtor proposes to serve a copy of the Bidding Procedures Order and the Notice, in substantially the same form attached as Exhibit B to this Motion, by first-class mail, postage prepaid, upon (i) the Office of the United States Trustee for the Southern District of Ohio; (ii) counsel for the

Committee; (iii) all entities known to have expressed an interest in a transaction with respect to the Property since the Petition Date; (iv) all entities known to have asserted any lien, claim, interest or encumbrance in or upon any of the Property; (v) all taxing authorities and applicable governmental agencies having jurisdiction over the Property; (vi) the United States Attorney's Office; (vii) the Internal Revenue Service; (viii) the Securities and Exchange Commission; (ix) the Ohio Attorney General; (x) the list of the Debtor's equity interest holders of record (including Gregory and Linda Crabtree); and (xi) those parties who have filed the appropriate notice requesting notice of all pleadings filed in this chapter 11 case (the "**Sale Notice Parties**"). The Debtor will also serve a copy of this Motion on the Sale Notice Parties.

25. Bankruptcy Rule 2002(m) provides that the Court may enter orders designating "the matters in respect to which, the entity to whom, and the form and manner on which notices shall be sent . . . ." The Debtor believes that limiting notice of the Bidding Procedures, Sale of the Property and service of the Motion, the Notice and the Bidding Procedures Order to the Sale Notice Parties is appropriate in this chapter 11 case.

26. The Debtor has hundreds of creditors. Providing notice to all creditors of the Sale of the Property would be impracticable and time consuming as well as costly to the Debtor's estate. Limiting notice of the Sale of the Property and service of this Motion, the Notice and the Bidding Procedures Order to the Sale Notice Parties will save the Debtor's estate significant cost yet provide notice to the parties who have been most actively involved in this chapter 11 case and those parties with the most direct potential interest in the Sale of the Property. Accordingly, the Debtor requests a finding in the Bidding Procedures Order and Sale Order that notice of the Sale of the Property and service of the Motion, Notice and Bidding Procedures Order on the Sale

Notice Parties is adequate and appropriate under the circumstances and in full compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

## APPLICABLE AUTHORITY

### A. The Bidding Procedures are Fair and Are Designed to Maximize the Value Received for the Property

27. Bankruptcy Code section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The Debtor believes that the Bidding Procedures are appropriate under Bankruptcy Code sections 105 and 363 to ensure that the bidding process is fair and reasonable and will yield the maximum value for its estate and creditors. The Bidding Procedures proposed herein are designed to maximize the value received for the Property by facilitating a competitive bidding process in which all potential bidders are encouraged to participate and submit competing bids. The Bidding Procedures provide potential bidders with sufficient notice and an opportunity to acquire information necessary to submit a timely and informed bid. At the same time, the Bidding Procedures provide the Debtor with the opportunity to consider all competing offers and to select the highest and best offer for the Sale of the Property as determined by the Debtor, in consultation with the Committee.

28. The Debtor requests this Court's approval of the Bidding Procedures, including the dates established thereby for an Auction and a Sale Hearing. Accordingly, the Debtor and all parties in interest can be assured that the consideration for the Property will be fair and reasonable, and there are sound business reasons to approve the Bidding Procedures.

### B. Approval of the Sale is Warranted Under Bankruptcy Code 363(b)

29. Bankruptcy Code section 363(b)(1) provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate." 11 U.S.C. § 363(b)(1).  Although Bankruptcy Code section 363 does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, courts in this district and elsewhere have found that a debtor's sale or use of assets outside the ordinary course of business should be approved if the debtor can demonstrate a sound business justification for the proposed transaction.  See, e.g., In re Eagle Picher Holdings, Inc., 2005 Bankr. LEXIS 2894, at ¶ 3 (Bankr. S.D. Ohio 2005); In re Martin, 91 F.3d 389, 395 (3d Cir. 1996); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983).  Once the Debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'"  In re S.N.A. Nut Co., 186 B.R. 98 (Bankr. N.D. Ill. 1995); see also In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992); In re Johns-Manville Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a Debtor's management decisions").

30.     The sale of a debtor's assets is appropriate where there are sound business reasons behind such a determination.  See Stephens Industries, Inc. v. McClung, 789 F.2d 386 (6th Cir. 1986) (sale of substantially all assets of estate authorized where "a sound business purpose dictates such action").  The Debtor has a sound business justification for selling the Property at this time.  As previously discussed, since the Petition Date, the CRO has extensively focused his efforts on, among other things, marketing, selling and liquidating the Debtor's assets.  The CRO has spent countless hours marketing the Debtor's assets and communicating with numerous parties regarding the potential sale of the Debtor's assets.

31. As part of his efforts in marketing the Debtor's assets, the CRO has worked, among other things, to market the Property. Based upon his business judgment, the CRO has determined that a Sale of the Property to the Proposed Purchaser, subject to higher and better offers, in accordance with the procedures set forth in the Bidding Procedures may be the best method to maximize recoveries to the estate. Maximization of the Property's value is a sound business purpose warranting authorization of any proposed Sale.

32. The Debtor has proposed a fair and open process for achieving the objective of obtaining the highest or best offer and sale of the Property for the benefit of the Debtor's estate and its creditors. The Sale of the Property will be subject to competing bids, enhancing the Debtor's ability to receive the highest or otherwise best value for the Property. Consequently, the fairness and reasonableness of the consideration to be received by the Debtor will ultimately be demonstrated by a "market check" through the auction process, which is the best means for establishing whether a fair and reasonable price is being paid.[5]

33. In addition, parties in interest will receive adequate notice of the Bidding Procedures and Sale Hearing as set forth above. Such notice is reasonably calculated to provide timely and adequate notice to the Debtor's major creditor constituencies, those parties most interested in this chapter 11 case, those parties potentially interested in bidding on the Property and others whose interests are potentially implicated by a proposed Sale of the Property. Accordingly, consummating the Sale as soon as possible is in the best interests of the Debtor and its creditors and parties in interest.

---

[5] The Debtor reserves all rights to not submit any bid which is not acceptable to the Debtor for approval to the Bankruptcy Court.

### C. Sale of Property Free and Clear of All Interests Pursuant to Section 363(f)

34. The Debtor requests, pursuant to section 363(f) of the Bankruptcy Code, that the sale of the Property be free and clear of all Interests. The Debtor proposes to sell the Property in a commercially reasonable manner, and expects that the value of the proceeds from such Sale of the Property will fairly reflect the value of the Property sold. The Debtor further proposes that any party with a lien on the Property sold, if any such parties exist, shall have a corresponding security interest in the proceeds of such Sale with the same validity and priority as exist under state law pursuant to section 363(e) of the Bankruptcy Code (subject to any claims and defenses that the Debtor may possess with respect thereto).

### D. A Successful Bidder Should be Entitled to the Protections of Section 363(m)

35. Pursuant to section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. In re Made In Detroit, Inc., 414 F.3d 576, 581 (6th Cir. 2005); In re Mark Bell Furniture Warehouse, Inc., 992 F.2d 7, 9 (1st Cir. 1993); In re Willemain v. Kivitz, 764 F.2d 1019, 1023 (4th Cir. 1985); Abbotts Dairies of Penn., 788 F.2d at 147.

36. The proposed transaction with the Proposed Purchaser was negotiated at arm's-length. Although the Debtor engaged in discussions with other parties interested in acquiring the Property, the Debtor submits that the Proposed Purchaser's proposal as contained in the applicable Purchase Offer represents the Proposed Purchaser's highest and best offer for the Property. Additionally, the Debtor will adduce facts at the Sale Hearing on any objection demonstrating that any bidder who is deemed a Successful Bidder for the Property had negotiated at arm's-length.

37. Accordingly, the Sale Order will include a provision that the Successful Bidder for the Property, is a "good faith" purchaser within the meaning of section 363(m) of the

Bankruptcy Code. The Debtor believes that providing any Successful Bidder with such protection will ensure that the maximum price will be received by the Debtor for the Property and closing of the same will occur promptly.

### E. Gregory and Linda Crabtree Should Be Compelled to Sign a Deed to Convey the Title to the Property at the Closing of the Sale

38. As discussed above, although title to the Property is currently in the name of Gregory and Linda Crabtree, upon information and belief, the Property was bought by Mr. and Mrs. Crabtree using certain funds of the Debtor. In his deposition, Mr. Crabtree admitted that he used money of the Debtor to buy the Property and to title the Property in his name. *See* Crabtree Deposition pp. 127-129. In addition, when asked whether the Property should be property of the Debtor, Mr. Crabtree responded with an unequivocal "Yes." *See id*. p. 128. Further, Mr. Crabtree stated in his deposition that the reason why he has not transferred title of the Property to the Debtor is because he is just waiting for someone to tell him how to do so. *See id*.

39. Since the Property was admittedly purchased with funds of the Debtor, it is the position of the Debtor that the Property is property of the Debtor and its bankruptcy estate, rather than property of Mr. and Mrs. Crabtree. Accordingly, the Debtor requests that, pursuant to the Sale Order, this Court compel Gregory and Linda Crabtree to sign a deed conveying the title to the Property at the closing of the Sale of the Property.

### F. Relief Under Bankruptcy Rules 6004(h) Is Appropriate

40. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale or lease of property… is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Debtor requests that any Sale Order be effective immediately by providing that the 14-day stay under Bankruptcy Rule 6004(h) is waived.

## NOTICE

41. No trustee or examiner has been appointed in this chapter 11 case. The Debtor has provided notice of this Motion to (i) the Office of the United States Trustee for the Southern District of Ohio; (ii) counsel for the Committee; (iii) all entities known to have expressed an interest in a transaction with respect to the Property since the Petition Date; (iv) all entities known to have asserted any lien, claim, interest or encumbrance in or upon any of the Property; (v) all taxing authorities and applicable governmental agencies having jurisdiction over the Property; (vi) the United States Attorney's Office; (vii) the Internal Revenue Service; (viii) the Securities and Exchange Commission; (ix) the Ohio Attorney General; (x) the list of the Debtor's equity interest holders of record (including Gregory and Linda Crabtree); and (xi) those parties who have filed the appropriate notice requesting notice of all pleadings filed in this chapter 11 case. In light of the nature of the relief requested, the Debtor submits that no further notice is required or needed under the circumstances and requests a finding by this Court with respect to the same to be included in the Bidding Procedures Order and the Sale Order.

## NO PRIOR REQUEST

42. No prior motion for the relief requested herein has been made to this Court or any other Court.

## WAIVER OF MEMORANDUM OF LAW

43. This Motion includes citations to the applicable authorities and a discussion of their application to this Motion. Accordingly, the Debtor respectfully submits that such citations and discussion satisfy the requirements that the Debtor submit a separate memorandum of law in support of this Motion pursuant to Local Bankruptcy Rule 9013-1(a).

WHEREFORE, the Debtor respectfully requests that this Court enter the Bidding Procedures Order, substantially in the form attached hereto as Exhibit A, (i) approving the

Bidding Procedures; (ii) scheduling an Auction and a Sale Hearing to approve the Sale of the Property, (iii) approving notice of this Motion, the Bidding Procedures, the proposed Sale of the Property and the Sale Hearing, and approving the form of Notice, which is attached to this Motion as <u>Exhibit B</u>; and (iv) granting such other and further relief as this Court deems appropriate. Additionally, the Debtor requests that at the Sale Hearing that this Court enter a Sale Order subject to the result of the Auction and to the Bidding Procedures (i) approving and authorizing the Sale of the Property, free and clear of all Interests; (ii) compelling Gregory and Linda Crabtree to sign a deed conveying the title to the Property at the closing of the Sale of the Property; and (iii) granting such other and further relief as this Court deems appropriate.

Dated: October 19, 2011                              Respectfully submitted,

                                        **FROST BROWN TODD LLC**

By:  */s/ Ronald E. Gold*

       Ronald E. Gold, Esq. (0061351)
       Joseph B. Wells, Esq. (0082775)
       Lindsey F. Baker, Esq. (0085017)
       3300 Great American Tower
       301 East Fourth Street
       Cincinnati, Ohio 45202
       Telephone: 513.651.6800
       Facsimile: 513.651.6981
       E-mail: rgold@fbtlaw.com
       E-mail: jbwells@fbtlaw.com
       E-mail: lbaker@fbtlaw.com

       **ATTORNEYS FOR DEBTOR AND**
       **DEBTOR-IN-POSSESSION**